# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

| | |
|---|---|
| NEW MEXICO CATTLE GROWERS' ASSOCIATION, | ) ) ) Case No. _____ |
| Plaintiff, | ) ) **COMPLAINT** |
| v. | ) ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, in his official capacity as Administrator of the Environmental Protection Agency; UNITED STATES ARMY CORPS OF ENGINEERS; and R.D. JAMES, in his official capacity as Assistant Secretary for Civil Works, Department of the Army, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## INTRODUCTION

1.      This lawsuit is about the proper interpretation of the term "navigable waters" in the Clean Water Act, 33 U.S.C. §§ 1362(12) and 1362(7). The Clean Water Act imposes severe criminal penalties for unpermitted discharges to "navigable waters." Permitting is onerous and expensive, costing years of time and hundreds of thousands of dollars on average. What "waters" are "navigable" is thus a major question. In 1986, the Environmental Protection Agency (EPA) and Army Corps of Engineers (Army) adopted regulations (the 1986 Regulations) that interpreted the term "navigable waters" broadly to include extensive non-navigable waterbodies and features upstream of and even isolated from navigable-in-fact rivers and lakes. In 2015, the EPA and the Army replaced the 1986 Regulations with a new regulation (the 2015 Navigable Waters Definition) that reinterpreted "navigable waters" to include some but not all of the non-navigable

water features included in the 1986 Regulations. On October 22, 2019, the EPA and the Army published a final rule (the Repeal and Recodify Rule) repealing the 2015 Navigable Waters Definition and purporting to readopt the 1986 Regulations, along with related guidance memoranda.

2.       Plaintiff's members own or operate real property with aquatic features in New Mexico, and are subject to EPA and Army permitting and enforcement under the 1986 Regulations and related guidance. Plaintiff challenges several provisions of the 1986 Regulations and related guidance, as either exceeding the agencies' statutory authority under the Clean Water Act and the Congressional Review Act, or Congress' authority under the Commerce Clause, the Due Process Clause, the Non-Delegation Doctrine, and the Tenth Amendment. Plaintiff asks this Court to declare that several provisions of the Clean Water Act, the 1986 Regulations, and related guidance are statutorily and constitutionally invalid, and to enjoin their enforcement.

## JURISDICTION AND VENUE

3.       Jurisdiction is founded upon 28 U.S.C. § 1331 (federal question); § 1346(a)(2) (civil action against the United States); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief and any other "necessary and proper" relief); and 5 U.S.C. § 702 (judicial review of agency action under the Administrative Procedure Act).

4.       Plaintiff has exhausted all administrative remedies.

5.       This action is timely. 28 U.S.C. § 2401(a).

6.       The challenged rule is final agency action, ripe for judicial review. 5 U.S.C. § 704.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(2), because Plaintiff's members reside in this District. *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act generally proper in "a court of competent jurisdiction").

## PARTIES

## PLAINTIFF

8.      The New Mexico Cattle Growers' Association (Cattle Growers') is a non-profit organization dedicated to advocating on behalf of its members on numerous issues relating to regulation under the Clean Water Act. Cattle Growers' devotes substantial resources to activities that seek to ensure that Clean Water Act regulation does not unreasonably impair the cattle industry. Cattle Growers' lobbies on Clean Water Act issues, publishes information on related issues for its members, performs research pertaining to Clean Water Act regulation, and submits comments to government agencies addressing concerns about how regulations under the Act affect its members. Cattle Growers' represents roughly 1,400 cattlemen and landowners throughout the State of New Mexico and many other states, many of whom are subject to the Clean Water Act under the 1986 Regulations and related guidance based on the presence of intermittent and ephemeral tributaries on their properties, as well as wetlands and other stationary water features regulated by the 1986 Regulations and related guidance. On behalf of its members, Cattle Growers' submitted comments objecting to the readoption of the 1986 Regulations and related guidance in the then-proposed Repeal and Recodify Rule.

## DEFENDANTS

9.      The United States Environmental Protection Agency (EPA) is a cabinet agency and has enforcement responsibility for the Clean Water Act under the 1986 Regulations. The EPA jointly issued the regulations challenged in this action.

10.     Andrew Wheeler is the Administrator of the EPA. He signed the Repeal and Recodify Rule on behalf of EPA on September 12, 2019.

11.     The United States Army Corps of Engineers (Army) is a branch of the Department of the Army and has enforcement responsibility for the Clean Water Act under the 1986 Regulations. The Army jointly issued the regulations challenged in this action.

12.     R.D. James is the Assistant Secretary of the Army for Civil Works. He signed the Repeal and Recodify Rule on behalf of the Army on September 5, 2019.

## LEGAL BACKGROUND

13.     For over a hundred years, the United States Congress regulated the obstruction of navigation on rivers and lakes through a series of statutes that applied to "navigable waters of the United States." *Rapanos v. United States*, 547 U.S. 715, 723 (2006). In a line of cases originating with *The Daniel Ball*, the Supreme Court of the United States interpreted this term to refer to

> [t]hose rivers . . . are navigable in fact[, *i.e.*] . . . when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce over which trade and travel are or may be conducted in the customary modes of travel on water. And they constitute navigable waters of the United States within the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

77 U.S. 557, 563 (1870); *see also Rapanos*, 547 U.S. at 723.

14.     The phrase "navigable waters of the United States" was used in Section 10 of the Rivers and Harbors Act when that act was first adopted in 1899, Mar. 3, 1899, c. 425, § 10, 30 Stat. 1151, and remains in use today, 33 U.S.C. § 403. Section 10 also prohibits obstructions to "the navigable capacity of the waters of the United States" unless authorized by Congress. 33 U.S.C. § 403.

### THE CLEAN WATER ACT

15.     In 1972, Congress adopted significant amendments to the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*, which has since been called the Clean Water Act (the Act). The Act prohibits unpermitted discharges, defined as additions of pollutants from point sources, to navigable waters. 33 U.S.C. §§ 1311(a), 1362(12). The Act assigns general permitting authority to the EPA, with limited authority assigned to the Army to permit discharges of dredged or fill material. 33 U.S.C. §§ 1342(a)(1), 1344(a). The meaning of the term "navigable waters" is what determines whether any particular action is prohibited unless permitted under the Act. The Act states that "navigable waters means the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

16.     Nothing in the Act's definition of "navigable waters" extends the term to non-navigable waters of any sort (*e.g.*, non-navigable tributaries and "adjacent waters") that are upstream or isolated from navigable-in-fact waters. Nothing in the legislative history of the Act shows that Congress "intended to exert anything more than its commerce power over navigation." *Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159, 168 n.3 (2001) (*SWANCC*). In contrast, when Congress has intended to extend its reach to waters that are not navigable, it has said so expressly. For instance, with the Flood Control Act of 1936, Congress

claimed jurisdiction over "navigable waters or their tributaries, including watersheds thereof." 33 U.S.C. § 701(a); 49 Stat. 1570.

17.     To the extent that "navigable waters" under the Act were to be interpreted to include any non-navigable waters upstream of navigable-in-fact waters, the Act provides no intelligible principle for determining which non-navigable waters are included, no factual considerations or criteria for the agencies to determine what waters are navigable, and no policy choices for what non-navigable waters are included.

## EARLY AGENCY REGULATIONS AND *RIVERSIDE BAYVIEW HOMES*

18.     In 1974 the Army adopted regulations defining "navigable waters" under the Act to implement its permitting authority, consistent with the historic definition adopted in *The Daniel Ball*. 39 Fed. Reg. 12,119 (Apr. 3, 1974); *Rapanos*, 547 U.S. at 723; *SWANCC*, 531 U.S. at 169. The U.S. District Court for the District of Columbia ruled that these regulations were inadequate in *Natural Resources Defense Council, Inc. v. Callaway*, 392 F. Supp. 685, 686 (D.D.C. 1975).

19.     Instead of appealing the trial court ruling, the Army adopted new and significantly broader regulations that added the regulation of non-navigable tributaries and wetlands as "navigable waters" for the first time. *See generally*, *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123-24 (1985).

20.     In 1985 the Supreme Court decided *Riverside Bayview Homes*, which holds that the Army regulations then in-effect reasonably interpreted "navigable waters" to include a non-navigable wetland abutting a navigable-in-fact lake. 474 U.S. at 135. The Supreme Court did not consider, in *Riverside Bayview Homes*, whether "navigable waters" included wetlands that do not abut navigable-in-fact waters. *Id.* at 124 n.2; *id.* at 131 n.8.

**THE 1986 REGULATIONS**

21.    In 1986, the Army adopted new regulations defining "navigable waters" to include:

- All navigable-in-fact waters, plus all waters which are, were, or reasonably could be used more generally in interstate commerce (33 C.F.R. § 328.3(a)(1) (1987)[1]);

- The territorial seas (33 C.F.R. § 328.3(a)(6) (1987));

- All interstate waters including interstate wetlands ("Interstate Waters") (33 C.F.R. § 328.3(a)(2) (1987));

- All intrastate waters (whether navigable or not) that met various criteria ("Covered Intrastate Waters") (33 C.F.R. § 328.3(a)(3) (1987));

- All non-navigable tributaries to navigable-in-fact waters, Interstate Waters, Covered Intrastate Waters, and Impoundments ("Non-navigable Tributaries") (33 C.F.R. § 328.3(a)(5) (1987));

- Wetlands adjacent to (meaning "bordering, contiguous, or neighboring") the territorial seas, navigable-in-fact waters, Interstate Waters, Covered Intrastate Waters, and their Non-navigable Tributaries ("Adjacent Wetlands") (33 C.F.R. §§ 328.3(a)(7), 328.3(c) (1987)); and

- All impoundments of all other waters covered by the definition ("Impoundments") (33 C.F.R. § 328.3(a)(4) (1987)).

33 C.F.R. § 328.3(a) (1987); 51 Fed. Reg. 41,206, 41,250-51 (Nov. 13, 1986) (the "1986 Regulations").

22.    When it adopted the 1986 Regulations, the Army also adopted the position that "navigable waters" included all waters (1) used to irrigate crops sold in interstate commerce, (2) served as habitat for birds protected by the Migratory Bird Treaty Act, (3) served as habitat for endangered species, or (4) "which are or would be used as habitat by migratory birds which cross

---

[1] The EPA adopted identical regulations in 1988, which are included in Plaintiff's definition of the 1986 Regulations. For ease of reference, the Army's regulations are cited throughout. From the 1986 Regulations forward, both EPA and the Army's regulations are identical in relevant part.

state lines." 51 Fed. Reg. 41,217 (Nov. 13, 1986). The last of these provisions was known as the Migratory Bird Rule.

***SWANCC* AND *RAPANOS***

23.     The 1986 Regulations were the subject of two adverse Supreme Court decisions. In *SWANCC*, the Supreme Court invalidated the Migratory Bird Rule as beyond the scope of "navigable waters" under the Act. *SWANCC* narrowed *Riverside Bayview Homes* by emphasizing that the word "navigable" in the text of the Act demonstrates that Congress' intent was focused on its "traditional jurisdiction over waters that were . . . navigable in fact." 531 U.S. at 172. In *SWANCC* the Court further emphasized the dual purposes of the Act, with federalism and local control of land use and water allocation equal to the federal policy of water quality protection, and that the Clean Water Act lacks the necessary "clear statement" to indicate any congressional intent to interfere in traditionally local functions. *Id.* at 172-74. *SWANCC* also posits that the Army's original 1974 regulations, defining "navigable waters" consistent with the meaning set forth in *The Daniel Ball*, may have been correct. 531 U.S. at 168, *id.* at 168 n.3.

24.     Then in a fractured opinion in *Rapanos*, the Supreme Court invalidated the non-navigable Tributary and Adjacent Wetlands provisions of the 1986 Regulations, also as beyond the scope of the statutory term "navigable waters."

25.     The issue in *Rapanos* was how to interpret the Clean Water Act's term "navigable waters" in the context of non-navigable tributaries to navigable-in-fact waterways, and wetlands that do not physically abut navigable-in-fact waterways. 547 U.S. at 728, *id.* at 759 (Kennedy, J., concurring). The judgment of the Court in *Rapanos* was to remand the case because the lower

courts had not properly interpreted that term. *Id.* at 757. The five Justices who supported the judgment arrived at it by two different interpretations of the term "navigable waters."

26.   The *Rapanos* plurality determined that the language, structure, and purpose of the Clean Water Act all limited federal authority to "relatively permanent, standing or continuously flowing bodies of water" commonly recognized as "streams, oceans, rivers and lakes" connected to traditional navigable waters. 547 U.S. at 739. The plurality also limited federal regulation of wetlands to those physically abutting these waterbodies, such that they have an immediate surface water connection where the wetland and water body are "indistinguishable." *Id.* at 755.

27.   Justice Kennedy joined the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the federal government could regulate a non-abutting wetland only if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779 (Kennedy, J., concurring).

## 2008 POST-*RAPANOS* GUIDANCE

28.   Following *Rapanos*, the EPA and the Army jointly adopted an informal guidance document (the 2008 Post-*Rapanos* Guidance) which purported to apply the *Rapanos* decision to the 1986 Regulations.

29.   The 2008 Post-*Rapanos* Guidance is a "rule" within the ambit of the Congressional Review Act, 5 U.S.C. § 801, *et seq.*, but was not and has never been submitted to Congress as the Congressional Review Act requires.

30.   The Post-*Rapanos* Guidance asserts that the Army and EPA may claim jurisdiction under either the *Rapanos* plurality or concurrence.

31.     The Guidance also asserts that the plurality standard is satisfied by tributaries that flow as little as 90 days per year, and broadly defines "adjacent" for the purpose of regulating wetlands.

## THE 2015 NAVIGABLE WATERS DEFINITION

32.     In 2015, the EPA and the Army adopted a new regulation (the 2015 Navigable Waters Definition) redefining "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015). The 2015 Navigable Waters Definition superseded the 1986 Regulations and the Post-*Rapanos* Guidance.

33.     On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgement that the 2015 Navigable Waters Definition violates the Clean Water Act. *Georgia v. Wheeler*, No. 2:15-cv-00079, 2019 WL 3949922 (S.D. Ga. Aug. 21, 2019).

34.     On October 22, 2019, partially in response to the decision of the Southern District of Georgia, Defendants published the Repeal and Recodify Rule in the Federal Register, which rescinded the 2015 Navigable Waters Definition, and readopted the 1986 Regulations and related guidance including the Post-*Rapanos* Guidance.

## THE REPEAL AND RECODIFY RULE

35.     On July 27, 2017, the EPA and the Army proposed a regulation which would repeal the 2015 Navigable Waters Definition and recodify the 1986 Regulations (the Repeal and Recodify Rule) ("If this proposal is finalized, the regulations defining the scope of federal Clean Water Act (CWA) jurisdiction would be those portions of the CFR as they existed before the amendments promulgated in the 2015 Rule."). 83 Fed. Reg. 32,227 (July 12, 2018).

36.   The agencies proposed to readopt the 1986 Regulations and related guidance documents. But they refused to consider public comment on the substance of the 1986 Regulations and related guidance. 82 Fed. Reg. 34,903 (July 27, 2017).

37.   The refusal to take comment on the substance of the 1986 Regulations, Post-*Rapanos* Guidance, and other guidance documents violated the EPA and the Army's obligations for notice and comment rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553(c).

38.   On October 22, 2019, the EPA and the Army published the final Repeal and Recodify Rule in the Federal Register, repealing the 2015 Navigable Waters Definition and readopting the 1986 Regulations and related guidance.

39.   The 1986 Regulations and related guidance readopted under the proposed Repeal and Recodify Rule were not and have never been submitted to Congress for review, in violation of the Congressional Review Act, 5 U.S.C. § 801, *et seq*.

40.   Several provisions of the 1986 Regulations, as well as the related guidance, exceed the scope of the Clean Water Act, in that both the Migratory Bird Rule (adopted as guidance at the time the 1986 Regulations were adopted) and the Tributary and Adjacent Wetland rules, have all been declared invalid by the Supreme Court.

41.   The inclusion in the 1986 Regulations of all interstate waters and of many intrastate waters that are not navigable-in-fact also exceeds the agencies' authority under the Act.

## DECLARATORY RELIEF ALLEGATIONS

42.   The preceding paragraphs are incorporated herein.

43.   Plaintiff contends that the 1986 Regulations and related guidance, as readopted by the Repeal and Recodify Rule, have been expressly invalidated in part by the Supreme Court and

are otherwise illegal. Defendants claim that the 1986 Regulations and related guidance are legally valid.

44.     No factual development is necessary to resolve this case as Plaintiff raises a pure legal challenge to the 1986 Regulations and related guidance as they are readopted by the Repeal and Recodify Rule, on their face.

45.     Plaintiff's members are injured by the 1986 Regulations and related guidance as readopted by the Repeal and Recodify Rule, because they hold beneficial interests in property that is or will be subject to increased federal regulatory control under the 1986 Regulations and guidance. This will require them to seek federal permit approval at significant cost to use their property for its intended purpose. Or, it will require Plaintiff's members to seek a determination from the Army or a private party expert whether the 1986 Regulations and related guidance apply to them. *See Hawkes Co. v. Army Corps of Engineers*, 782 F.3d 994, 1003 (8th Cir. 2015) (Kelly, J., concurring) ("This is a unique aspect of the CWA; most laws do not require the hiring of expert consultants to determine if they even apply to you or your property."), *aff'd*, 136 S. Ct. 1807 (2016).

46.     Accordingly, an actual and substantial controversy exists between Plaintiff and Plaintiff's members and Defendants as to the parties' respective legal rights and responsibilities. A judicial determination of the parties' rights and responsibilities arising from this actual controversy is necessary and appropriate at this time.

### INJUNCTIVE RELIEF ALLEGATIONS

47.     The preceding paragraphs are incorporated herein.

48.    Because of the 1986 Regulations' overbroad and illegal definition of the "navigable waters" under the Clean Water Act, Plaintiff's members will now be required to obtain federal approval of new and ongoing land-use projects at a cost of tens to hundreds of thousands of dollars and months, if not years, of delay.

49.    Plaintiff's members will continue to be injured by the Army and EPA's illegal interpretation of "navigable waters" under the Clean Water Act.

50.    Enjoining the enforcement of the Repeal and Recodify Rule's readoption of the 1986 Regulations and related guidance will redress these harms.

51.    Plaintiff's members have no plain, speedy, and adequate remedy at law and, absent judicial intervention, Plaintiff's members will suffer irreparable injury.

52.    If not enjoined, the Army and EPA will enforce the 1986 Regulations and related guidance, as readopted by the Repeal and Recodify Rule, against Plaintiff's members throughout New Mexico.

### FIRST CLAIM FOR RELIEF

### 1986 REGULATIONS AS READOPTED
### BY THE REPEAL AND RECODIFY RULE:
### *ULTRA VIRES* REGULATION OF ALL "TRIBUTARIES"

53.    The preceding paragraphs are incorporated herein.

54.    Under the Clean Water Act, the Army and EPA may regulate "navigable waters." *See* 33 U.S.C. § 1344(a).

55.    The 1986 Regulations define "navigable waters" to include all non-navigable tributaries. 33 C.F.R. § 328.3(a)(5) (2014).

56.     In *Rapanos* a majority of the Supreme Court held that this provision of the 1986 Regulations is invalid. 547 U.S. at 725 (rejecting the regulation of tributaries based on an ordinary high water mark because "[t]his interpretation extended 'the waters of the United States' to virtually any land feature over which rainwater or drainage passes and leaves a visible mark— even if only 'the presence of litter and debris'"). *See also id.* at 781 (Kennedy, J., concurring) (rejecting categorical regulation of tributaries with an ordinary high water mark because "the breadth of this standard . . . [would] leave wide room for regulation of drains, ditches and streams remote from any navigable-in-fact water and carrying only minor water volumes toward it").

57.     Categorical regulation of all tributaries exceeds the scope of the Clean Water Act as interpreted by the Supreme Court. Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

## SECOND CLAIM FOR RELIEF
### 1986 REGULATIONS AS READOPTED
### BY THE REPEAL AND RECODIFY RULE:
### *ULTRA VIRES* REGULATION OF ALL WATERS
### "ADJACENT" TO ALL "TRIBUTARIES"

58.     The preceding paragraphs are incorporated herein.

59.     It is axiomatic that if the regulation of all tributaries is invalid then the categorical regulation of all waters adjacent to such tributaries is also invalid. *See Rapanos*, 547 U.S. at 781-82 (Kennedy, J., concurring) (Regulation of all tributaries "precludes its adoption as the determinative measure of whether adjacent wetlands are likely to play an important role in the integrity of an aquatic system comprising navigable waters as traditionally understood. Indeed, in many cases wetlands adjacent to tributaries covered by this standard might appear little more

related to navigable-in-fact waters than were the isolated ponds held to fall beyond the Act's scope in *SWANCC*."). For its part the *Rapanos* plurality opined that wetlands may only be regulated under the Clean Water Act if they are so closely connected to regulated tributaries that it can't be discerned where one ends and the other begins. 547 U.S. at 755.

60.     The 1986 Regulations interpret the Act as including all wetlands broadly defined to be adjacent to any tributary. 33 C.F.R. § 328.3(a)(7) (2014). The Supreme Court invalidated this very provision of the 1986 Regulations in *Rapanos*.

61.     Categorical regulation of all wetlands adjacent to all tributaries exceeds the scope of the Clean Water Act as interpreted by the Supreme Court. Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

### THIRD CLAIM FOR RELIEF
### 1986 REGULATIONS AS READOPTED
### BY THE REPEAL AND RECODIFY RULE:
### *ULTRA VIRES* REGULATION OF ALL INTERSTATE WATERS

62.     The preceding paragraphs are incorporated herein.

63.     The 1986 Regulations, as readopted by the Repeal and Recodify Rule, purport to regulate all interstate waters regardless of navigability or connection to navigable-in-fact waters. 33 C.F.R. § 328.3(a)(2) (2014).

64.     Such waters necessarily include isolated waters or waters that the Supreme Court determined would have no connection or effect on navigable-in-fact waters and could not be regulated under the Clean Water Act. *See SWANCC*, 531 U.S. at 171-72 ("We cannot agree that Congress' separate definitional use of the phrase 'waters of the United States' constitutes a basis

for reading the term 'navigable waters' out of the statute. We said in *Riverside Bayview Homes*

that the word 'navigable' in the statute was of 'limited import' 474 U.S. at 133, 106 S. Ct. 455,

and went on to hold that § 404(a) extended to nonnavigable wetlands adjacent to open waters. But

it is one thing to give a word limited effect and quite another to give it no effect whatever. The

term 'navigable' has at least the import of showing us what Congress had in mind as its authority

for enacting the CWA: its traditional jurisdiction over waters that were or had been navigable in

fact or which could reasonably be so made.").

65.     Categorical regulation of all interstate waters exceeds the scope of the Clean Water

Act as interpreted by the Supreme Court. Therefore, the 1986 Regulations, as readopted by the

Repeal and Recodify Rule, are arbitrary and capricious, and contrary to law, in violation of the

Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

**FOURTH CLAIM FOR RELIEF**

**1986 REGULATIONS AS READOPTED**
**BY THE REPEAL AND RECODIFY RULE:**
***ULTRA VIRES* REGULATION OF ISOLATED WATERS**

66.     The preceding paragraphs are incorporated herein.

67.     The 1986 Regulations include a wide variety of intrastate waters with potential

effects on interstate commerce, but which are not used to transport interstate commerce. 33 C.F.R.

§ 328.3(a)(1) (2014). The 1986 Regulations also purport to include waters *used* in interstate

commerce which are not themselves used to *transport* interstate commerce. 33 C.F.R.

§ 328.3(a)(1) (2014).

68.     These waters include those which the Army treated as regulated under the 1986

Regulations because they provide habitat for migratory birds, as well as other waters without

historic, present, or reasonable future use in transporting interstate commerce. These isolated waters, particularly those subject to the Migratory Bird Rule, are precisely the waters that the Supreme Court held are not within the term "navigable waters" in the Act, in *SWANCC*.

69.     The regulation of isolated waterbodies exceeds the scope of the Clean Water Act as interpreted by the Supreme Court in *SWANCC*. Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

## FIFTH CLAIM FOR RELIEF

### PLAINTIFF AND ITS MEMBERS WERE DENIED THEIR RIGHT TO NOTICE AND COMMENT ON THE 1986 REGULATIONS AS READOPTED BY THE REPEAL AND RECODIFY RULE

70.     The preceding paragraphs are incorporated herein.

71.     Federal agencies must conduct rulemaking in accord with the Administrative Procedure Act which requires public notice of substantive rule changes and an opportunity for public comment on those changes. 5 U.S.C. § 553(b), (c).

72.     Defendants refused to take comment on the proposed readoption of the 1986 Regulations and related guidance during the comment periods on the proposed Repeal and Recodify Rule.

73.     If Defendants had accepted comments on the readoption of the 1986 Regulations and related guidance, Plaintiff would have submitted comments objecting to the 1986 Regulations, including those regulations' inclusion of all interstate waters, intrastate waters, non-navigable

tributaries to navigable-in-fact waters, and adjacent wetlands. Plaintiff would also have objected to the readoption of guidance related to the 1986 Regulations for the reasons stated herein.[2]

74.     Plaintiff was deprived of notice and an opportunity to comment on the proposed readoption of the 1986 Regulations and related guidance. Therefore, the 1986 Regulations and related guidance, as readopted by the Repeal and Recodify Rule, are invalid and should be set aside for procedural inadequacy under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

### SIXTH CLAIM FOR RELIEF
### 1986 REGULATIONS, AS READOPTED BY THE
### REPEAL AND RECODIFY RULE VIOLATE THE CONSTITUTION:
### IMPINGEMENT ON TRADITIONAL STATE AUTHORITY

75.     The preceding paragraphs are incorporated herein.

76.     In *SWANCC*, the Supreme Court held that federal regulation of small ponds and mudflats "would result in a significant impingement of the States' traditional and primary power over land and water use." 531 U.S. at 174.

77.     The 1986 Regulations extend federal jurisdiction so far into local land and water resources that it necessarily undermines State power, in violation of the Tenth Amendment. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution . . . are reserved to the States respectively, or to the people." U.S. Const. amend. X. Congress expressly acknowledged the prerogative of the States to regulate local land and water use in the Clean Water Act: "It is the policy of the Congress to recognize, preserve and protect the

---

[2] Plaintiff's counsel submitted substantive comments objecting to the re-adoption of the 1986 Regulations and related guidance. Plaintiff submitted comments supporting the repeal of the 2015 Navigable Waters Definition and objecting to the readoption of the 1986 Regulations and related guidance.

primary responsibilities and rights of the States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources . . . ." 33 U.S.C. § 1251(b). Rather than preserve and protect these rights and responsibilities, the 1986 Regulations violate them.

78.     Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

**SEVENTH CLAIM FOR RELIEF**

**1986 REGULATIONS AS READOPTED BY THE
REPEAL AND RECODIFY RULE VIOLATE THE CONSTITUTION:
EXCEEDING THE COMMERCE POWER**

79.     The preceding paragraphs are incorporated herein.

80.     In *SWANCC*, the Supreme Court also recognized that federal regulation of small waterbodies would exceed the scope of the Commerce power. *SWANCC*, 531 U.S. at 173. The Supreme Court raised similar concerns in *Rapanos* over the Army's broad interpretation of tributaries and adjacent wetlands. "Likewise, just as we noted in *SWANCC*, the Corps' interpretation stretches the outer limits of Congress's commerce power." *Rapanos*, 547 U.S. at 738.

81.     Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, interpret the Clean Water Act to exceed the Commerce Clause and are contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

## EIGHTH CLAIM FOR RELIEF

### 1986 REGULATIONS AS READOPTED BY THE REPEAL
### AND RECODIFY RULE VIOLATE THE CONSTITUTION:
### VIOLATION OF NON-DELEGATION AND VOID FOR VAGUENESS

82.    The preceding paragraphs are incorporated herein.

83.    The Act imposes criminal penalties for violations of its protections of "navigable waters." 33 U.S.C. § 1319(c).

84.    The Supreme Court has held, in *SWANCC* and *Rapanos*, that the term "navigable waters" in the Act encompasses some but not all non-navigable waters upstream of waters that are navigable-in-fact.

85.    To the extent that the term "navigable waters" in the Act is properly interpreted to include non-navigable waters upstream of or isolated from navigable-in-fact waters, the Act provides no intelligible principle for determining which upstream non-navigable waters are included and which are not, in violation of the non-delegation doctrine.

86.    The Act does not limit its delegation of authority to define "navigable waters" to only fact finding. The Act does not set forth the facts the agencies must consider in defining or determining "navigable waters" or the criteria by which to measure those facts. And the Act delegates all policy judgment related to the scope of "navigable waters" to the agencies. For these reasons, the Act violates the non-delegation doctrine. *See generally Gundy v. United States*, 139 S. Ct. 2116, 2141 (2019) (Gorsuch, J., dissenting).

87.    The term "navigable waters" in the Act is also void for vagueness, in violation of the Due Process Clause of the U.S. Constitution, if it is interpreted to include other than navigable-in-fact waters and the territorial seas. The Act provides no notice to the person of ordinary intelligence which non-navigable waters it regulates and which it does not.

88.     Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

### NINTH CLAIM FOR RELIEF

### 1986 REGULATIONS AND RELATED GUIDANCE AS READOPTED BY THE REPEAL AND RECODIFY RULE VIOLATE THE CONGRESSIONAL REVIEW ACT

89.     The preceding paragraphs are incorporated herein.

90.     The 1986 Regulations are a "rule" within the meaning of the Congressional Review Act, 5 U.S.C. § 801, *et seq.*

91.     The 1986 Regulations were not submitted to Congress pursuant to the Congressional Review Act when they were readopted under the Applicability Date Rule.

92.     The 2008 Post-*Rapanos* Guidance and other related guidance documents readopted by the Repeal and Recodify Rule are "rules" as defined by the Congressional Review Act, 5 U.S.C. § 804(c).

93.     The 2008 Post-*Rapanos* Guidance and other related guidance documents readopted by the Applicability Date Rule were not submitted to Congress as required by the Congressional Review Act, 5 U.S.C. § 801(a)(1).

94.     As a result, the 1986 Regulations and related guidance are not legally in effect pursuant to the Congressional Review Act, 5 U.S.C. § 801(a)(1)(A).

## TENTH CLAIM FOR RELIEF

## 2008 POST-*RAPANOS* GUIDANCE AS READOPTED BY THE REPEAL AND RECODIFY RULE FACIAL INVALIDITY

95.     The preceding paragraphs are incorporated herein.

96.     The Post-*Rapanos* Guidance purports to reinterpret the 1986 Regulations "in light of" the Supreme Court's decision in *Rapanos*. The Guidance is legally invalid in a number of ways, including:

97.     The Post-*Rapanos* Guidance claims that EPA and the Army may establish jurisdiction under either the plurality or concurring opinions in *Rapanos*. *Marks v. United States* allows the use of only one non-majority opinion, if any, as the holding of a fractured opinion. 430 U.S. 188, 193 (1977).

98.     The Post-*Rapanos* Guidance asserts jurisdiction over seasonal tributaries that flow as few as 90 days per year. But the *Rapanos* plurality requires that tributaries flow continuously, and does not allow the regulation of tributaries that lack "the ordinary presence of water." 547 U.S. at 739, *id.* at 732 n.5.

99.     The Post-*Rapanos* Guidance also allows regulation of wetlands well beyond those that abut covered waters and covered tributaries under the *Rapanos* plurality. *See* 547 U.S. at 742.

## PRAYER FOR RELIEF

Plaintiff prays for judgment from this Court as follows:

1.      A declaratory judgment stating that the categorical regulation of all tributaries by the 1986 Regulations, as readopted by the Repeal and Recodify Rule, is contrary to law and invalid;

2.      A declaratory judgment stating that the categorical regulation of adjacent waters by the 1986 Regulations, as readopted by the Repeal and Recodify Rule, is contrary to law and invalid;

3.      A declaratory judgment stating that the categorical regulation of all interstate waters by the 1986 Regulations, as readopted by the Repeal and Recodify Rule, is contrary to law and invalid;

4.      A declaratory judgment stating that the regulation of hydrologically isolated waters and other waters that are not used to transport goods in interstate commerce, by the 1986 Regulations, as readopted by the Repeal and Recodify Rule, is contrary to law and invalid;

5.      A declaratory judgment stating that the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are invalid due to violation of the notice and comments procedures required by the Administrative Procedure Act;

6.      A declaratory judgment stating that the 1986 Regulations, as readopted by the Repeal and Recodify Rule, unduly impinge on the States' traditional power over land and water use and therefore is invalid under the Tenth Amendment to the Constitution of the United States;

7.      A declaratory judgment stating that the 1986 Regulations, as readopted by the Repeal and Recodify Rule, exceed the Commerce power and are invalid under the Constitution of the United States;

8.      An injunction barring Federal Defendants from asserting federal jurisdiction based on the 1986 Regulations, as readopted by the Repeal and Recodify, or otherwise enforcing the 1986 Regulations, as readopted by the Repeal and Recodify Rule;

9.      A declaratory judgment that EPA and the Army have failed to submit the 1986 Regulations to Congress for review as required by the Congressional Review Act, and that as a consequence those regulations are not legally in effect;

10.    A declaratory judgment that EPA and the Army have failed to submit the Post-*Rapanos* Guidance and other guidance related to the 1986 Regulations to Congress as required by the Congressional Review Act, and that as a consequence those guidance documents are not legally in effect;

11.    A declaratory judgment that the 2008 Post-*Rapanos* Guidance is invalid as exceeding the scope of the term "navigable waters" under the Clean Water Act;

12.    An injunction barring Federal Defendants from enforcing the 1986 Regulations and related guidance, or asserting agency authority over water features on privately owned land under the 1986 Regulations and related guidance;

13.    A declaratory judgment that the term "navigable waters" in the Clean Water Act is void for vagueness and/or violates the non-delegation doctrine;

14.    An award to Plaintiff of reasonable attorneys' fees and costs, pursuant to 28 U.S.C. § 2412, or any other authority, including the Court's inherent authority, as appropriate; and,

15.    An award of any other relief as the Court may deem proper.

DATED: October 22, 2019.         Respectfully submitted:

**PACIFIC LEGAL FOUNDATION**

By     s/ Anthony L. François
ANTHONY L. FRANÇOIS (Federal Bar No. 15-74)
MOLLIE R. WILLIAMS (Cal. Bar No. 322970)*
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: TFrancois@pacificlegal.org
Email: MWilliams@pacificlegal.org
*Attorneys for Plaintiff, New Mexico Cattle Growers' Association*
*\*Pro Hac Vice Admission Pending*