**Exhibit A**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| NEW MEXICO CATTLE GROWERS' ASSOCIATION, | ) ) ) | Case No. 1:19-cv-00988-JHR-SCY |
| Plaintiff, | ) ) ) | **[PROPOSED]** |
| v. | ) ) | **FIRST SUPPLEMENTAL COMPLAINT** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; ANDREW WHEELER, in his official capacity as Administrator of the Environmental Protection Agency; UNITED STATES ARMY CORPS OF ENGINEERS; and R.D. JAMES, in his official capacity as Assistant Secretary for Civil Works, Department of the Army, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

### INTRODUCTION

1.     This lawsuit is about the proper interpretation of the term "navigable waters" in the Clean Water Act, 33 U.S.C. §§ 1362(12) and 1362(7). The Clean Water Act imposes severe criminal penalties for unpermitted discharges to "navigable waters." Permitting is onerous and expensive, costing years of time and hundreds of thousands of dollars on average. What "waters" are "navigable" is thus a major question. In 1986, the Environmental Protection Agency (EPA) and Army Corps of Engineers (Army) adopted regulations (the 1986 Regulations) that interpreted the term "navigable waters" broadly to include extensive non-navigable waterbodies and features upstream of and even isolated from navigable-in-fact rivers and lakes. In 2015, the EPA and the Army replaced the 1986 Regulations with a new regulation (the 2015 Navigable Waters Definition) that reinterpreted "navigable waters" to include some but not all of the non-navigable

water features included in the 1986 Regulations. On October 22, 2019, the EPA and the Army published a final rule (the Repeal and Recodify Rule) repealing the 2015 Navigable Waters Definition and purporting to readopt the 1986 Regulations, along with related guidance memoranda. On April 21, 2020, EPA and the Army adopted yet a new regulation, the Navigable Waters Protection Rule, again redefining "navigable waters" under the Clean Water Act.

2.      Plaintiff's members own or operate real property with aquatic features in New Mexico, and are subject to EPA and Army permitting and enforcement under the 1986 Regulations and related guidance, and the Navigable Waters Protection Rule. Plaintiff challenges several provisions of the 1986 Regulations and related guidance, and the Navigable Waters Protection Rule, as either exceeding the agencies' statutory authority under the Clean Water Act and the Congressional Review Act, or Congress' authority under the Commerce Clause, the Due Process Clause, the Non-Delegation Doctrine, and the Tenth Amendment. Plaintiff asks this Court to declare that several provisions of the Clean Water Act, the 1986 Regulations, and related guidance, and/or the Navigable Waters Protection Rule, are statutorily and constitutionally invalid, and to enjoin their enforcement.

### JURISDICTION AND VENUE

3.      Jurisdiction is founded upon 28 U.S.C. § 1331 (federal question); § 1346(a)(2) (civil action against the United States); § 2201 (authorizing declaratory relief); § 2202 (authorizing injunctive relief and any other "necessary and proper" relief); and 5 U.S.C. § 702 (judicial review of agency action under the Administrative Procedure Act).

4.      Plaintiff has exhausted all administrative remedies.

5.      This action is timely. 28 U.S.C. § 2401(a).

6.     The challenged rule is final agency action, ripe for judicial review. 5 U.S.C. § 704.

7.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(2), because Plaintiff's members reside in this District. *See also* 5 U.S.C. § 703 (venue for actions under the Administrative Procedure Act generally proper in "a court of competent jurisdiction").

**PARTIES**

**PLAINTIFF**

8.     The New Mexico Cattle Growers' Association (Cattle Growers') is a non-profit organization dedicated to advocating on behalf of its members on numerous issues relating to regulation under the Clean Water Act. Cattle Growers' devotes substantial resources to activities that seek to ensure that Clean Water Act regulation does not unreasonably impair the cattle industry. Cattle Growers' lobbies on Clean Water Act issues, publishes information on related issues for its members, performs research pertaining to Clean Water Act regulation, and submits comments to government agencies addressing concerns about how regulations under the Act affect its members. Cattle Growers' represents roughly 1,400 cattlemen and landowners throughout the State of New Mexico and many other states, many of whom are subject to the Clean Water Act under the 1986 Regulations and related guidance and the Navigable Waters Protection Rule based on the presence of intermittent and ephemeral tributaries on their properties, as well as wetlands and other stationary water features regulated by the 1986 Regulations and related guidance and the Navigable Waters Protection Rule. On behalf of its members, Cattle Growers' submitted comments objecting to the readoption of the 1986 Regulations and related guidance in the then-proposed Repeal and Recodify Rule, and the Navigable Waters Protection Rule.

**DEFENDANTS**

9.      The United States Environmental Protection Agency (EPA) is a cabinet agency and has enforcement responsibility for the Clean Water Act under the 1986 Regulations <u>and the Navigable Waters Protection Rule</u>. The EPA jointly issued the regulations challenged in this action.

10.     Andrew Wheeler is the Administrator of the EPA. He signed the Repeal and Recodify Rule on behalf of EPA on September 12, 2019. <u>He signed the Navigable Waters Protection Rule on behalf of EPA on January 23, 2020.</u>

11.     The United States Army Corps of Engineers (Army) is a branch of the Department of the Army and has enforcement responsibility for the Clean Water Act under the 1986 Regulations <u>and the Navigable Waters Protection Rule</u>. The Army jointly issued the regulations challenged in this action.

12.     R.D. James is the Assistant Secretary of the Army for Civil Works. He signed the Repeal and Recodify Rule on behalf of the Army on September 5, 2019. <u>He signed the Navigable Waters Protection Rule on behalf of the Army on January 23, 2020.</u>

**LEGAL BACKGROUND**

13.     For over a hundred years, the United States Congress regulated the obstruction of navigation on rivers and lakes through a series of statutes that applied to "navigable waters of the United States." *Rapanos v. United States*, 547 U.S. 715, 723 (2006). In a line of cases originating with *The Daniel Ball*, the Supreme Court of the United States interpreted this term to refer to

> [t]hose rivers . . . are navigable in fact[, *i.e.*] . . . when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce over which trade and travel are or may be conducted in the customary modes of travel on water. And they constitute navigable waters of the United States within

> the meaning of the acts of Congress, in contradistinction from the navigable waters of the States, when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries in the customary modes in which such commerce is conducted by water.

77 U.S. 557, 563 (1870); *see also Rapanos*, 547 U.S. at 723.

14.     The phrase "navigable waters of the United States" was used in Section 10 of the Rivers and Harbors Act when that act was first adopted in 1899, Mar. 3, 1899, c. 425, § 10, 30 Stat. 1151, and remains in use today, 33 U.S.C. § 403. Section 10 also prohibits obstructions to "the navigable capacity of the waters of the United States" unless authorized by Congress. 33 U.S.C. § 403.

## THE CLEAN WATER ACT

15.     In 1972, Congress adopted significant amendments to the Federal Water Pollution Control Act, 33 U.S.C. § 1251, *et seq.*, which has since been called the Clean Water Act (the Act). The Act prohibits unpermitted discharges, defined as additions of pollutants from point sources, to navigable waters. 33 U.S.C. §§ 1311(a), 1362(12). The Act assigns general permitting authority to the EPA, with limited authority assigned to the Army to permit discharges of dredged or fill material. 33 U.S.C. §§ 1342(a)(1), 1344(a). The meaning of the term "navigable waters" is what determines whether any particular action is prohibited unless permitted under the Act. The Act states that "navigable waters means the waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7).

16.     Nothing in the Act's definition of "navigable waters" extends the term to non-navigable waters of any sort (*e.g.*, non-navigable tributaries and "adjacent waters") that are upstream or isolated from navigable-in-fact waters. Nothing in the legislative history of the Act

shows that Congress "intended to exert anything more than its commerce power over navigation." *Solid Waste Agency of N. Cook Cty. v. Army Corps of Eng'rs*, 531 U.S. 159, 168 n.3 (2001) (*SWANCC*). In contrast, when Congress has intended to extend its reach to waters that are not navigable, it has said so expressly. For instance, with the Flood Control Act of 1936, Congress claimed jurisdiction over "navigable waters or their tributaries, including watersheds thereof." 33 U.S.C. § 701(a); 49 Stat. 1570.

17.     To the extent that "navigable waters" under the Act were to be interpreted to include any non-navigable waters upstream of navigable-in-fact waters, the Act provides no intelligible principle for determining which non-navigable waters are included, no factual considerations or criteria for the agencies to determine what waters are navigable, and no policy choices for what non-navigable waters are included.

### EARLY AGENCY REGULATIONS AND *RIVERSIDE BAYVIEW HOMES*

18.     In 1974 the Army adopted regulations defining "navigable waters" under the Act to implement its permitting authority, consistent with the historic definition adopted in *The Daniel Ball*. 39 Fed. Reg. 12,119 (Apr. 3, 1974); *Rapanos*, 547 U.S. at 723; *SWANCC*, 531 U.S. at 169. The U.S. District Court for the District of Columbia ruled that these regulations were inadequate in *Natural Resources Defense Council, Inc. v. Callaway*, 392 F. Supp. 685, 686 (D.D.C. 1975).

19.     Instead of appealing the trial court ruling, the Army adopted new and significantly broader regulations that added the regulation of non-navigable tributaries and wetlands as "navigable waters" for the first time. *See generally*, *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123-24 (1985).

20.     In 1985 the Supreme Court decided *Riverside Bayview Homes*, which holds that the Army regulations then in-effect reasonably interpreted "navigable waters" to include a non-navigable wetland abutting a navigable-in-fact lake. 474 U.S. at 135. The Supreme Court did not consider, in *Riverside Bayview Homes*, whether "navigable waters" included wetlands that do not abut navigable-in-fact waters. *Id.* at 124 n.2; *id.* at 131 n.8.

### THE 1986 REGULATIONS

21.     In 1986, the Army adopted new regulations defining "navigable waters" to include:

- All navigable-in-fact waters, plus all waters which are, were, or reasonably could be used more generally in interstate commerce (33 C.F.R. § 328.3(a)(1) (1987)[1]);

- The territorial seas (33 C.F.R. § 328.3(a)(6) (1987));

- All interstate waters including interstate wetlands ("Interstate Waters") (33 C.F.R. § 328.3(a)(2) (1987));

- All intrastate waters (whether navigable or not) that met various criteria ("Covered Intrastate Waters") (33 C.F.R. § 328.3(a)(3) (1987));

- All non-navigable tributaries to navigable-in-fact waters, Interstate Waters, Covered Intrastate Waters, and Impounds ("Non-navigable Tributaries") (33 C.F.R. § 328.3(a)(5) (1987));

- Wetlands adjacent to (meaning "bordering, contiguous, or neighboring") the territorial seas, navigable-in-fact waters, Interstate Waters, Covered Intrastate Waters, and their Non-navigable Tributaries ("Adjacent Wetlands") (33 C.F.R. §§ 328.3(a)(7), 328.3(c) (1987)); and

- All impounds of all other waters covered by the definition ("Impounds") (33 C.F.R. § 328.3(a)(4) (1987)).

33 C.F.R. § 328.3(a) (1987); 51 Fed. Reg. 41,206, 41,250-51 (Nov. 13, 1986) (the "1986 Regulations").

---

[1] The EPA adopted identical regulations in 1988, which are included in Plaintiff's definition of the 1986 Regulations. For ease of reference, the Army's regulations are cited throughout. From the 1986 Regulations forward, both EPA and the Army's regulations are identical in relevant part.

22.     When it adopted the 1986 Regulations, the Army also adopted the position that "navigable waters" included all waters (1) used to irrigate crops sold in interstate commerce, (2) served as habitat for birds protected by the Migratory Bird Treaty Act, (3) served as habitat for endangered species, or (4) "which are or would be used as habitat by migratory birds which cross state lines." 51 Fed. Reg. 41,217 (Nov. 13, 1986). The last of these provisions was known as the Migratory Bird Rule.

### *SWANCC* AND *RAPANOS*

23.     The 1986 Regulations were the subject of two adverse Supreme Court decisions. In *SWANCC*, the Supreme Court invalidated the Migratory Bird Rule as beyond the scope of "navigable waters" under the Act. *SWANCC* narrowed *Riverside Bayview Homes* by emphasizing that the word "navigable" in the text of the Act demonstrates that Congress' intent was focused on its "traditional jurisdiction over waters that were . . . navigable in fact." 531 U.S. at 172. In *SWANCC* the Court further emphasized the dual purposes of the Act, with federalism and local control of land use and water allocation equal to the federal policy of water quality protection, and that the Clean Water Act lacks the necessary "clear statement" to indicate any congressional intent to interfere in traditionally local functions. *Id.* at 172-74. *SWANCC* also posits that the Army's original 1974 regulations, defining "navigable waters" consistent with the meaning set forth in *The Daniel Ball*, may have been correct. 531 U.S. at 168, *id*. at 168 n.3.

24.     Then in a fractured opinion in *Rapanos*, the Supreme Court invalidated the non-navigable Tributary and Adjacent Wetlands provisions of the 1986 Regulations, also as beyond the scope of the statutory term "navigable waters."

25.     The issue in *Rapanos* was how to interpret the Clean Water Act's term "navigable waters" in the context of non-navigable tributaries to navigable-in-fact waterways, and wetlands that do not physically abut navigable-in-fact waterways. 547 U.S. at 728, *id.* at 759 (Kennedy, J., concurring). The judgment of the Court in *Rapanos* was to remand the case because the lower courts had not properly interpreted that term. *Id.* at 757. The five Justices who supported the judgment arrived at it by two different interpretations of the term "navigable waters."

26.     The *Rapanos* plurality determined that the language, structure, and purpose of the Clean Water Act all limited federal authority to "relatively permanent, standing or continuously flowing bodies of water" commonly recognized as "streams, oceans, rivers and lakes" connected to traditional navigable waters. 547 U.S. at 739. The plurality also limited federal regulation of wetlands to those physically abutting these waterbodies, such that they have an immediate surface water connection where the wetland and water body are "indistinguishable." *Id.* at 755.

27.     Justice Kennedy joined the plurality in the judgment. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the federal government could regulate a non-abutting wetland only if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779 (Kennedy, J., concurring).

### 2008 POST-*RAPANOS* GUIDANCE

28.     Following *Rapanos*, the EPA and the Army jointly adopted an informal guidance document (the 2008 Post-*Rapanos* Guidance) which purported to apply the *Rapanos* decision to the 1986 Regulations.

29.     The 2008 Post-*Rapanos* Guidance is a "rule" within the ambit of the Congressional

Review Act, 5 U.S.C. § 801, *et seq.*, but was not and has never been submitted to Congress as the

Congressional Review Act requires.

30.     The Post-*Rapanos* Guidance asserts that the Army and EPA may claim jurisdiction

under either the *Rapanos* plurality or concurrence.

31.     The Guidance also asserts that the plurality standard is satisfied by tributaries that

flow as little as 90 days per year, and broadly defines "adjacent" for the purpose of regulating

wetlands.

### THE 2015 NAVIGABLE WATERS DEFINITION

32.     In 2015, the EPA and the Army adopted a new regulation (the 2015 Navigable

Waters Definition) redefining "navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054

(June 29, 2015). The 2015 Navigable Waters Definition superseded the 1986 Regulations and the

Post-*Rapanos* Guidance.

33.     On August 21, 2019, the U.S. District Court for the Southern District of Georgia

ruled on summary judgement that the 2015 Navigable Waters Definition violates the Clean Water

Act. *Georgia v. Wheeler*, No. 2:15-cv-00079, 2019 WL 3949922 (S.D. Ga. Aug. 21, 2019).

34.     On October 22, 2019, partially in response to the decision of the Southern District

of Georgia, Defendants published the Repeal and Recodify Rule in the Federal Register, which

rescinded the 2015 Navigable Waters Definition, and readopted the 1986 Regulations and related

guidance including the Post-*Rapanos* Guidance.

**THE REPEAL AND RECODIFY RULE**

35.     On July 27, 2017, the EPA and the Army proposed a regulation which would repeal the 2015 Navigable Waters Definition and recodify the 1986 Regulations (the Repeal and Recodify Rule) ("If this proposal is finalized, the regulations defining the scope of federal Clean Water Act (CWA) jurisdiction would be those portions of the CFR as they existed before the amendments promulgated in the 2015 Rule."). 83 Fed. Reg. 32,227 (July 12, 2018).

36.     The agencies proposed to readopt the 1986 Regulations and related guidance documents. But they refused to consider public comment on the substance of the 1986 Regulations and related guidance. 82 Fed. Reg. 34,903 (July 27, 2017).

37.     The refusal to take comment on the substance of the 1986 Regulations, Post-*Rapanos* Guidance, and other guidance documents violated the EPA and the Army's obligations for notice and comment rulemaking under the Administrative Procedure Act, 5 U.S.C. § 553(c).

38.     On October 22, 2019, the EPA and the Army published the final Repeal and Recodify Rule in the Federal Register, repealing the 2015 Navigable Waters Definition and readopting the 1986 Regulations and related guidance.

39.     The 1986 Regulations and related guidance readopted under the proposed Repeal and Recodify Rule were not and have never been submitted to Congress for review, in violation of the Congressional Review Act, 5 U.S.C. § 801, *et seq*.

40.     Several provisions of the 1986 Regulations, as well as the related guidance, exceed the scope of the Clean Water Act, in that both the Migratory Bird Rule (adopted as guidance at the time the 1986 Regulations were adopted) and the Tributary and Adjacent Wetland rules, have all been declared invalid by the Supreme Court.

41.    The inclusion in the 1986 Regulations of all interstate waters and of many intrastate waters that are not navigable-in-fact also exceeds the agencies' authority under the Act.

## THE NAVIGABLE WATERS PROTECTION RULE

42.    On February 14, 2019, EPA and the Army proposed another revision to the regulatory definition of 'navigable waters" under the Clean Water Act. 84 Fed. Reg. 4154 (Feb. 14, 2019). Plaintiff, its counsel, and others submitted substantive comments during the public comment period on the proposal. These comments addressed the provisions of the final regulation challenged below. EPA and the Army fully considered each of the challenged provisions below, both on their own accord and in response to comments from Plaintiff, its counsel, and others. Plaintiff has exhausted all administrative requirements related to this rulemaking.

43.    On April 21, 2020, EPA and the Army published a final regulation in the Federal Register called the Navigable Waters Protection Rule ("Navigable Waters Protection Rule" or "2020 Definition"). 85 Fed. Reg. 22,250 (Apr. 21, 2020). In drafting the 2020 Definition, EPA and the Army took public comment on and broadly considered all aspects of the resulting definition, including whether to readopt definitional provisions of previous regulations defining "navigable waters." 85 Fed. Reg. at 22,259 (Executive Order directing agencies to consider *Rapanos* plurality), 22,261 (agencies considered comments in this rulemaking submitted in connection with the Repeal and Recodify Rule), 22,264 (agencies considered comments on scope of "adjacent wetland" regulation), 22,270 (agencies consideration of comments led to revisions of proposal in final rule), 22,271 (agencies developed what they consider to be reasonable priorities in defining "navigable waters"), 22,273 (rejecting, after consideration of comments, use of *Rapanos* plurality as basis for new rule), 22,280-81 (reciting comments on whether prior scope of "waters used in

commerce" category should be modified or retained, agency considered comments in deciding whether to modify prior text of regulatory provision).

44.     The 2020 Definition includes four categories:

(1) The territorial seas, tidal waters, and waters previously or currently used, or prospectively susceptible to use, in interstate or foreign commerce. 33 C.F.R. § 328.3(a)(1); 85 Fed. Reg. at 22,338.[2]

(2) Tributaries, 33 C.F.R. § 328.3(a)(2), which are rivers, streams, or similarly naturally occurring (whether or not altered or relocated) surface water channels (including ditches that relocate or are constructed in them, or that drain adjacent wetlands) that, in a typical year, contribute intermittent or perennial surface water flow to other regulated waters, 33 C.F.R. § 328.3(c)(12). Perennial "means surface water flowing continuously year-round." 33 C.F.R. § 328.3(c)(8). Intermittent "means surface water flowing continuously during certain times of the year and more than in direct response to precipitation." 33 C.F.R. § 328.3(c)(5). A typical year is based generally on a thirty-year period. 33 C.F.R. § 328.3(c)(13). Tributaries are regulated even if they are severed from other regulated waters by non-regulated features. 33 C.F.R. § 328.3(c)(12); 85 Fed. Reg. at 22,338-39.

---

[2] This and subsequent references in paragraph 44, in the Eleventh through Eighteenth Claims below, and in paragraphs 14-25 of the Prayer for Relief, to provisions of 33 C.F.R. § 328.3, are to the version set forth in the Navigable Waters Protection Rule, 85 Fed. Reg. at 22,338-39. This section is the one appearing in the Army's regulations. EPA's corresponding and identical regulations are also published in the Navigable Waters Protection Rule as 40 C.F.R. § 120.2, see 85 Fed. Reg. at 22,340-41. Plaintiff's Eleventh through Eighteenth Claims challenge the provisions of both the Army's regulations, as listed, and the identical provisions of the EPA regulations, incorporated here by reference.

(3) Lakes and ponds, and impoundments of regulated waters. 33 C.F.R. § 328.3(a)(3), which are standing bodies of open water that either contribute surface water flow to, or are inundated by, other regulated waters in a typical year. 33 C.F.R. § 328.3(c)(6). Lakes and ponds, and impoundments of regulated waters, are regulated even if they are severed from other regulated waters by non-regulated features. 33 C.F.R. § 328.3(c)(6); 85 Fed. Reg. at 22,338-39.

(4) Adjacent wetlands, 33 C.F.R. § 328.3(a)(4), which are wetlands that abut or are inundated by other regulated non-wetland waters, or are physically separated from them only by natural, or permeable artificial, barriers. 33 C.F.R. § 328.3(c)(1); 85 Fed. Reg. at 22,338.

45.    In general, features may be regulated under more than one of these categories. So a small river might be both a "water used in commerce" and a "tributary" while a lake might be both a "water used in commerce" and a "lake, pond, or impoundment of a regulated water."

46.    Many of the "waters" included within these categories do not stand or flow year-round, and many of these non-perennial waters are only present for days or weeks before they dry up. EPA and the Army regulate discharges to the locations of these waters even though the "waters" only occupy those locations for a few days or weeks in any given year.

### DECLARATORY RELIEF ALLEGATIONS

47.    The preceding paragraphs are incorporated herein.

48.    Plaintiff contends that the 1986 Regulations and related guidance, as readopted by the Repeal and Recodify Rule, have been expressly invalidated in part by the Supreme Court and are otherwise illegal, and that the 2020 Definition violates the Constitution, the Clean Water Act,

and Supreme Court precedent. Defendants claim that the 1986 Regulations and related guidance, and the 2020 Definition, are legally valid.

49.     No factual development is necessary to resolve this case as Plaintiff raises a pure legal challenge to the 1986 Regulations and related guidance as they are readopted by the Repeal and Recodify Rule, and the 2020 Definition, on their face.

50.     Plaintiff's members are injured by the 1986 Regulations and related guidance as readopted by the Repeal and Recodify Rule, and the 2020 Definition, because they hold beneficial interests in property that is or will be subject to increased federal regulatory control under the 1986 Regulations and guidance and/or the 2020 Definition. This will require them to seek federal permit approval at significant cost to use their property for its intended purpose. Or, it will require Plaintiff's members to seek a determination from the Army or a private party expert whether the 1986 Regulations and related guidance or the Navigable Waters Protection Rule apply to them. *See Hawkes Co. v. Army Corps of Engineers*, 782 F.3d 994, 1003 (8th Cir. 2015) (Kelly, J., concurring) ("This is a unique aspect of the CWA; most laws do not require the hiring of expert consultants to determine if they even apply to you or your property."), *aff'd*, 136 S. Ct. 1807 (2016).

51.     Accordingly, an actual and substantial controversy exists between Plaintiff and Plaintiff's members and Defendants as to the parties' respective legal rights and responsibilities. A judicial determination of the parties' rights and responsibilities arising from this actual controversy is necessary and appropriate at this time.

### INJUNCTIVE RELIEF ALLEGATIONS

52.     The preceding paragraphs are incorporated herein.

53.     Because of the 1986 Regulations and 2020 Definition's overbroad and illegal definition of the "navigable waters" under the Clean Water Act, Plaintiff's members will now be required to obtain federal approval of new and ongoing land-use projects at a cost of tens to hundreds of thousands of dollars and months, if not years, of delay.

54.     Plaintiff's members will continue to be injured by the Army and EPA's illegal interpretation of "navigable waters" under the Clean Water Act.

55.     Enjoining the enforcement of the Repeal and Recodify Rule's readoption of the 1986 Regulations and related guidance, and the illegal provisions of the 2020 Definition, will redress these harms.

56.     Plaintiff's members have no plain, speedy, and adequate remedy at law and, absent judicial intervention, Plaintiff's members will suffer irreparable injury.

57.     If not enjoined, the Army and EPA will enforce the 1986 Regulations and related guidance, as readopted by the Repeal and Recodify Rule, and/or the 2020 Definition, against Plaintiff's members throughout New Mexico.

### FIRST CLAIM FOR RELIEF
### 1986 REGULATIONS AS READOPTED
### BY THE REPEAL AND RECODIFY RULE:
### *ULTRA VIRES* REGULATION OF ALL "TRIBUTARIES"

58.     The preceding paragraphs are incorporated herein.

59.     Under the Clean Water Act, the Army and EPA may regulate "navigable waters." *See* 33 U.S.C. § 1344(a).

60.     The 1986 Regulations define "navigable waters" to include all non-navigable tributaries. 33 C.F.R. § 328.3(a)(5) (2014).

61.     In *Rapanos* a majority of the Supreme Court held that this provision of the 1986 Regulations is invalid. 547 U.S. at 725 (rejecting the regulation of tributaries based on an ordinary high water mark because "[t]his interpretation extended 'the waters of the United States' to virtually any land feature over which rainwater or drainage passes and leaves a visible mark— even if only 'the presence of litter and debris'"). *See also id.* at 781 (Kennedy, J., concurring) (rejecting categorical regulation of tributaries with an ordinary high water mark because "the breadth of this standard . . . [would] leave wide room for regulation of drains, ditches and streams remote from any navigable-in-fact water and carrying only minor water volumes toward it").

62.     Categorical regulation of all tributaries exceeds the scope of the Clean Water Act as interpreted by the Supreme Court. Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

## SECOND CLAIM FOR RELIEF
### 1986 REGULATIONS AS READOPTED
### BY THE REPEAL AND RECODIFY RULE:
### *ULTRA VIRES* REGULATION OF ALL WATERS
### "ADJACENT" TO ALL "TRIBUTARIES"

63.     The preceding paragraphs are incorporated herein.

64.     It is axiomatic that if the regulation of all tributaries is invalid then the categorical regulation of all waters adjacent to such tributaries is also invalid. *See Rapanos*, 547 U.S. at 781-82 (Kennedy, J., concurring) (Regulation of all tributaries "precludes its adoption as the determinative measure of whether adjacent wetlands are likely to play an important role in the integrity of an aquatic system comprising navigable waters as traditionally understood. Indeed, in many cases wetlands adjacent to tributaries covered by this standard might appear little more

related to navigable-in-fact waters than were the isolated ponds held to fall beyond the Act's scope in *SWANCC*."). For its part the *Rapanos* plurality opined that wetlands may only be regulated under the Clean Water Act if they are so closely connected to regulated tributaries that it can't be discerned where one ends and the other begins. 547 U.S. at 755.

65.    The 1986 Regulations interpret the Act as including all wetlands broadly defined to be adjacent to any tributary. 33 C.F.R. § 328.3(a)(7) (2014). The Supreme Court invalidated this very provision of the 1986 Regulations in *Rapanos*.

66.    Categorical regulation of all wetlands adjacent to all tributaries exceeds the scope of the Clean Water Act as interpreted by the Supreme Court. Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

### THIRD CLAIM FOR RELIEF
### 1986 REGULATIONS AS READOPTED
### BY THE REPEAL AND RECODIFY RULE:
### *ULTRA VIRES* REGULATION OF ALL INTERSTATE WATERS

67.    The preceding paragraphs are incorporated herein.

68.    The 1986 Regulations, as readopted by the Repeal and Recodify Rule, purport to regulate all interstate waters regardless of navigability or connection to navigable-in-fact waters. 33 C.F.R. § 328.3(a)(2) (2014).

69.    Such waters necessarily include isolated waters or waters that the Supreme Court determined would have no connection or effect on navigable-in-fact waters and could not be regulated under the Clean Water Act. *See SWANCC*, 531 U.S. at 171-72 ("We cannot agree that Congress' separate definitional use of the phrase 'waters of the United States' constitutes a basis

for reading the term 'navigable waters' out of the statute. We said in *Riverside Bayview Homes* that the word 'navigable' in the statute was of 'limited import' 474 U.S. at 133, 106 S. Ct. 455, and went on to hold that § 404(a) extended to nonnavigable wetlands adjacent to open waters. But it is one thing to give a word limited effect and quite another to give it no effect whatever. The term 'navigable' has at least the import of showing us what Congress had in mind as its authority for enacting the CWA: its traditional jurisdiction over waters that were or had been navigable in fact or which could reasonably be so made.").

70.     Categorical regulation of all interstate waters exceeds the scope of the Clean Water Act as interpreted by the Supreme Court. Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

### FOURTH CLAIM FOR RELIEF
### 1986 REGULATIONS AS READOPTED
### BY THE REPEAL AND RECODIFY RULE:
### *ULTRA VIRES* REGULATION OF ISOLATED WATERS

71.     The preceding paragraphs are incorporated herein.

72.     The 1986 Regulations include a wide variety of intrastate waters with potential effects on interstate commerce, but which are not used to transport interstate commerce. 33 C.F.R. § 328.3(a)(1) (2014). The 1986 Regulations also purport to include waters *used* in interstate commerce which are not themselves used to *transport* interstate commerce. 33 C.F.R. § 328.3(a)(1) (2014).

73.     These waters include those which the Army treated as regulated under the 1986 Regulations because they provide habitat for migratory birds, as well as other waters without

historic, present, or reasonable future use in transporting interstate commerce. These isolated waters, particularly those subject to the Migratory Bird Rule, are precisely the waters that the Supreme Court held are not within the term "navigable waters" in the Act, in *SWANCC*.

74.     The regulation of isolated waterbodies exceeds the scope of the Clean Water Act as interpreted by the Supreme Court in *SWANCC*. Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2)(A).

### FIFTH CLAIM FOR RELIEF

**PLAINTIFF AND ITS MEMBERS WERE DENIED
THEIR RIGHT TO NOTICE AND COMMENT ON THE 1986
REGULATIONS AS READOPTED BY THE REPEAL AND RECODIFY RULE**

75.     The preceding paragraphs are incorporated herein.

76.     Federal agencies must conduct rulemaking in accord with the Administrative Procedure Act which requires public notice of substantive rule changes and an opportunity for public comment on those changes. 5 U.S.C. § 553(b), (c).

77.     Defendants refused to take comment on the proposed readoption of the 1986 Regulations and related guidance during the comment periods on the proposed Repeal and Recodify Rule.

78.     If Defendants had accepted comments on the readoption of the 1986 Regulations and related guidance, Plaintiff would have submitted comments objecting to the 1986 Regulations, including those regulations' inclusion of all interstate waters, intrastate waters, non-navigable

tributaries to navigable-in-fact waters, and adjacent wetlands. Plaintiff would also have objected to the readoption of guidance related to the 1986 Regulations for the reasons stated herein.[3]

79.     Plaintiff was deprived of notice and an opportunity to comment on the proposed readoption of the 1986 Regulations and related guidance. Therefore, the 1986 Regulations and related guidance, as readopted by the Repeal and Recodify Rule, are invalid and should be set aside for procedural inadequacy under the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

### SIXTH CLAIM FOR RELIEF
### 1986 REGULATIONS, AS READOPTED BY THE REPEAL AND RECODIFY RULE VIOLATE THE CONSTITUTION: IMPINGEMENT ON TRADITIONAL STATE AUTHORITY

80.     The preceding paragraphs are incorporated herein.

81.     In *SWANCC*, the Supreme Court held that federal regulation of small ponds and mudflats "would result in a significant impingement of the States' traditional and primary power over land and water use." 531 U.S. at 174.

82.     The 1986 Regulations extend federal jurisdiction so far into local land and water resources that it necessarily undermines State power, in violation of the Tenth Amendment. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution . . . are reserved to the States respectively, or to the people." U.S. Const. amend. X. Congress expressly acknowledged the prerogative of the States to regulate local land and water use in the Clean Water Act: "It is the policy of the Congress to recognize, preserve and protect the

---

[3] Plaintiff's counsel submitted substantive comments objecting to the re-adoption of the 1986 Regulations and related guidance. Plaintiff submitted comments supporting the repeal of the 2015 Navigable Waters Definition and objecting to the readoption of the 1986 Regulations and related guidance.

primary responsibilities and rights of the States to prevent, reduce, and eliminate pollution, to plan the development and use (including restoration, preservation, and enhancement) of land and water resources . . . ." 33 U.S.C. § 1251(b). Rather than preserve and protect these rights and responsibilities, the 1986 Regulations violate them.

83.     Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

**SEVENTH CLAIM FOR RELIEF**

**1986 REGULATIONS AS READOPTED BY THE
REPEAL AND RECODIFY RULE VIOLATE THE CONSTITUTION:
EXCEEDING THE COMMERCE POWER**

84.     The preceding paragraphs are incorporated herein.

85.     In *SWANCC*, the Supreme Court also recognized that federal regulation of small waterbodies would exceed the scope of the Commerce power. *SWANCC*, 531 U.S. at 173. The Supreme Court raised similar concerns in *Rapanos* over the Army's broad interpretation of tributaries and adjacent wetlands. "Likewise, just as we noted in *SWANCC*, the Corps' interpretation stretches the outer limits of Congress's commerce power." *Rapanos*, 547 U.S. at 738.

86.     Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, interpret the Clean Water Act to exceed the Commerce Clause and are contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

## EIGHTH CLAIM FOR RELIEF

### 1986 REGULATIONS AS READOPTED BY THE REPEAL AND RECODIFY RULE VIOLATE THE CONSTITUTION: VIOLATION OF NON-DELEGATION AND VOID FOR VAGUENESS

87.     The preceding paragraphs are incorporated herein.

88.     The Act imposes criminal penalties for violations of its protections of "navigable waters." 33 U.S.C. § 1319(c).

89.     The Supreme Court has held, in *SWANCC* and *Rapanos*, that the term "navigable waters" in the Act encompasses some but not all non-navigable waters upstream of waters that are navigable-in-fact.

90.     To the extent that the term "navigable waters" in the Act is properly interpreted to include non-navigable waters upstream of or isolated from navigable-in-fact waters, the Act provides no intelligible principle for determining which upstream non-navigable waters are included and which are not, in violation of the non-delegation doctrine.

91.     The Act does not limit its delegation of authority to define "navigable waters" to only fact finding. The Act does not set forth the facts the agencies must consider in defining or determining "navigable waters" or the criteria by which to measure those facts. And the Act delegates all policy judgment related to the scope of "navigable waters" to the agencies. For these reasons, the Act violates the non-delegation doctrine. *See generally Gundy v. United States*, 139 S. Ct. 2116, 2141 (2019) (Gorsuch, J., dissenting).

92.     The term "navigable waters" in the Act is also void for vagueness, in violation of the Due Process Clause of the U.S. Constitution, if it is interpreted to include other than navigable-in-fact waters and the territorial seas. The Act provides no notice to the person of ordinary intelligence which non-navigable waters it regulates and which it does not.

93.     Therefore, the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are contrary to law, in violation of the Administrative Procedure Act. *See* 5 U.S.C. § 706(2).

### NINTH CLAIM FOR RELIEF

### 1986 REGULATIONS AND RELATED GUIDANCE
### AS READOPTED BY THE REPEAL AND RECODIFY RULE
### VIOLATE THE CONGRESSIONAL REVIEW ACT

94.     The preceding paragraphs are incorporated herein.

95.     The 1986 Regulations are a "rule" within the meaning of the Congressional Review Act, 5 U.S.C. § 801, *et seq.*

96.     The 1986 Regulations were not submitted to Congress pursuant to the Congressional Review Act when they were readopted under the Applicability Date Rule.

97.     The 2008 Post-*Rapanos* Guidance and other related guidance documents readopted by the Repeal and Recodify Rule are "rules" as defined by the Congressional Review Act, 5 U.S.C. § 804(c).

98.     The 2008 Post-*Rapanos* Guidance and other related guidance documents readopted by the Applicability Date Rule were not submitted to Congress as required by the Congressional Review Act, 5 U.S.C. § 801(a)(1).

99.     As a result, the 1986 Regulations and related guidance are not legally in effect pursuant to the Congressional Review Act, 5 U.S.C. § 801(a)(1)(A).

### TENTH CLAIM FOR RELIEF

### 2008 POST-*RAPANOS* GUIDANCE AS READOPTED BY THE
### REPEAL AND RECODIFY RULE FACIAL INVALIDITY

100.    The preceding paragraphs are incorporated herein.

101.    The Post-*Rapanos* Guidance purports to reinterpret the 1986 Regulations "in light of" the Supreme Court's decision in *Rapanos*. The Guidance is legally invalid in a number of ways, including:

102.    The Post-*Rapanos* Guidance claims that EPA and the Army may establish jurisdiction under either the plurality or concurring opinions in *Rapanos*. *Marks v. United States* allows the use of only one non-majority opinion, if any, as the holding of a fractured opinion. 430 U.S. 188, 193 (1977).

103.    The Post-*Rapanos* Guidance asserts jurisdiction over seasonal tributaries that flow as few as 90 days per year. But the *Rapanos* plurality requires that tributaries flow continuously, and does not allow the regulation of tributaries that lack "the ordinary presence of water." 547 U.S. at 739, *id.* at 732 n.5.

104.    The Post-*Rapanos* Guidance also allows regulation of wetlands well beyond those that abut covered waters and covered tributaries under the *Rapanos* plurality. *See* 547 U.S. at 742.

### ELEVENTH CLAIM FOR RELIEF

### NAVIGABLE WATERS PROTECTION RULE, 33 C.F.R. § 328.3(a)(1):
### *ULTRA VIRES* REGULATION OF ISOLATED
### NON-NAVIGABLE WATERS "USED IN INTERSTATE COMMERCE"

105.    The preceding paragraphs are incorporated herein.

106.    The Clean Water Act only regulates discharges to "navigable waters." 33 U.S.C. §§ 1311(a), 1344(a), 1362(12).

107.   Section 328.3(a)(1)[4] of the Navigable Waters Protection Rule defines navigable waters to include waters previously or currently used, or prospectively susceptible of use, "in interstate or foreign commerce." 33 C.F.R. § 328.3(a)(1). The term of art "navigable waters of the United States" refers to a subset of these waters, i.e. those that are navigable-in-fact and used *for the transportation of goods* in interstate or foreign commerce. *The Daniel Ball*, 77 U.S. at 563.

108.   Many waters within Section 328.3(a)(1) are not, have never been, and could never be used to transport goods in interstate commerce, but are "used in interstate commerce" in various ways. Section 328.3(a)(1) does not expressly require that "waters used in commerce" be navigable-in-fact or be connected, by tributaries or otherwise, to any other regulated water body. Nor is the category expressly limited to surface water.

109.   Given the breadth of New Deal-era legal notions of "commerce" and the expansive scope presently afforded Congress under the Supreme Court's Commerce Clause jurisprudence, *see, e.g.*, *Wickard v. Filburn*, 317 U.S. 111 (1942) (under Commerce Power, Congress may forbid people from eating food they grew for themselves on their own property), the "non-transport" portion of "waters used in commerce" probably captures most of the water in the United States.

110.   Most germanely to Plaintiff and its members, these "non-transport" "waters used in commerce" appear to include those used to water livestock and to irrigate crops sold in interstate commerce. In today's world of global agricultural markets, this probably includes all such waters anywhere in the United States.

111.   Waters used to water livestock and irrigate crops occur ubiquitously on private farm and ranch properties owned or operated by Plaintiff's members throughout the state of New

---

[4] See footnote 2 above.

Mexico. These include many non-navigable streams, ponds, wetlands, and other natural features, as well as developed water sources like reservoirs, tanks, troughs, and the like (some fed only by groundwater).[5]

112.    In *SWANCC*, the Supreme Court held that EPA and the Army's "migratory bird rule" was not a reasonable or constitutionally permissible interpretation of "navigable waters" under the Clean Water Act. 531 U.S. at 167 ("not fairly supported by" the Act), *id*. at 174 (interpreting Act to allow regulation of isolated non-navigable ponds would violate Tenth Amendment absent clear statutory statement of Congressional intent to that effect). In so holding, the Court reasoned that Congress' intent in using the term "navigable waters" tethered the meaning of the term to Congress' traditional regulation of navigation. 531 U.S. at 172. Further, the Court questioned whether the Army's original regulatory definition of the term "navigable waters," which mirrored the meaning of "navigable waters of the United States," might have been the correct one after all. *Id.* at 168. The Court also refused to read the Act as extending Congress' Commerce Power authority to its outermost limit absent a "clear statement" to that effect, which the Act lacks. *Id*. at 174. Ultimately, the Supreme Court held in *SWANCC* that "navigable waters" does not include isolated ponds whose only basis for regulation is that they are used by migratory birds. *Id*.

---

[5] A provision of the 2020 Definition purports to exempt "[a]rtificial lakes and ponds, including water storage reservoirs and farm, irrigation, [and] stock watering . . . ponds[.]" 33 C.F.R. § 328.3(b)(8). However, this applies by its terms only to artificial standing water storage, and does not apply if the ostensibly exempt water bodies are "lakes and ponds, and impoundments of regulated waters." Nor does the "artificial lakes and ponds" exemption appear to apply at all to flowing water bodies (however small) used to water livestock or irrigated crops.

113.   The agency interpretation which announced the Migratory Bird rule also interpreted "navigable waters" to include water used "to irrigate crops sold in interstate commerce." *SWANCC*, 531 U.S. at 164 (quoting 51 Fed. Reg. at 41,217).

114.   Categorical regulation, of isolated, non-navigable, "waters used in commerce" to water livestock and irrigate crops, exceeds the scope of the Clean Water Act as interpreted by the Supreme Court in *SWANCC*, for the same reasons that the Migratory Bird rule did in that case.

115.   Therefore, Section 328.3(a)(1) of the Navigable Waters Protection Rule is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## TWELFTH CLAIM FOR RELIEF

### NAVIGABLE WATERS PROTECTION RULE, 33 C.F.R. § 328.3(a)(2): *ULTRA VIRES* REGULATION OF ALL INTERMITTENT "TRIBUTARIES"

116.   The preceding paragraphs are incorporated herein.

117.   The Clean Water Act only regulates discharges to "navigable waters." 33 U.S.C. §§ 1311(a), 1344(a), 1362(12).

118.   Section 328.3(a)(2) of the Navigable Waters Protection Rule defines "navigable waters" to include intermittent non-navigable tributaries. 33 C.F.R. § 328.3(a)(2); § 328.3(c)(5); § 328.3(c)(12); § 328.3(c)(13). An "intermittent" tributary flows more than ephemerally (i.e. only in direct response to precipitation), but not perennially. 33 C.F.R. § 328.3(c)(5).

119.   In *Rapanos* a majority of the Justices of the Supreme Court opined that the categorical regulation of intermittent tributaries exceeds the scope of the Clean Water Act. 547 U.S. at 733-34; *id.* at 733 n.6 (rejecting the regulation of any intermittent tributaries); *id.* at 781

(Kennedy, J., concurring) (rejecting categorical regulation of tributaries with an ordinary high water mark).

120. Both the *Rapanos* plurality and the concurrence cast doubt on the authority of the agencies to regulate non-navigable ditches under the Clean Water Act. 547 U.S. at 734; *id*. at 779 (Kennedy, J., concurring in judgment) (rejecting regulation of roadside ditches with insignificant flow).

121. The intermittent non-navigable tributaries regulated by Section 328.3(a)(2) can be both negligible in volume and very limited in duration. The definition concededly includes the "merest trickle" because it has no lower bound for the volume of flow necessary to be a tributary. 85 Fed. Reg. at 22,291. The Rule also has no minimum duration of flow for a tributary to be regulated, other than that it flow more than in direct response to precipitation. *Id.* at 22,292.

122. So, a tributary would be regulated under Section 328.3(a)(2) even if it had as little as a garden hose worth of non-ephemeral flow extending over as little as a single week.

123. These tributaries will be at the very outer edges of any watershed and at the farthest distance possible from navigable-in-fact rivers or lakes. Their connection to downstream navigable rivers and lakes is necessarily the remotest, most attenuated, and least significant possible connection in any watershed.

124. Section 328.3(a)(2) also includes many ditches in the definition of tributary, including any that the agencies determine to be constructed in or to relocate natural tributaries, and any that are constructed in adjacent wetlands. 33 C.F.R. § 328.3(a)(2); § 328.3(c)(2) (definition of ditch); § 328.3(c)(12); § 328.3(b)(5) (limited exemption for ditches that are not tributaries or located in adjacent wetlands).

125.    Intermittent non-navigable tributaries routinely occur on private property that legally is or may be used for a wide variety of land uses and purposes, as an aspect of property ownership and affirmed under state and local law. These uses include but are not limited to farming, ranching, roads, ditches, wells, pipelines, tanks, reservoirs, ponds, troughs, windmills, power and telecommunications poles and related infrastructure, fencing, livestock pens and corrals, equipment and storage yards, loading facilities, parking areas, and buildings (including but not limited to barns, shops, sheds, warehouses, stores, garages, and homes). All of these are traditional and customary uses of real property and generally create no nuisance conditions.

126.    Plaintiff's members routinely put their real property to most if not all of these uses, consistent with their property ownership and with local and state regulation and permitting.

127.    These uses frequently coincide with areas where intermittent non-navigable tributaries occur, and routinely involve non-exempt discharges of dredged or fill material to those locations.

128.    Categorical regulation of tributaries (including ditches) with flow volumes so low or infrequent that they would not in normal parlance be called "rivers" or "streams" exceeds the scope of the Clean Water Act as interpreted by the Supreme Court.

129.    Therefore, Sections 328.3(a)(2), 328.3(c)(5), 328.3(c)(12), and 328.3(c)(13) of the Navigable Waters Protection Rule are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## THIRTEENTH CLAIM FOR RELIEF

### NAVIGABLE WATERS PROTECTION RULE, 33 C.F.R. § 328.3(a)(2): *ULTRA VIRES* REGULATION OF NON-NAVIGABLE PERENNIAL "TRIBUTARIES"

130.   The preceding paragraphs are incorporated herein.

131.   Under the Clean Water Act, the Army and EPA may only regulate discharges to "navigable waters." *See* 33 U.S.C. § 1344(a).

132.   Section 328.3(a)(2) of the Navigable Waters Protection Rule defines "navigable waters" to include perennial non-navigable tributaries. 33 C.F.R. § 328.3(a)(2); § 328.3(c)(8); § 328.3(c)(12); § 328.3(c)(13) (2020). This includes ditches, as discussed above in paragraph 124.

133.   The *Rapanos* plurality stated that only those waters which in normal parlance would be called "rivers" or "streams" were within the scope of the Act. *Rapanos*, 547 U.S. at 739; *cf. id*. at 781-82 (Kennedy, J, concurring) (rejecting categorical regulation of all tributaries without consideration of flow volume or distance from navigable-in-fact rivers or lakes); *id*. at 769 (Kennedy, J., concurring) (rejecting regulation of "the merest trickle" even if continuously flowing).

134.   Both the *Rapanos* plurality and concurrence cast doubt on the authority of the agencies to regulate non-navigable ditches under the Clean Water Act. 547 U.S. at 734; *id*. at 779 (Kennedy, J., concurring in judgment) (rejecting regulation of roadside ditches with insignificant flow).

135.   The non-navigable perennial tributaries regulated by the Navigable Waters Protection Rule are very frequently negligible in flow volume. The definition concededly includes "mere trickles" because it has no lower bound for the volume of flow necessary to be a tributary. 85 Fed. Reg. at 22,291.

136.    So, a tributary would be regulated under the Rule even if it had as little as a garden hose worth of flow throughout the year.

137.    Such tributaries routinely occur on private property that legally is or may be used for a wide variety of land uses and purposes, as an aspect of property ownership and affirmed under state and local law. These uses include but are not limited to farming, ranching, roads, ditches, wells, pipelines, tanks, reservoirs, ponds, troughs, windmills, power and telecommunications poles and related infrastructure, fencing, livestock pens and corrals, equipment and storage yards, loading facilities, parking areas, and buildings (including but not limited to barns, shops, sheds, warehouses, stores, garages, and homes). All of these are traditional and customary uses of real property and generally create no nuisance conditions.

138.    Plaintiff's members routinely put their real property to most if not all of these uses, consistent with their property ownership and with local and state regulation and permitting.

139.    These uses frequently coincide with areas where perennial non-navigable tributaries occur, and routinely involve non-exempt discharges of dredged or fill material to those locations.

140.    Categorical regulation of all non-navigable perennial tributaries (including ditches, as discussed above in paragraph 124) with flow volumes so low that they would not in normal parlance be called "rivers" or "streams" exceeds the scope of the Clean Water Act as interpreted by the Supreme Court.

141.    Therefore, Sections 328.3(a)(2), 328.3(c)(5), 328.3(c)(12), and 328.3(c)(13) of the Navigable Waters Protection Rule are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## FOURTEENTH CLAIM FOR RELIEF

### NAVIGABLE WATERS PROTECTION RULE, 33 C.F.R. §§ 328.3(a)(3), 328.3(c)(6): *ULTRA VIRES* REGULATION OF ISOLATED AND/OR NON-NAVIGABLE LAKES AND PONDS, AND IMPOUNDMENTS

142.   The preceding paragraphs are incorporated herein.

143.   The Clean Water Act only regulates discharges to "navigable waters." 33 U.S.C. §§ 1311(a), 1344(a), 1362(12).

144.   Section 328.3(a)(3) of the Navigable Waters Protection Rule defines navigable waters to include "[l]akes and ponds, and impoundments" of other regulated waters, whether these water bodies are navigable-in-fact, and so long as they have only the slightest surface connection to other regulated waters. § 328.3(a)(3), § 328.3(c)(6). As opposed to tributaries, which need to at least flow intermittently in order to be regulated, § 328.3(c)(12), lakes and ponds, and impoundments, are regulated so long as *any* surface water flows from them to other regulated non-wetland waters. § 328.3(c)(6). And, lakes and ponds, and impoundments, are regulated if they are inundated by a regulated non-wetland water in a typical year. *Id*. Nor are "impoundments" necessarily within the channel of or even adjacent to the regulated water which they impound. Reservoirs are routinely fed by pipelines or ditches and are remote from the regulated waters that they "impound," yet they are still regulated so long as *any* water inundates them from, or spills from them to, another regulated water.[6]

145.   Such lakes and ponds, and impoundments, occur ubiquitously on private farm and ranch properties owned or operated by Plaintiff's members throughout the state of New Mexico. These include many developed water sources like reservoirs, tanks, troughs, and the like.

---

[6] See footnote 5 above on the limits of the exemption for artificial ponds.

Development, use, maintenance, and repair of these resources frequently involves the non-exempt discharge of dredged or fill material to them.

146.     Many of these lakes and ponds, and impoundments, are "isolated" from other regulated waters.

147.     In *SWANCC*, the Supreme Court held that EPA and the Army's "migratory bird rule" was not a reasonable or constitutionally permissible interpretation of "navigable waters" under the Clean Water Act. 531 U.S. at 167 ("not fairly supported by" the Act), *id*. at 174 (interpreting Act to allow regulation of isolated non-navigable ponds would violate Tenth Amendment absent clear statutory statement of Congressional intent to that effect). In so holding, the Court reasoned that Congress' intent in using the term "navigable waters" tethered the meaning of the term to Congress' traditional regulation of navigation. 531 U.S. at 172. Further, the Court questioned whether the Army's original regulatory definition of the term "navigable waters," which mirrored the meaning of "navigable waters of the United States," might have been the correct one after all. *Id.* at 168. The Court also refused to read the Act as extending Congress' Commerce Power authority to its outermost limit absent a "clear statement" to that effect, which the Act lacks. *Id*. at 174. Ultimately, the Supreme Court held in *SWANCC* that "navigable waters" does not include isolated ponds whose only basis for regulation is that they are used by migratory birds. *Id*. In doing so, the Supreme Court made clear that ponds are not "adjacent" to (and are therefore "isolated from") other regulated waters unless they directly abut them. *Id*. at 167-68 (describing wetland in *Riverside Bayview Homes* as adjacent to navigable creek, and isolated pond in question as not adjacent to other regulated waters). *See also Riverside Bayview Homes*, 474 U.S. at 131 n.8 (no opinion on non-adjacent wetlands).

- 34 -

148.    Categorical regulation of all isolated non-navigable lakes and ponds, and impoundments of regulated waters, exceeds the scope of the Clean Water Act as interpreted by the Supreme Court in *SWANCC*.

149.    The regulation of all such water bodies also violates the Act, for the same reasons that the broad regulation of tributaries violates the Act, since the required surface water connection for regulation of lakes and ponds, and impoundments, is even more tenuous than Section 328.3(a)(2)'s criterion for tributaries.

150.    Therefore, Sections 328.3(a)(3) and 328.3(c)(6) of the Navigable Waters Protection Rule is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

**FIFTEENTH CLAIM FOR RELIEF**

**NAVIGABLE WATERS PROTECTION RULE,**
**33 C.F.R. §§ 328.3(a)(4), 328.3(c)(1)(ii)-(iv):**
**_ULTRA VIRES_ REGULATION OF NON-ABUTTING WETLANDS**

151.    The preceding paragraphs are incorporated herein.

152.    The Clean Water Act only regulates discharges to "navigable waters." *See* 33 U.S.C. § 1344(a).

153.    Section 328.3(a)(4) of the 2020 Regulations interpret "navigable waters" to include four classes of non-navigable wetlands defined as "adjacent" to other regulated water bodies. 33 C.F.R. §§ 328.3(a)(4), (c)(1). One of those categories is wetlands that directly abut regulated tributaries or other regulated water bodies. 33 C.F.R. § 328.3(c)(1)(i).

154.    Three other categories in the Navigable Waters Protection Rule illegally extend wetland regulation more broadly: wetlands flooded by other regulated water bodies in a typical

year, 33 C.F.R. § 328.3(c)(1)(ii); wetlands separated from other regulated water bodies only by natural barriers, 33 C.F.R. § 328.3(c)(1)(iii); and wetlands separated from other regulated water bodies only by permeable artificial barriers, 33 C.F.R. § 328.3(c)(1)(iv). These three categories are beyond the scope of the Clean Water Act and exceed the agencies' authority to regulate.

155.   Non-abutting "adjacent" wetlands routinely occur on private property that legally is or may be used for a wide variety of land uses and purposes, as an aspect of property ownership and affirmed under state and local law. These uses include but are not limited to farming, ranching, roads, ditches, wells, pipelines, tanks, reservoirs, ponds, troughs, windmills, power and telecommunications poles and related infrastructure, fencing, livestock pens and corrals, equipment and storage yards, loading facilities, parking areas, and buildings (including but not limited to barns, shops, sheds, warehouses, stores, garages, and homes). All of these are traditional and customary uses of real property and generally create no nuisance conditions.

156.   Plaintiff's members routinely put their real property to most if not all of these uses, consistent with their property ownership and with local and state regulation and permitting.

157.   These uses frequently coincide with areas where intermittent non-navigable tributaries occur, and routinely involve non-exempt discharges of dredged or fill material to those locations.

158.   The regulation of non-abutting wetlands "adjacent" to non-navigable tributaries exceeds the scope of the Act to the same degree that regulation of those non-navigable tributaries does. *See*, *e.g.*, *Rapanos*, 547 U.S. at 781-82 (Kennedy, J., concurring) (rejecting categorical regulation of all tributaries based in part on concerns addressed in *SWANCC*).

159.     The Supreme Court in *SWANCC* rejected Clean Water Act regulation of water bodies that are not "adjacent" to open water. 531 U.S. at 168. It is clear from the context that the Supreme Court's use of the term "adjacent" meant "abutting." *Id.* at 167-68 (citing *Riverside Bayview Homes*, 474 U.S. at 131-32 n.8, as not addressing whether wetlands not immediately touching a navigable creek could be regulated). Sections 328.3(c)(1)(ii)-(iv) violate *SWANCC* and exceed the scope of the Clean Water Act and the authority of the agencies to regulate under that Act.

160.     The *Rapanos* plurality opined that wetlands may only be regulated under the Clean Water Act if they are so closely connected to regulated tributaries that it can't be discerned where one ends and the other begins. 547 U.S. at 755.

161.     Categorical regulation of all non-abutting wetlands "adjacent" to all tributaries exceeds the scope of the Clean Water Act as interpreted by the Supreme Court.

162.     Therefore, Sections 328.3(c)(1)(ii)-(iv) of the Navigable Waters Protection Rule are arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

**SIXTEENTH CLAIM FOR RELIEF**

**NAVIGABLE WATERS PROTECTION RULE, 33 C.F.R. § 328.3(a):**
***ULTRA VIRES* REGULATION OF NON-NAVIGABLE "WATERS USED IN INTERSTATE COMMERCE," "TRIBUTARIES," "LAKES AND PONDS, AND IMPOUNDMENTS," AND "ADJACENT WETLANDS" IN VIOLATION OF COMMERCE CLAUSE AND/OR TENTH AMENDMENT**

163.     The preceding paragraphs are incorporated herein.

164.     Under the Clean Water Act, the Army and EPA may only regulate discharges to "navigable waters." *See* 33 U.S.C. § 1344(a).

- 37 -

165.   The Navigable Waters Protection Rule defines "navigable waters" to include all non-navigable "waters used in interstate commerce" beyond those used to transport goods in interstate commerce. 33 C.F.R. § 328.3(a)(2).

166.   When enacting the Clean Water Act, Congress had in mind only its traditional regulation of navigation. *SWANCC*, 531 U.S. at 172.

167.   The Navigable Waters Protection Rule defines "navigable waters" to include all perennial and intermittent non-navigable tributaries. 33 C.F.R. § 328.3(a)(2); § 328.3(c)(5); § 328.3(c)(8); § 328.3(c)(12); § 328.3(c)(13).

168.   The *Rapanos* plurality left open the question of whether perennial non-navigable tributaries, even if they were relatively permanent and continuously flowing "waters," could be regulated under the Act. 547 U.S. at 731 (declining to address how "navigable" and "of the United States" modify "waters").

169.   The Navigable Waters Protection Rule defines "navigable waters" to include "lakes and ponds, and impoundments of regulated waters," including those which are isolated from regulated waters. 33 C.F.R. § 328.3(a)(3).

170.   *SWANCC* holds that isolated ponds are outside of the scope of the term "navigable waters" under the Clean Water Act, based in part on the absence of a clear statement in the Act that would extend regulation to such features, and the limits that the Commerce Clause and Tenth Amendment place on Congress' regulatory power. 531 U.S. at 174.

171.   The Navigable Waters Protection Rule defines "navigable waters" to include adjacent wetlands that do not abut "navigable waters of the United States." 33 C.F.R. § 328.3(c)(1)(ii)-(iv).

172.    All of these types of features routinely occur on private property that legally is or may be used for a wide variety of land uses and purposes, as an aspect of property ownership and affirmed under state and local law. These uses include but are not limited to farming, ranching, roads, ditches, wells, pipelines, tanks, reservoirs, ponds, windmills, power and telecommunications poles and related infrastructure, fencing, livestock pens and corrals, equipment and storage yards, loading facilities, parking areas, and buildings (including but not limited to barns, sheds, shops, warehouses, stores, garages, and homes). All of these are traditional and customary uses of real property and generally create no nuisance conditions.

173.    Plaintiff's members routinely put their real property to most if not all these uses, consistent with local and state regulation and permitting.

174.    Many of these uses routinely coincide with areas within or near the ordinary high-water mark of water features regulated by the 2020 Definition, and involve non-exempt discharges of dredged or fill material to those features.

175.    Interpreting "navigable waters" in the Clean Water Act to allow regulation of the use of private property such as described in the preceding paragraph would extend federal authority to and beyond the outer reaches of the Commerce Power. The Clean Water Act contains no clear statement of Congressional intent to regulate to such extent. *SWANCC*, 531 U.S. at 174. The agencies' interpreting of the Act to authorize themselves to engage in such regulation violates the Commerce Clause.

176.    Interpreting "navigable waters" in the Clean Water Act to allow regulation of the use of private property such as described in paragraphs 172-74 above would intrude extensively on local land use regulation and water resource regulation and allocation. The Tenth Amendment

reserves government power over these questions to the states. *SWANCC*, 531 U.S. at 173 ("This concern is heightened where the administrative interpretation alters the federal-state framework by permitting federal encroachment upon a traditional state power."); *see also Rapanos*, 547 U.S. at 737-38. Clean Water Act regulation of such activities would amount to a federal veto power over local land use law, zoning, and permitting. The agencies' interpretation of the Clean Water Act to authorize themselves to engage in such regulation violates the Tenth Amendment.

177.    Therefore, the Navigable Waters Protection Rule is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## SEVENTEENTH CLAIM FOR RELIEF

**NAVIGABLE WATERS PROTECTION RULE, 33 C.F.R. § 328.3(a):**
***ULTRA VIRES* REGULATION OF NON-NAVIGABLE "WATERS USED
IN INTERSTATE COMMERCE," "TRIBUTARIES," "LAKES AND PONDS,
AND IMPOUNDMENTS," AND "ADJACENT WETLANDS"
IN VIOLATION OF ARTICLE I AND THE NON-DELEGATION DOCTRINE**

178.    The preceding paragraphs are incorporated herein.

179.    Under the Clean Water Act, the Army and EPA may only regulate discharges to "navigable waters." *See* 33 U.S.C. § 1344(a).

180.    The 2020 Definition interprets "navigable waters" in the Clean Water Act to include an extensive catalog of "tributaries" that are not navigable and which are not even "waters" for most of every year, as well as non-navigable isolated lakes and ponds, and non-abutting wetlands. The Supreme Court has held that while the Clean Water Act regulates some waters that are not navigable-in-fact, it does not regulate all "waters" and that "navigable" must have some limiting meaning. *SWANCC*, 531 U.S. 171-72 (the Act regulates some waters not "deemed

'navigable' under the classical understanding of that term" but not all such waters) (quoting *Riverside Bayview Homes*, 474 U.S. at 133).

181.    The Act does not define "navigable." If the term does not have its ordinary meaning but instead has some broader or different meaning, then the statute unconstitutionally delegates to EPA and the Army the task of deciding, as a policy matter, what waters the agencies will regulate. The agencies themselves see their work as largely one of identifying, balancing, and selecting among competing policy priorities. *See*, *e.g.*, 85 Fed. Reg. at 22,264, 22,270-71, 22,277, 22,290, 22,292, 22,300.

182.    In making this delegation, the Act lacks any appropriately understood "intelligible principle" and provides no guidance or criteria to the agencies to circumscribe their policy decision defining "navigable."

183.    The Act identifies no fact-finding that the agencies must engage in to define "navigable."

184.    The Act provides no factors for the agencies to consider, let alone what weight to give to any such factors, in determining the meaning of "navigable."

185.    Rather, if "navigable" in the statute means something other than "navigable-in-fact," then the statute delegates unbounded discretion to the agencies to define the term, in violation of the non-delegation doctrine, and Article I of the Constitution (vesting "all legislative powers" in the Congress).

186.    Therefore, the Navigable Waters Protection Rule is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

## EIGHTEENTH CLAIM FOR RELIEF

### NAVIGABLE WATERS PROTECTION RULE, 33 C.F.R. § 328.3(a): *ULTRA VIRES* REGULATION OF NON-NAVIGABLE "WATERS USED IN INTERSTATE COMMERCE," "TRIBUTARIES," "LAKES AND PONDS, AND IMPOUNDMENTS," AND "ADJACENT WETLANDS" IN VIOLATION OF THE DUE PROCESS CLAUSE AND THE VOID-FOR-VAGUENESS DOCTRINE

187.   The preceding paragraphs are incorporated herein.

188.   Under the Clean Water Act, the Army and EPA may only regulate discharges to "navigable waters." *See* 33 U.S.C. § 1344(a).

189.   The 2020 Definition interprets "navigable waters" in the Clean Water Act to include an extensive catalog of "tributaries" that are not navigable and which are not even "waters" for most of every year, as well as non-navigable isolated lakes and ponds, and non-abutting wetlands.

190.   The Act does not define "navigable." If the term does not have its ordinary meaning but instead has some broader or different meaning, the Act gives no notice of that meaning or its contours. The agencies themselves see their work as largely one of identifying, balancing, and selecting among competing policy priorities, rather than elaborating a technical definition of some commonly known term. *See, e.g.*, 85 Fed. Reg. at 22,264, 22,270-71, 22,277, 22,290, 22,292, 22,300; *see also Sackett v. EPA*, 566 U.S. 120, 133 (2012) (Alito, J., concurring) ("the words themselves are hopelessly indeterminate.").

191.   The Due Process Clause of the U.S. Constitution requires that criminal statutes provide adequate notice of the conduct which they proscribe to those who must comply. *United States v. Lanier*, 520 U.S. 259, 265-67 (1997). The Clean Water Act imposes criminal penalties. 33 U.S.C. § 1319(c).

192.     The rule of lenity also requires that statutes with criminal penalties be interpreted in the light most favorable to criminal defendants. *United States v. Granderson*, 511 U.S. 39, 54 (1994) ("[W]here text, structure, and history fail to establish that the Government's position is unambiguously correct—we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor.").

193.     If the term "navigable" in the Act does not have the ordinary meaning of "navigable," but at the same time does not encompass "all waters," then it is impossible for any regulated party to know *from the statute* what waters are regulated unless and until the agencies give some meaning to the term.

194.     A statute whose requirements are only knowable after they are "interpreted" by enforcement officials is a classic violation of the void for vagueness doctrine. If "navigable" is interpreted in a way that its meaning is unknown absent case by case agency interpretation, then the statute fails to give constitutionally adequate notice of the conduct that it proscribes and is void-for-vagueness under the Due Process Clause.

195.     Therefore, the Navigable Waters Protection Rule is arbitrary and capricious, and contrary to law, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A).

**PRAYER FOR RELIEF**

Plaintiff prays for judgment from this Court as follows:

1.     A declaratory judgment stating that the categorical regulation of all tributaries by the 1986 Regulations, as readopted by the Repeal and Recodify Rule, is contrary to law and invalid;

2.     A declaratory judgment stating that the categorical regulation of adjacent waters by the 1986 Regulations, as readopted by the Repeal and Recodify Rule, is contrary to law and invalid;

3.      A declaratory judgment stating that the categorical regulation of all interstate waters by the 1986 Regulations, as readopted by the Repeal and Recodify Rule, is contrary to law and invalid;

4.      A declaratory judgment stating that the regulation of hydrologically isolated waters and other waters that are not used to transport goods in interstate commerce, by the 1986 Regulations, as readopted by the Repeal and Recodify Rule, is contrary to law and invalid;

5.      A declaratory judgment stating that the 1986 Regulations, as readopted by the Repeal and Recodify Rule, are invalid due to violation of the notice and comments procedures required by the Administrative Procedure Act;

6.      A declaratory judgment stating that the 1986 Regulations, as readopted by the Repeal and Recodify Rule, unduly impinge on the States' traditional power over land and water use and therefore is invalid under the Tenth Amendment to the Constitution of the United States;

7.      A declaratory judgment stating that the 1986 Regulations, as readopted by the Repeal and Recodify Rule, exceed the Commerce power and are invalid under the Constitution of the United States;

8.      An injunction barring Federal Defendants from asserting federal jurisdiction based on the 1986 Regulations, as readopted by the Repeal and Recodify, or otherwise enforcing the 1986 Regulations, as readopted by the Repeal and Recodify Rule;

9.      A declaratory judgment that EPA and the Army have failed to submit the 1986 Regulations to Congress for review as required by the Congressional Review Act, and that as a consequence those regulations are not legally in effect;

10.     A declaratory judgment that EPA and the Army have failed to submit the Post-*Rapanos* Guidance and other guidance related to the 1986 Regulations to Congress as required by the Congressional Review Act, and that as a consequence those guidance documents are not legally in effect;

11.     A declaratory judgment that the 2008 Post-*Rapanos* Guidance is invalid as exceeding the scope of the term "navigable waters" under the Clean Water Act;

12.     An injunction barring Federal Defendants from enforcing the 1986 Regulations and related guidance, or asserting agency authority over water features on privately owned land under the 1986 Regulations and related guidance;

13.     A declaratory judgment that the term "navigable waters" in the Clean Water Act is void for vagueness and/or violates the non-delegation doctrine;

14.     A declaratory judgment that the Navigable Waters Protection Rule, Section 328.3(a)(1), exceeds the scope of the Clean Water Act to the extent that it regulates waters (other than the territorial seas) that are not or have not been used, or are not susceptible of future use, for the transport of goods in interstate or foreign commerce;

15.     A declaratory judgment that the Navigable Waters Protection Rule, Section 328.3(a)(1), is unconstitutional to the extent that it regulates waters (other than the territorial seas) that are not or have not been used, or are not susceptible of future use, for the transport of goods in interstate or foreign commerce;

16.     A preliminary and permanent injunction against the Navigable Waters Protection Rule, Section 328.3(a)(1), to the extent that it regulates waters (other than the territorial seas) that

are not or have not been used, or are not susceptible of future use, for the transport of goods in interstate or foreign commerce;

17.     A declaratory judgment that the Navigable Waters Protection Rule, Section 328.3(a)(2), exceeds the scope of the Clean Water Act to the extent that it regulates intermittent and non-navigable perennial tributaries;

18.     A declaratory judgment that the Navigable Waters Protection Rule, Section 328.3(a)(2), is unconstitutional to the extent that it regulates intermittent and non-navigable perennial tributaries;

19.     A preliminary and permanent injunction against the Navigable Waters Protection Rule, Section 328.3(a)(2), to the extent that it regulates intermittent and non-navigable perennial tributaries;

20.     A declaratory judgment that the Navigable Waters Protection Rule, Section 328.3(a)(3), exceeds the scope of the Clean Water Act to the extent that it regulates isolated or non-navigable lakes and ponds, and impoundments of regulated waters;

21.     A declaratory judgment that the Navigable Waters Protection Rule, Section 328.3(a)(3), is unconstitutional to the extent that it regulates isolated or non-navigable lakes and ponds, and impoundments of regulated waters;

22.     A preliminary and permanent injunction against the Navigable Waters Protection Rule, Section 328.3(a)(3), to the extent that it regulates isolated or non-navigable lakes and ponds, and impoundments of regulated waters;

23.  A declaratory judgment that the Navigable Waters Protection Rule, Section 328.3(c)(1)(ii)-(iv), exceeds the scope of the Clean Water Act to the extent that it regulates wetlands that don't abut navigable-in-fact waters;

24.  A declaratory judgment that the Navigable Waters Protection Rule, Section 328.3(c)(1)(ii)-(iv), is unconstitutional to the extent that it regulates wetlands that don't abut navigable-in-fact waters;

25.  A preliminary and permanent injunction against the Navigable Waters Protection Rule, Section 328.3(c)(1)(ii)-(iv), to the extent that it regulates wetlands that don't abut navigable-in-fact waters;

26.  An award to Plaintiff of reasonable attorneys' fees and costs, pursuant to 28 U.S.C. § 2412, or any other authority, including the Court's inherent authority, as appropriate; and,

27.  An award of any other relief as the Court may deem proper.

DATED: April __, 2020.                Respectfully submitted:

                                      **PACIFIC LEGAL FOUNDATION**

                                      By    ~~s/ Anthony L. François~~
                                      ANTHONY L. FRANÇOIS (Federal Bar No. 15-74)
                                      MOLLIE R. WILLIAMS (Cal. Bar No. 322970)*
                                      930 G Street
                                      Sacramento, California 95814
                                      Telephone: (916) 419-7111
                                      Facsimile: (916) 419-7747
                                      Email: TFrancois@pacificlegal.org
                                      Email: MWilliams@pacificlegal.org
                                      *Attorneys for Plaintiff, New Mexico Cattle
                                      Growers' Association*
                                      *Pro Hac Vice*