# UNITED STATES DISTRICT COURT

# DISTRICT OF NEW MEXICO

|  |  |
|---|---|
| NEW MEXICO CATTLE GROWERS' ASSOCIATION, | Case No. 1:19-cv-00988-RB-SCY |
| Plaintiff, | |
| v. | **PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY; et al., | |
| Defendants. | |

# TABLE OF CONTENTS

MOTION FOR PRELIMINARY INJUNCTION.............................................................1

I.      Introduction..........................................................................................................1

II.     Legal Background: Decades of Dubious EPA and Army Regulation
        of Non-Navigable Features Under the Clean Water Act  .................................3

ARGUMENT ......................................................................................................................9

I.      Cattle Growers Has Standing Because the Intermittent Tributary
        and Non-Abutting Adjacent Wetland Provisions Require Them
        to Get the Army's Permission to Work Their Own Land...................................9

II.     The Court Should Preliminarily Enjoin the Intermittent
        Tributary and Non-Abutting Wetland Provisions.........................................11

        A.   Cattle Growers Will Prevail on the Merits .......................................12

             1.   The Judgment Against the Government in *Rapanos*
                  Controls in This Case Under Issue Preclusion.........................12

             2.   The Scope of the Preliminary Injunction Depends on
                  Which *Rapanos* Opinion Is the Holding................................14

                  a.   The Supreme Court Has Established That the
                       Plurality Is the Holding of *Rapanos*...........................14

                  b.   Under *Marks v. United States*, the Plurality
                       Is the Holding of *Rapanos* .......................................17

                       (1)   The Plurality Opinion Is the Holding of *Rapanos*,
                             so the Injunction Should Extend to All Intermittent
                             Streams and Non-Abutting Wetlands .......................22

                       (2)   If Justice Kennedy's Concurrence Is the Holding, Then
                             the Injunction Should Extend to All Intermittent Tributaries
                             and Non-Abutting Wetlands Except Those Shown to Have
                             a Significant Nexus.................................................22

                       (3)   If *Marks* Cannot Be Applied, Then the Injunction
                             Should Extend to All Non-Navigable Tributaries
                             and Adjacent Wetlands ...........................................23

        B.   Ranchers Will Suffer Irreparable Harm Absent an Injunction,
             Because Their Injury Is Constitutional, and Because They
             Cannot Feasibly Obtain Army Permits on the Necessary
             Timetable and Cannot Recover the Costs of Obtaining Them ......................24

        C.   The Balance of Equities and the Public Interest
             Both Favor an Injunction ................................................................28

III.   No Bond Is Necessary In This Case .................................................................................29

CONCLUSION...................................................................................................................30

CERTIFICATE OF SERVICE ..........................................................................................31

# TABLE OF AUTHORITIES

## Cases

*Abramski v. United States*, 573 U.S. 169 (2014) .......................................................... 16

*Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254 (2015) ........................... 16

*Ashe v. Swenson*, 397 U.S. 436 (1970) ......................................................................... 12

*Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California*,
    159 F.3d 1178 (9th Cir. 1998) ............................................................................ 10-11

*Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*,
    893 F. Supp. 301 (D.N.J. 1995) ................................................................................ 24

*Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir. 1974) ......... 25

*Citicorp Services, Inc. v. Gillespie*, 712 F. Supp. 749 (N.D. Cal. 1989) ...................... 24

*Cont'l Oil Co. v. Frontier Refining Co.*, 338 F.2d 780 (10th Cir. 1964) ....................... 29

*County of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020) ........... 14-15

*Davis v. Mineta*, 302 F.3d 1104 (10th Cir. 2002) ......................................................... 12

*Exxon Shipping v. Baker*, 554 U.S. 471 (2008) ............................................................ 16

*Fish v. Kobach*, 840 F.3d 710 (10th Cir. 2016) ............................................................ 24

*Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528 (1985) .............................. 25

*Georgia v. Pruitt*, 326 F. Supp. 3d 1356 (S.D. Ga. 2018) .................................... 26, 29

*Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019) .......................................... 6

*Gregg v. Georgia*, 428 U.S. 153 (1976) ....................................................................... 17

*Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49 (1987) ................... 3

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) .................................................................. 15

*Hawkes Co., Inc. v. United States Army Corps of Engineers*,
    782 F.3d 994 (8th Cir. 2015) ............................................................................... 3, 11

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333 (1977) ................... 9-10

*In re EPA*, 803 F.3d 804 (6th Cir. 2015) ...................................................................... 28

*Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Services*,
    31 F.3d 1536 (10th Cir. 1994) ................................................................................. 28

*King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991) ............................................................ 17

*Kucana v. Holder*, 558 U.S. 233 (2010) ....................................................................... 16

*Large v. Fremont Cty., Wyo.*, 670 F.3d 1133 (10th Cir. 2012) .............................. 17, 23

*Marks v. United States*, 430 U.S. 188 (1977) ........................................................... 17-18

*Memoirs v. Massachusetts*, 383 U.S. 413 (1966) ........................................................ 18

*Michigan v. United States Army Corps of Engineers*, 667 F.3d 765 (7th Cir. 2011) .................. 25

*N. Mariana Islands v. United States*, 686 F. Supp. 2d 7 (D.D.C. 2009)....................................... 29

*National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617 (2018) ................................ 16

*Navajo Health Foundation-Sage Mem'l Hosp., Inc. v. Burwell*,
    100 F. Supp. 3d 1122 (D.N.M. 2015) ................................................................... 29

*NCAA v. Califano*, 622 F.2d 1382 (10th Cir. 1980) ......................................................... 10

*New York v. United States*, 505 U.S. 144 (1992) ........................................................... 25

*North Dakota v. EPA*, 127 F. Supp. 3d 1047 (D.N.D. 2015)................................................... 6

*Park Lake Resources Ltd. Liability v. U.S. Dep't of Agric.*, 378 F.3d 1132 (10th Cir. 2004)...... 12

*Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322 (1979)................................................. 13

*PPL Montana, LLC v. Montana*, 565 U.S. 576 (2012) ........................................................ 16

*R.I.L-R v. Johnson*, 80 F. Supp. 3d 164 (D.D.C. 2015) ...................................................28-29

*Rapanos v. United States*, 547 U.S. 715 (2006)............................. 2-5, 12-13, 15-16, 18-22, 24, 26

*Rappa v. New Castle Cty.*, 18 F.3d 1043 (3d Cir. 1994) .................................................... 17

*Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013) ..................................................... 29

*Sackett v. EPA*, 566 U.S. 120 (2012) ..................................................................... 16

*Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*,
    531 U.S. 159 (2001)...................................................................................... 4

*Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381 (1940) ............................................. 13

*Texas Food Indus. Ass'n v. U.S. Dep't of Agriculture*, 842 F. Supp. 254 (W.D. Tex. 1993)....... 29

*Texas v. United States Environmental Protection Agency*, No. 3:15-CV-00162,
    2018 WL 4518230 (S.D. Tex. Sept. 12, 2018) ........................................................... 29

*United States Army Corps of Engr's v. Hawkes Co., Inc.*, 136 S. Ct. 1807 (2016)............... 11, 16

*United States v. Bailey*, 571 F.3d 791 (8th Cir. 2009) ................................................... 23

*United States v. Carrizales-Toledo*, 454 F.3d 1142 (10th Cir. 2006)................................. 17, 23

*United States v. Donovan*, 661 F.3d 174 (3d Cir. 2011).................................................... 23

*United States v. Johnson*, 467 F.3d 56 (1st Cir. 2006) ................................................... 23

*United States v. Mendoza*, 464 U.S. 154 (1984).........................................................13-14

*United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121 (1985)..................................3-4

*United States. v. W.T. Grant Co.*, 345 U.S. 629 (1953).................................................... 25

*Utahns for Better Transp. v. United States Dep't of Transp.*,
   295 F.3d 1111 (10th Cir. 2002) ........................................................... 10

*Winter v. NRDC*, 555 U.S. 7 (2008) ........................................................ 12, 28

## Statutes

33 U.S.C. § 1251, *et seq*........................................................................... 1, 3

33 U.S.C. § 1311(a) .......................................................................................... 3

33 U.S.C. § 1362(7) .......................................................................................... 3

33 U.S.C. § 1362(8) .......................................................................................... 3

33 U.S.C. § 1362(12) ........................................................................................ 3

## Regulations*

33 C.F.R. § 320.1(a)(6) .................................................................................. 27

33 C.F.R. § 328.3 (2016) .................................................................................. 6

33 C.F.R. § 328.3(a)(1)-(7) (2014) .................................................................. 4

33 C.F.R. § 328.3(a)(2) .................................................................................... 7

33 C.F.R. § 328.3(a)(3) .................................................................................. 22

33 C.F.R. § 328.3(a)(4) ........................................................................ 8, 13, 22

33 C.F.R. § 328.3(a)(5) (1987) ...................................................................... 12

33 C.F.R. § 328.3(a)(7), (c) (1987) ............................................................... 13

33 C.F.R. § 328.3(c) (2014) ............................................................................. 4

33 C.F.R. § 328.3(c)(1) ............................................................................. 8, 13

33 C.F.R. § 328.3(c)(1)(i) ................................................................................ 8

33 C.F.R. § 328.3(c)(1)(ii) ..............................................................1-2, 8, 12, 22

33 C.F.R. § 328.3(c)(1)(iii) .............................................................1-2, 8, 12, 22

33 C.F.R. § 328.3(c)(1)(iv) .............................................................1-2, 8, 12, 22

33 C.F.R. § 328.3(c)(1), (2), (5) (2016) ......................................................... 6

33 C.F.R. § 328.3(c)(3) (2016) ........................................................................ 6

33 C.F.R. § 328.3(c)(5).................................................................................... 7

33 C.F.R. § 328.3(c)(8).................................................................................... 7

33 C.F.R. § 328.3(c)(12).................................................................1-2, 7-8, 22

_____

* Codes of Federal Regulations without a date are the version adopted in 85 Fed. Reg. 22,250, effective June 22, 2020.

**Rules**

Fed. R. Civ. P. 65 ............................................................................................. 1

Fed. R. Civ. P. 65(c) ..................................................................................... 29

**Other Authorities**

11A Wright & Miller, *Federal Practice and Procedure* (3d ed. 2013)......................................... 24

51 Fed. Reg. 41,206 (Nov. 13, 1986)............................................................... 4, 12-13

80 Fed. Reg. 37,054 (June 29, 2015) ................................................................ 6

84 Fed. Reg. 56,626 (Oct. 22, 2019)................................................................ 7

85 Fed. Reg. 22,250 (Apr. 21, 2020) ....................................................... 1, 7-9, 13, 27

Mandelker, Daniel R., *Practicable Alternatives for Wetlands Development Under
the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018)........................... 3

Webster's Second.......................................................................................... 5

## MOTION FOR PRELIMINARY INJUNCTION

Plaintiff New Mexico Cattle Growers' Association (Cattle Growers)[1] moves under Fed. R. Civ. P. 65 for a preliminary injunction prohibiting Defendants Environmental Protection Agency (EPA) and United States Army Corps of Engineers (the Army) from enforcing the two words "or intermittent" in 33 C.F.R. § 328.3(c)(12), and subsections 328.3(c)(1)(ii)-(iv), in the Navigable Waters Protection Rule published by EPA and the Army at 85 Fed. Reg. 22,250, 22,338-39 (Apr. 21, 2020).[2, 3]

## I.     Introduction

This case is about the meaning of the term "navigable waters" in the Clean Water Act, 33 U.S.C. § 1251, *et seq*. "Navigable waters" are *where* Congress authorized the EPA and the Army to regulate discharges of pollutants under that Act. Conversely, EPA and the Army lack authority to regulate discharges to features that are not "navigable waters."

The issue in this motion is whether intermittent tributaries and non-navigable wetlands that don't abut navigable rivers or lakes are "navigable waters" under the Act. Cattle Growers' members own farms and ranches in New Mexico containing many such features. EPA and the Army claim authority under 33 C.F.R. §§ 328.3(c)(12) and (c)(1)(ii)-(iv) to regulate them;

---

[1] "Cattle Growers" refers to Plaintiff and/or its members, as appropriate to the context.

[2] References to 33 C.F.R. § 328.3 and its subdivisions are, unless indicated otherwise, to the version published in the Federal Register on April 21, 2020, at 85 Fed. Reg. at 22,338-39, and the identical provisions at 40 C.F.R. § 120.2, published the same date at 85 Fed. Reg. at 22,340-41. 40 C.F.R. 120.2(3)(xii) corresponds to 28 C.F.R. § 328.3(c)(12), and 40 C.F.R. § 120.2(3)(i)(B)-(D) corresponds to 33 C.F.R. § 328.3(c)(1)(ii)-(iv). Plaintiff asks that the Court preliminarily enjoin these identical provisions in the Army and EPA's regulations.

[3] This motion does not ask the Court to enjoin the Navigable Waters Protection Rule more generally, or to prevent any other provision of it from otherwise going into effect on its effective date of June 22, 2020. 85 Fed. Reg. at 22,250.

Ranchers contend that they are not "navigable waters."

Ranchers filed the First Supplemental Complaint on April 27, 2020, raising various claims against the Navigable Waters Protection Rule. Dkt No. 26. In this motion, Ranchers seek a preliminary injunction against the regulation of intermittent tributaries in § 328.3(c)(12) (Intermittent Tributary Provision), and of non-abutting wetlands in § 328.3(c)(1)(ii)-(iv) (Non-abutting Wetland Provision).

Ranchers will prevail on the merits, because the Supreme Court has already ruled in *Rapanos v. United States*, 547 U.S. 715 (2006), that substantially similar provisions in prior regulations exceed the scope of the Clean Water Act.

Ranchers will suffer irreparable harm if EPA and the Army are allowed to regulate their private property under the Intermittent Tributary and Non-abutting Wetland Provisions. The Provisions will require Ranchers to spend months to years, and tens to hundreds of thousands of dollars, to obtain Army permits to farm and otherwise use their own land. The time required to obtain permits would prevent Ranchers from working their own land despite the need for fast action caused by weather and other unpredictable circumstances, as well as seasonal work that would be delayed for months or years awaiting permitting. Even if obtained at this cost in time and money, the resulting permits would limit the use of their property. These harms are imminent because they will apply to ongoing farming and ranching operations when the Provisions take effect on June 22, 2020, and because farming and ranching involve unpredictable weather events and other requirements.

The balance of equities and the public interest both favor an injunction. No bond is necessary for the Court to grant the requested injunction. For ease of administration, the Court

should enjoin the Provisions throughout New Mexico, rather than only as to Ranchers.

## II.    Legal Background: Decades of Dubious EPA and Army Regulation of Non-Navigable Features Under the Clean Water Act

The Clean Water Act, 33 U.S.C. § 1251, *et seq.*, regulates discharges of "pollutants" from "point sources" to "navigable waters." 33 U.S.C. § 1311(a), § 1362(12). The Act defines "navigable waters" as "waters of the United States, including the territorial seas." 33 U.S.C. § 1362(7). The Act defines "the territorial seas" but does not otherwise define "waters of the United States." 33 U.S.C. § 1362(8). Nonexempt discharges require a permit from either the EPA or the Army. Dredge and fill permits from the Army average more than two years, and $250,000 in consulting costs, to obtain. *See Rapanos*, 547 U.S. at 721; *see also Hawkes Co., Inc. v. United States Army Corps of Engineers*, 782 F.3d 994, 1001 (8th Cir. 2015). Once obtained, dredge and fill permits substantially limit how property encumbered by "navigable waters" can be used by its owner. *See generally* Daniel R. Mandelker, *Practicable Alternatives for Wetlands Development Under the Clean Water Act*, 48 Envtl. L. Rep. News & Analysis 10894 (Oct. 2018).

A person engaged in unpermitted, nonexempt discharges or permit violations faces citizen suits, administrative cease-and-desist and compliance orders, administrative penalties, civil actions for monetary civil penalties and injunctive relief, and criminal prosecution. *See generally*, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 52-53 (1987). These severe burdens make it critically important that the regulated public know what is meant by "navigable waters."

Starting in the 1970s the Army adopted increasingly broad regulations defining "navigable waters." *See generally United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 123-24 (1985). In *Riverside Bayview Homes* the Supreme Court held that the Army reasonably interpreted "navigable waters" to include a non-navigable wetland abutting a navigable-in-fact creek. *Id.* at

135. *Riverside Bayview Homes* did not address whether "navigable waters" include wetlands that don't abut navigable-in-fact waters. *Id*. at 124 n.2; *id*. at 131 n.8.

In 1986 the Army adopted an updated definition that stretched the term "navigable waters" to include interstate waters, intrastate waters with various relationships to interstate or foreign commerce, all non-navigable tributaries of such waters, and all non-navigable wetlands adjacent to (broadly defined as bordering, contiguous, or neighboring) such tributaries and other waters. *See* 33 C.F.R. § 328.3(a)(1)-(7), and § 328.3(c) (2014) (1986 Regulations). The Army interpreted the 1986 Regulations to include isolated waters used by migratory birds (the Migratory Bird Rule) and all water used to irrigate crops sold in interstate commerce. *Rapanos*, 547 U.S. at 725 (citing 51 Fed. Reg. 41,206, 41,217 (Nov. 13, 1986)).

The Supreme Court issued two adverse decisions against the 1986 Regulations. In *Solid Waste Agency of Northern Cook County v. United States Army Corps of Engineers*, 531 U.S. 159 (2001) (*SWANCC*), the Court invalidated the Migratory Bird Rule as beyond the scope of "navigable waters" under the Act. 531 U.S. at 172. *SWANCC* narrowed *Riverside Bayview Homes* by emphasizing that the word "navigable" in the text of the Act demonstrates that Congress was focused on its "traditional jurisdiction over waters that were . . . navigable in fact." *Id.*

Then in a fractured opinion in *Rapanos*, the Supreme Court invalidated the tributary and adjacent wetlands subsections of the 1986 Regulations as exceeding the scope of the statutory term "navigable waters." The issue in *Rapanos* was whether "navigable waters" include non-navigable tributaries to navigable-in-fact waterways, and wetlands that do not physically abut navigable-in-fact waterways. 547 U.S. at 728, *id.* at 759 (Kennedy, J., concurring). The Court remanded the case because these two provisions of the 1986 Regulations, on which the lower court relied,

4

invalidly claimed authority over all such tributaries and wetlands. *Id.* at 757.

The four-Justice *Rapanos* plurality determined that the language, structure, and purpose of the Clean Water Act all limit federal authority over non-navigable tributaries to "relatively permanent, standing or continuously flowing bodies of water" commonly recognized as "streams, . . . oceans, rivers, and lakes[.]" *Id.* at 739 (brackets omitted) (quoting Webster's Second 2882). In its analysis the plurality repeatedly emphasized that intermittent (*i.e.*, flowing more often than ephemerally but not continuously) drainages are not regulated by the Act, even mocking the notion. *Id.* at 733.

The plurality also limited regulation of non-navigable wetlands to only those that physically abut relatively permanent and continuously flowing waters, such that they have an immediate surface water connection which renders the wetland and water body "indistinguishable." *Id.* at 755.

Justice Kennedy joined the plurality in the judgment that the tributary and adjacent wetland subsections of the 1986 Definition were overbroad. But he proposed a broader interpretation of "navigable waters" than the plurality: the "significant nexus" test. *Id.* at 759 (Kennedy, J., concurring). Under this view, the government can regulate a non-abutting wetland if it significantly affects the physical, chemical, and biological integrity of a navigable-in-fact waterway. *Id.* at 779 (Kennedy, J., concurring). Justice Kennedy wrote that wetlands could be analyzed under this standard either standing alone or in combination with features similarly situated within an otherwise undefined "region." *Id.* at 780 (Kennedy, J., concurring).

In 2015, after several years of effort to address the Supreme Court's decisions in *SWANCC* and *Rapanos*, EPA and the Army adopted new regulations (the 2015 Regulations) redefining

"navigable waters." 33 C.F.R. § 328.3 (2016); 80 Fed. Reg. 37,054 (June 29, 2015).

The 2015 Regulations defined "tributary" as having a bed and bank and an ordinary high-water mark, and contributing flow to (1) navigable-in-fact waters, plus all waters which are, were, or reasonably could be used more generally in interstate commerce, (2) all interstate waters, including interstate wetlands, and (3) the territorial seas. 33 C.F.R. § 328.3(c)(3) (2016). The 2015 Regulations also established several criteria for regulation of "adjacent waters" based on Justice Kennedy's significant nexus analysis in *Rapanos*, *see* 33 C.F.R. § 328.3(c)(1), (2), (5) (2016).

Several lawsuits challenged the 2015 Regulations. On August 27, 2015, the District Court for the District of North Dakota preliminarily enjoined the 2015 Definition prior to its effective date in New Mexico and several other states. *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1060 (D.N.D. 2015).[4] On August 21, 2019, the U.S. District Court for the Southern District of Georgia ruled on summary judgment that the 2015 Regulations violated the Clean Water Act. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019). That court permanently enjoined and remanded the 2015 Regulations without vacatur. *Id*. at 1382-83.

On October 22, 2019, partially in response to the decision in *Georgia v. Wheeler*, EPA and

---

[4] In early 2019, the New Mexico state agencies who were party plaintiffs to that case moved to withdraw as plaintiffs. New Mexico State Engineer's Motion to Withdraw as a Plaintiff, *North Dakota v. EPA*, (No. 3:15-cv-00059-PDW-ARS), Dkt. No. 265. At the same time, the Arizona/New Mexico Coalition of Counties for Sustainable Economic Growth (AZ/NM Coalition) moved to intervene to take the place of the New Mexico state agencies in the litigation. The District of North Dakota granted the AZ/NM Coalition intervention, Order Granting Coalition of Arizona/New Mexico Counties for Stable Economic Growth's Motion to Intervene, *North Dakota v. EPA*, (No. 3:15-cv-00059-PDW-ARS), Dkt. No. 279, allowed the New Mexico state agencies to withdraw as plaintiffs, and left the injunction in place as to the AZ/NM Coalition, Order Dismissing State of Colorado, New Mexico State Engineer, and New Mexico Environmental Department as Plaintiffs, *North Dakota v. EPA*, (No. 3:15-cv-00059-PDW-ARS), Dkt. No. 280. A motion for clarification of the scope of the injunction against the 2015 Regulation in New Mexico is pending.

the Army published a regulation (the Repeal and Recodify Rule) that (1) repeals the 2015 Regulations, and (2) readopts the 1986 Regulations. 84 Fed. Reg. 56,626 (Oct. 22, 2019).[5]

On April 21, 2020, EPA and the Army published yet another regulation in the Federal Register called the Navigable Waters Protection Rule ("Navigable Waters Protection Rule" or "2020 Regulations"). 85 Fed. Reg. 22,250 (Apr. 21, 2020). The Navigable Waters Protection Rule regulates:

- Tributaries, 33 C.F.R. § 328.3(a)(2), which are rivers, streams, or similarly naturally occurring (whether or not altered or relocated) surface water channels (including ditches that relocate or are constructed in them, or that drain adjacent wetlands) that, in a typical year, contribute intermittent or perennial surface water flow to other regulated waters, 33 C.F.R. § 328.3(c)(12). Perennial "means surface water flowing continuously year-round." 33 C.F.R. § 328.3(c)(8). Intermittent "means surface water flowing continuously during certain times of the year and more than in direct response to precipitation." 33 C.F.R. § 328.3(c)(5). 85 Fed. Reg. at 22,338-39. The intermittent non-navigable tributaries regulated by Section 328.3(a)(2) can be both negligible in volume and very limited in duration. The definition concededly includes the "merest trickle" because it has no lower bound for the volume of flow necessary to be a tributary. 85 Fed. Reg. at 22,291. The Rule also has no minimum duration of flow for a tributary to be regulated, other than that it flow more than in direct response to precipitation. *Id.* at 22,292.

---

[5] The original complaint in this lawsuit challenged the "Recodify" portion of the Repeal and Recodify Rule, but not the "Repeal" portion that rescinded the 2015 Regulations.

- Adjacent wetlands, 33 C.F.R. § 328.3(a)(4), which are wetlands that abut, 33 C.F.R. § 328.3(c)(1)(i), or are flooded by, 33 C.F.R. § 328.3(c)(1)(ii), other regulated non-wetland waters, or are physically separated from them only by natural, 33 C.F.R. § 328.3(c)(1)(iii), or permeable artificial, 33 C.F.R. § 328.3(c)(1)(iv), barriers. 85 Fed. Reg. at 22,338.

Cattle Growers ask this Court to preliminarily enjoin the following provisions of the definitions of regulated tributaries and adjacent wetlands in the Navigable Waters Protection Rule, as indicated by bold type and strike through in the text of these provisions below:

§ 328.3(c)(1): The term *adjacent wetlands* means wetlands that: (i) Abut, meaning to touch at least at one point or side of, a water identified in paragraph (a)(1), (2), or (3) of this section~~; (ii) [a]re inundated by flooding from a water identified in paragraph (a)(1), (2), or (3) of this section in a typical year; (iii) [a]re physically separated from a water identified in paragraph (a)(1), (2), or (3) of this section only by a natural berm, bank, dune, or similar natural feature; or (iv) [a]re physically separated from a water identified in paragraph (a)(1), (2), or (3) of this section only by an artificial dike, barrier, or similar artificial structure so long as that structure allows for a direct hydrologic surface connection between the wetlands and the water identified in paragraph (a)(1), (2), or (3) of this section in a typical year, such as through a culvert, flood or tide gate, pump, or similar artificial feature~~.


§ 328.3(c)(12): The term *tributary* means a river, stream, or similar naturally occurring surface water channel that contributes surface water flow to a water identified in paragraph

8

(a)(1) of this section in a typical year either directly or through one or more waters identified in paragraph (a)(2), (3), or (4) of this section. A tributary must be perennial ~~or intermittent~~ in a typical year.

85 Fed. Reg. at 22,338-39.

## ARGUMENT

I.   **Cattle Growers Has Standing Because the Intermittent Tributary and Non-Abutting Adjacent Wetland Provisions Require Them to Get the Army's Permission to Work Their Own Land**

Cattle Growers is a non-profit organization dedicated to advocating on behalf of its members on numerous issues relating to regulation under the Clean Water Act. Cattle Growers devotes substantial resources to activities that seek to ensure that Clean Water Act regulation does not unreasonably impair the cattle industry. Cattle Growers lobbies on Clean Water Act issues, publishes information on related issues for its members, performs research pertaining to Clean Water Act regulation, and submits comments to government agencies addressing concerns about how regulations under the Act affect its members. Cattle Growers represents roughly 1,400 cattlemen and landowners throughout the State of New Mexico and 19 other states, many of whom are subject to the Clean Water Act under the Navigable Waters Protection Rule based on the presence of intermittent tributaries on their properties, as well as wetlands and other stationary water features regulated by the 2020 Regulations. Cattle Growers' counsel submitted comments objecting to the inclusion of intermittent tributaries and non-abutting wetlands in the Navigable Waters Protection Rule. Frost-Maynard Declaration ¶ 11.

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual

members in the lawsuit.

*Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see Utahns for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1115 (10th Cir. 2002) (citing *Hunt*).

Cattle Growers' membership will suffer ongoing injury if the Intermittent Tributary and Non-abutting Adjacent Wetland Provisions go into effect; an injunction would prevent those injuries, giving those members standing to sue in their own right. *NCAA v. Califano*, 622 F.2d 1382, 1392 (10th Cir. 1980) (injunction would inure to benefit of association members); *see also Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. California*, 159 F.3d 1178, 1181 (9th Cir. 1998).

Intermittent non-navigable tributaries and non-abutting "adjacent" wetlands routinely occur on Cattle Growers' farms, ranches, and other lands. Those properties are or may legally be used for a wide variety of land uses and purposes, as an aspect of property ownership and affirmed under New Mexico law. These uses include but are not limited to farming, ranching, roads, ditches, wells, pipelines, tanks, reservoirs, ponds, troughs, windmills, power and telecommunications poles and related infrastructure, fencing, livestock pens and corrals, equipment and storage yards, loading facilities, parking areas, and buildings (including but not limited to barns, shops, sheds, warehouses, stores, garages, and homes). Frost-Maynard Decl. ¶ 6; Sidwell Decl. ¶¶ 6-10, 13-15. All of these are traditional and customary uses of real property and generally create no nuisance conditions.

Cattle Growers routinely put their farms and ranches to most if not all of these uses, consistent with their property ownership and with local and state regulation and permitting. These uses frequently coincide with areas where intermittent non-navigable tributaries and non-abutting

"adjacent" wetlands occur, and routinely involve non-exempt discharges of dredged or fill material to those locations. Frost-Maynard Declaration ¶¶ 6; Sidwell Declaration ¶¶ 6-10, 13-15. As a result, the Navigable Waters Protection Rule will require them to seek Army permits at significant cost to use their own property. *Id.* Or, it will require them to seek a determination from the Army or a consultant whether the 2020 Regulations apply to them. *See Hawkes Co., Inc. v. United States Army Corps of Engineers*, 782 F.3d at 1003 (Kelly, J., concurring) ("[M]ost laws do not require the hiring of expert consultants to determine if they even apply to you or your property."), *aff'd*, 136 S. Ct. 1807 (2016). Because of the Navigable Waters Protection Rule's illegal interpretation of "navigable waters," Cattle Growers will be required to curtail use of their own property or obtain federal approval of ongoing and new land-use projects at a cost of tens or hundreds of thousands of dollars and years of delay, plus limitations on future use of their property. Sidwell Declaration ¶ 16; Frost-Maynard Decl. ¶ 7.

Preventing these injuries is germane to Cattle Growers' purpose because the association seeks to promote the cattle industry and to advocate for sensible environmental regulations. Frost-Maynard Decl. ¶ 8-10. The 2020 Regulations impose costly and unjustified burdens on the industry. And, because Cattle Growers seeks to enjoin the Intermittent Tributary and Non-abutting Wetland Provisions on their face, there is no need for the direct participation of its individual members. *Associated Gen. Contractors*, 159 F.3d at 1181 ("Individualized proof from the members is not needed where, as here, declaratory and injunctive relief is sought rather than monetary damages."). Accordingly, Cattle Growers has standing.

## II.  The Court Should Preliminarily Enjoin the Intermittent Tributary and Non-Abutting Wetland Provisions.

In order to receive a preliminary injunction, the plaintiff must establish the

> following factors: (1) a substantial likelihood of prevailing on the merits;
> (2) irreparable harm unless the injunction is issued; (3) that the threatened injury
> outweighs the harm that the preliminary injunction may cause the opposing party;
> and (4) that the injunction, if issued, will not adversely affect the public interest.

*Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002) (internal quotation marks and brackets

omitted); *see also Winter v. NRDC*, 555 U.S. 7, 20 (2008).

## A.   Cattle Growers Will Prevail on the Merits

### 1.   The Judgment Against the Government in *Rapanos* Controls in This Case Under Issue Preclusion

Issue preclusion "bars a party from relitigating an issue once it has suffered an adverse

determination on the issue, even if the issue arises when the party is pursuing or defending against

a different claim." *Park Lake Resources Ltd. Liability v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136

(10th Cir. 2004) (citations omitted). Issue preclusion attaches when

> (1) the issue previously decided is identical with the one presented in the action in
> question, (2) the prior action has been finally adjudicated on the merits, (3) the party
> against whom the doctrine is invoked was a party, or in privity with a party, to the
> prior adjudication, and (4) the party against whom the doctrine is raised had a full
> and fair opportunity to litigate the issue in the prior action.

*Id*. (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). Issue preclusion can be invoked by any

third party against a party in privity to the parties in the prior decision. *Id*. at 1138 (citing cases).

Issue preclusion bars EPA and the Army from arguing that the Intermittent Tributary and Non-

Abutting Wetland Provisions are lawful.

First, the issue in this case is identical to the issue in *Rapanos*: whether the agencies may

regulation (1) all intermittent tributaries, and (2) non-abutting wetlands, under the Clean Water

Act and the Constitution. *Rapanos*, 547 U.S. at 724-25. The 1986 Regulations included all

intermittent tributaries, 33 C.F.R. § 328.3(a)(5) (1987), 51 Fed. Reg. 41,206, 41,250-51 (Nov. 13,

1986) (regulating all "tributaries"); *see Rapanos*, 547 U.S. at 726-27 (agencies used 1986 definition of tributary to regulate intermittent drainages), which *Rapanos* rejected, *Rapanos*, 547 U.S. at 733-34. The Navigable Waters Protection Rule identically regulates all intermittent tributaries, so on this provision the issues in this case and in *Rapanos* are identical. And the 1986 Regulations regulated the same non-abutting wetlands that the Navigable Waters Protection Rule does. *Compare* 33 C.F.R. § 328.3(a)(7), (c) (1987) (regulating adjacent wetlands defined as "bordering, contiguous, or neighboring") *with* 33 C.F.R. § 328.3(a)(4), (c)(1), 85 Fed. Reg. at 22,338-39 (regulating nonabutting wetlands that are flooded by other regulated waters or separated from them by barriers). So, on this second provision the two cases the issues are identical.

Second, *Rapanos* was adjudicated on the merits at the Supreme Court of the United States. Nothing could be more final in the federal courts. Third, the United States was the respondent in *Rapanos*, and agencies of the United States are in privity with the United States. *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 402-03 (1940). The Army was also the respondent in *Carabell*, which was a companion case to *Rapanos* and part of the same judgment. Finally, the United States had a full and fair opportunity to litigate the *Rapanos* case. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331-32 (1979) (appeal to circuit court after trial before district court affords full and fair opportunity).

Cattle Growers can invoke issue preclusion against the federal government in this case despite *United States v. Mendoza*, 464 U.S. 154, 162 (1984) (nonmutual offensive issue preclusion does not run against the government in certain cases). In *Mendoza*, the Supreme Court decided that the United States could not be precluded from litigating a constitutional issue it had lost in a decision of the Northern District of California, which the government elected not to appeal. *Id*. at

157. The Supreme Court focused its analysis in *Mendoza* on the long practice of allowing important constitutional issues to percolate through the circuit courts before final resolution in the Supreme Court. *Id*. at 160. Estopping the government with unappealed district court decisions would prevent this percolation. *Id*. The Court further emphasized the significance of the Solicitor General's discretion whether to appeal district court decisions, and which circuit court decisions to petition to the Supreme Court. Precluding relitigation of issues based on district court decisions would upend the Solicitor General's decision making. *Id*. at 161.

None of these concerns apply to Supreme Court decisions, and *Mendoza* correspondingly limits its holding to "relitigation of issues such as those involved in this case," *id*. at 162, i.e., issues resolved by a lower court which could still be percolated through the courts of appeal and which implicate the Solicitor General's discretion in filing appeals and petitions for certiorari.

Defendants are barred under issue preclusion from relitigating the validity of the Intermittent Tributary and Non-abutting Wetlands Provisions. Cattle Growers is more than likely to succeed on the merits.

> **2.      The Scope of the Preliminary Injunction Depends on Which *Rapanos* Opinion Is the Holding**

Although *Rapanos* provided a clear majority as to the result, the judgment rested on a 4-1 split as to its rationale. So the Court must determine which of the opinions supporting the judgment is the holding: the plurality or Justice Kennedy's concurrence.

> **a.      The Supreme Court Has Established That the Plurality Is the Holding of *Rapanos*.**

The Supreme Court recently showed that it reads the plurality as the controlling opinion in the *Rapanos* decision. In *County of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020)

the Court addressed the question of whether, under the Clean Water Act, the movement of a pollutant from an injection well (a point source) through groundwater (not a point source) to the ocean (a navigable water) is a regulated "discharge." 140 S. Ct. at 1468. The Court issued a six-Justice majority opinion authored by Justice Breyer, *id*. at 1468-78, a concurrence by Justice Kavanaugh, *id*. at 1478-79 (Kavanaugh, J., concurring), and two separate dissents by Justices Thomas (joined by Justice Gorsuch), *id*. at 1479-82 (Thomas, J., dissenting), and Alito, *id*. at 1482-92 (Alito, J., dissenting). All four of these opinions cite the *Rapanos* plurality for its discussion of point sources under the Act, *see Rapanos*, 547 U.S. at 743-44, and apply that discussion in disparate ways to whether pollutants moving through groundwater are "added" to the receiving ocean waters so as to constitute a discharge. *See* 140 S. Ct. at 1475 (citing *Rapanos*, 547 U.S. at 743) (nothing in statute requires that a pollutant move "directly" or "immediately" from its origin to navigable waters); *id*. at 1478 (Kavanaugh, J., concurring) (majority reading of "discharge" "adheres to the interpretation set forth in Justice Scalia's plurality opinion in *Rapanos*"); *id*. at 1482 (Thomas, J., dissenting) (*Rapanos* plurality does not decide the issue in this case); *id*. at 1487 n.5 (Alito, J., dissenting) (*Rapanos* plurality supports "daisy chaining" point sources).

While the four authors in *County of Maui* disagree about the application of the *Rapanos* plurality to the definition of "discharge," they all agree that the plurality is the opinion in *Rapanos* that bears (or not) on this question. In other words, the *Rapanos* plurality is the precedent that the Supreme Court looked to in answering the question presented in *County of Maui*.

This is consistent with and grows organically from the Court's prior citations to *Rapanos*. The Supreme Court cited *Rapanos* in nine cases before *County of Maui*. In *all* of those cases, the Court cites the *Rapanos* plurality. *See Hamdan v. Rumsfeld*, 548 U.S. 557, 706 (2006) (Thomas,

15

J., dissenting) (citing *Rapanos*, 547 U.S. 715); *Exxon Shipping v. Baker*, 554 U.S. 471, 508 n.21 (2008) (citing *Rapanos*, 547 U.S. at 749); *Kucana v. Holder*, 558 U.S. 233, 252-53 (2010) (citing *Rapanos*, 547 U.S. at 752); *PPL Montana, LLC v. Montana*, 565 U.S. 576, 592 (2012) (citing *Rapanos*, 547 U.S. at 730-31); *Sackett v. EPA*, 566 U.S. 120, 123 (2012) (citing *Rapanos*, 547 U.S. 715); *id.* at 133 (Alito, J., concurring) (citing *Rapanos*, 547 U.S. at 732-39); *Abramski v. United States*, 573 U.S. 169, 198 (2014) (Scalia, J., dissenting) (citing *Rapanos*, 547 U.S. at 752); *Alabama Legislative Black Caucus v. Alabama*, 575 U.S. 254, 268 (2015) (citing *Rapanos*, 547 U.S. at 757); *United States Army Corps of Engr's v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1811-12, 1815 (2016) (citing *Rapanos*, 547 U.S. at 721-22); *National Ass'n of Mfrs. v. Department of Defense*, 138 S. Ct. 617, 625 (2018) (citing *Rapanos*, 547 U.S. at 723); *id.* (citing *Rapanos*, 547 U.S. at 729, 757); *id.* at 633 (citing *Rapanos*, 547 U.S. at 729). By contrast, the Court has only cited the Justice Kennedy's *Rapanos* concurrence once, in his opinion in *PPL Montana*, immediately following his citation to the plurality. 565 U.S. at 592 (citing *Rapanos*, 547 U.S. at 761 (Kennedy, J., concurring in judgment)).

This pattern clearest in the Supreme Court's post-*Rapanos* cases that address questions arising under the Clean Water Act. *See Sackett v. EPA*, 566 U.S. at 123 (citing *Rapanos*, 547 U.S. 715); *id.* at 133 (Alito, J., concurring) (citing *Rapanos*, 547 U.S. at 732-39); *Hawkes Co.*, 136 S. Ct. at 1811-12, 1815 (citing *Rapanos*, 547 U.S. at 721-22); *National Ass'n of Mfrs*, 138 S. Ct. at 625 (citing *Rapanos*, 547 U.S. at 723); *id.* (citing *Rapanos*, 547 U.S. at 729, 757); *id.* at 633 (citing *Rapanos*, 547 U.S. at 729). And this pattern culminates in *County of Maui*, in which all four opinions debate how the *Rapanos* plurality bears on the "discharge" question. None of the Supreme Court's post-*Rapanos* Clean Water Act cases cite the Kennedy concurrence; they all cite the

plurality.

But even without this clear and progressively more robust adoption of the *Rapanos* plurality by the Supreme Court itself, lower courts can identify the plurality as the holding of *Rapanos* by applying *Marks v. United States*, 430 U.S. 188 (1977).

### b.   Under *Marks v. United States*, the Plurality Is the Holding of *Rapanos*.

In *Marks* the Supreme Court stated that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds[.]'" 430 U.S. at 193 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)).

The Tenth Circuit is one of the few that have not addressed which of the *Rapanos* opinions, if any, is the holding of the case. However, the Tenth Circuit has clearly addressed how it applies *Marks*, by adopting the approach taken by the D.C. Circuit in *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc). *Large v. Fremont Cty., Wyo.*, 670 F.3d 1133, 1141 (10th Cir. 2012); *United States v. Carrizales-Toledo*, 454 F.3d 1142, 1151 (10th Cir. 2006). Under this approach, "the *Marks* rule produces a determinate holding 'only when one opinion is a logical subset of other, broader opinions.'" *Carrizales-Toledo*, 454 F.3d at 1151 (quoting *King v. Palmer*, 950 F.2d at 781). The Tenth Circuit does "not apply *Marks* when the various opinions supporting the Court's decision are mutually exclusive." *Id.* "In such cases, no particular standard constitutes the law of the land, because no single approach can be said to have the support of a majority of the Court." *Fremont Cty.*, 670 F.3d at 1141 (quoting *Rappa v. New Castle Cty.*, 18 F.3d 1043, 1058 (3d Cir. 1994)).

To properly frame the question "which opinion is the logical subset of the other" in *Rapanos*, this Court should start with what the judgment actually did in the decision. After determining that the district and circuit courts had not applied a proper definition of "navigable waters," the Court remanded *Rapanos* to the Sixth Circuit for further proceedings. 547 U.S at 757. The Supreme Court did not decide the merits of the case; the only question it really addressed was "what does 'navigable waters' mean in the Clean Water Act?"[6] The holding is the opinion which is the logical subset of the other on the meaning of "navigable waters." Using this approach, the plurality controls because its narrower reading of "navigable waters" is a logical subset of Justice Kennedy's broader reading.

This accords with *Marks*, in which the Supreme Court applied its prior fractured decision in *Memoirs v. Massachusetts*, 383 U.S. 413 (1966). *Marks*, 430 U.S. at 193-94 (discussing *Memoirs*). *Memoirs* was a split decision, with three Justices stating that the First Amendment protected pornographic material unless it met three tests. 383 U.S. at 418. Two other Justices would read the First Amendment more broadly to protect all obscene material without limit. *Id.* at 421, 424 (Black and Douglas, JJ., concurring). The Supreme Court said in *Marks* that the narrower reading of the applicable constitutional provision was the controlling opinion. Similarly, a "logical subset" approach to applying *Marks* to *Rapanos* must look at how broadly or narrowly the two opinions supporting the judgment interpret the applicable statutory provision.

In *Rapanos*, the Supreme Court decided that the term "navigable waters" in the Clean

---

[6] Both the plurality and Justice Kennedy's concurrence show this. 547 U.S. at 729 ("In these consolidated cases, we consider whether four Michigan wetlands . . . constitute 'waters of the United States' within the meaning of the Act."); 547 U.S. at 759 (Kennedy, J., concurring) ("These consolidated cases require the Court to decide whether the term 'navigable waters' in the Clean Water Act extends to wetlands that do not contain and are not adjacent to waters that are navigable in fact.").

Water Act was narrower than agency regulations defining the term. 547 U.S. at 724, 734 ("The plain language of the statute simply does not authorize this 'Land Is Waters' approach to federal jurisdiction."); *id*. at 759 (Kennedy, J., concurring) (lower court did not apply proper standard to determine whether wetlands not abutting navigable waters were jurisdictional). The Justices supporting the judgment adopted concentric rationales for the judgment. Four Justices joined in an opinion by Justice Scalia that interprets "navigable waters" narrowly, while Justice Kennedy, interpreting the term "navigable waters" more broadly (but including those waters that the plurality would allow regulation of), concurred separately in the judgment.

The key point of departure between them was the plurality's narrow reading of the term "significant nexus" (as describing only the type of physical intermingling that in *Riverside Bayview* prevented a clear distinction between the waters and the wetlands) and Justice Kennedy's broad reading of it (as categorically encompassing *Riverside Bayview*-type wetlands, in accord with the plurality, but also others on a case-by-case basis, with which the plurality disagreed). *Compare Rapanos*, 547 U.S. at 754-55 (disagreement with Kennedy's broad reading of "significant nexus"), *with id*. at 774 (Kennedy, J., concurring) (*Riverside Bayview* and *SWANCC* do not limit jurisdictional wetlands to those physically abutting jurisdictional tributaries).

The plurality summed up its reading of "navigable waters" this way

> [E]stablishing that wetlands . . . are covered by the Act requires two findings: first, that the adjacent channel contains a "wate[r] of the United States," (*i.e.*, a relatively permanent body of water connected to traditional interstate navigable waters); and second, that the wetland has a continuous surface connection with that water, making it difficult to determine where the "water" ends and the "wetland" begins.

*Rapanos*, 547 U.S. at 742. "Body of water" is limited to lakes, streams, and rivers. *Id*. at 732-33.

Justice Kennedy agreed with important aspects of the plurality's opinion: the term being

interpreted was "navigable waters," *Rapanos*, 547 U.S. at 760, and the issue was whether wetlands that are not directly abutting are nonetheless regulable, *id*. at 759. Both the plurality and Justice Kennedy take *Riverside Bayview*'s description of wetlands that abut traditionally navigable waters as the outer scope of the term "adjacent." *Id*. at 740-41 & n.10; *id*. at 759 (Kennedy, J., concurring) ("whether the term 'navigable waters' in the Clean Water Act extends to wetlands that do not contain and are not adjacent to waters that are navigable in fact").

Justice Kennedy also expresses important points of commonality with the plurality's reasoning. "The plurality's opinion begins from a correct premise," which is that the Act regulates "at least some waters that are not navigable in the traditional sense." *Rapanos*, 547 U.S. at 767. But Justice Kennedy criticized the plurality, *id.* at 768, for imposing what he thought to be two improper limitations on the Act: that "navigable waters" are only "relatively permanent, standing or flowing bodies of water" and that wetlands are only subject to the Act if they have a "continuous surface connection" to relatively permanent, standing, or flowing bodies of water. *Id*. at 768-69.

As to relative permanence ("the plurality's first requirement," *id.* at 769), Justice Kennedy viewed the plurality's reading of *Riverside Bayview* as too narrow. *Rapanos*, 547 U.S. at 771. Justice Kennedy concluded that the Army could reasonably construe the term "waters" more broadly to also include the plurality's "permanent streams" *and* "impermanent streams." *Id*. at 770.

Turning to "[t]he plurality's second limitation," Justice Kennedy disagreed that *Riverside Bayview* limits the scope of wetlands included within the term "navigable waters" to just those which abut navigable waters so closely that they cannot be distinguished, or even that there be a continuous surface connection, however close. *Rapanos*, 547 U.S. at 772-73. Justice Kennedy also disagreed with the plurality's reading of *SWANCC* as requiring a surface connection between

wetlands and navigable waters. *Rapanos*, 547 U.S. at 774. Ultimately, Justice Kennedy concluded that the Army's broader definition of non-abutting but still "adjacent" wetlands would be reasonable if limited to those wetlands with a significant nexus. *Id*. at 775.

In short, Justice Kennedy agreed that those waters that the plurality generally considers "navigable" are clearly covered by the Act. But Justice Kennedy's view is that the plurality reads the statute, *Riverside Bayview*, and "significant nexus" as used in *SWANCC*, too narrowly.

Regarding tributaries, Justice Kennedy reads the Act as applicable to both permanent and "impermanent streams" whereas the plurality reads the Act to apply only to relatively permanent tributaries. As a result, the plurality's reading of the Act is necessarily a logical subset of the broader category of Justice Kennedy's permanent and impermanent streams. *Id.* at 770.

And as to wetlands, Justice Kennedy agrees with the plurality that those wetlands which abut covered tributaries so closely that they cannot easily be distinguished are categorically covered by the Act. *Id*. at 780. The plurality would limit covered wetlands to this category, which is a subset of the broader group of adjacent waters (as broadly defined by the Army) to which Justice Kennedy reasons the Act may be applicable on a case-by-case basis. And Justice Kennedy's reasoning as to directly abutting wetlands is that they categorically have the "significant nexus" that his rule requires. *Id*.

The relatively permanent tributaries and directly abutting wetlands covered by the plurality's rule are a logical subset of Justice Kennedy's broader reading of "navigable waters" under the Act; Justice Kennedy generally sees these waters as a subset of those his rule includes.

So, following the logical subset approach to applying *Marks*, as required in the Tenth Circuit, the proper reading of *Rapanos* is that the plurality's reading of "navigable waters" under

the Clean Water Act is a logical subset of Justice Kennedy's reasoning, and is the holding of the case.

> **(1)** **The Plurality Opinion Is the Holding of *Rapanos*, so the Injunction Should Extend to All Intermittent Streams and Non-Abutting Wetlands**

As demonstrated above, the plurality opinion in *Rapanos* is the holding of the case. So, the scope of the injunction issued pursuant to this motion should bar regulation of (i) all intermittent tributaries that would otherwise be regulated under Subsection 328.3(a)(3) and 328.3(c)(12), and (ii) all wetlands that do not directly abut other regulated water bodies, that would otherwise be regulated under Subsection 328.3(a)(4) and 328.3(c)(1)(ii)-(iv). Wetlands only "abut" if they have a direct physical interconnection with the water they abut such that it is difficult to establish where one begins and the other ends. *See Rapanos*, 547 U.S. at 739, 742 (limits to regulation of tributaries and adjacent wetlands).

> **(2)** **If Justice Kennedy's Concurrence Is the Holding, Then the Injunction Should Extend to All Intermittent Tributaries and Non-Abutting Wetlands Except Those Shown to Have a Significant Nexus**

If the Court holds that Justice Kennedy's concurrence is the holding of *Rapanos*, then the Court should enjoin the enforcement of the challenged subsections to the extent they would regulate tributaries or wetlands for which EPA or the Army have not established, on a case-by-case basis, a significant nexus to a downstream navigable-in-fact river or lake. *Rapanos*, 547 U.S. at 780-81 (Kennedy, J., concurring) (specifying limits of authority to regulate tributaries and adjacent wetlands that lack a significant nexus).

### (3)   If *Marks* Cannot Be Applied, Then the Injunction Should Extend to All Non-Navigable Tributaries and Adjacent Wetlands

If the Court holds that *Marks* cannot be applied to *Rapanos*, as have the First, Third, and Eighth Circuits, then the Court should enjoin the regulation of any non-navigable tributaries, and any wetlands that do not abut navigable-in-fact lakes or rivers. *United States v. Johnson*, 467 F.3d 56, 64 (1st Cir. 2006), *United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011), and *United States v. Bailey*, 571 F.3d 791, 799 (8th Cir. 2009), all conclude that *Marks* cannot be applied. However, each of these decisions then errs in concluding that as a result the government can regulate water features that meet the criteria in either opinion. *Johnson*, 467 F.3d at 66; *Donovan*, 661 F.3d at 182; *Bailey*, 571 F.3d at 799.

This is an entirely erroneous application of *Marks*, and conflicts with the Tenth Circuit's controlling interpretation of *Marks*, that where it cannot be applied to a Supreme Court decision, the decision provides no rule of law to be applied. *Carrizales-Toledo*, 454 F.3d at 1151. In such cases, only the judgment in the case can be applied. *Fremont Cty.*, 670 F.3d at 1141. The judgment in *Rapanos* was to invalidate the tributary and adjacent wetlands subsections of the 1986 Regulations, and to remand to the Sixth Circuit to do its best without the regulations.

The plurality, to a degree, and the concurrence to a greater degree, each allow the regulation of some non-navigable tributaries and adjacent wetlands. But if neither opinion is the holding, then the only result of *Rapanos* is the judgment invalidating the regulation of tributaries and adjacent wetlands (except those covered by *Bayview Riverside Homes*). Absent a holding that allows regulation of some of these features, the judgment forecloses regulation of any of them. So if this Court holds that neither opinion is the holding, then it should enjoin the regulation of all non-

23

navigable tributaries, and all wetlands that do not directly abut navigable-in-fact waters.

**B.      Ranchers Will Suffer Irreparable Harm Absent an Injunction, Because Their Injury Is Constitutional, and Because They Cannot Feasibly Obtain Army Permits on the Necessary Timetable and Cannot Recover the Costs of Obtaining Them**

"When an alleged deprivation of a constitutional right is involved, . . . most courts hold that no further showing of irreparable injury is necessary." 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013) (footnotes omitted). In the Tenth Circuit, "violation of a constitutional right must weigh heavily in [the] analysis" of irreparable harm. *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016). *Rapanos* states that the tributary and adjacent wetland subsections of the 1986 Regulations (which as shown above are identical in pertinent respects to the provisions of the 2020 Regulations which Cattle Growers seeks to enjoin in this motion) violate the Commerce Clause and the Tenth Amendment. 547 U.S. at 738. No further proof of injury is necessary for an injunction to issue. *See Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*, 893 F. Supp. 301, 309 (D.N.J. 1995) ("a violation of rights under the . . . Commerce Clause constitutes . . . 'irreparable harm'"); *Citicorp Services, Inc. v. Gillespie*, 712 F. Supp. 749, 753 (N.D. Cal. 1989) (Commerce Clause violation causes irreparable harm).

The Sixteenth Claim for Relief in Cattle Growers' First Supplemental Complaint alleges that the Intermittent Tributary and Non-abutting Wetland Provisions violate the Tenth Amendment and the Commerce Clause. First Supplemental Complaint, ¶¶ 163-77, at 37-40, Dkt. No. 26. The Supreme Court agrees. *Rapanos*, 547 U.S. at 730 (certiorari granted to determine constitutionality of Clean Water Act); *id*. at 738 (tributary provision of 1986 Regulations exceeds Commerce Power); *see also id*. at 782 (Kennedy, J., concurring) (significant nexus requirement prevents Act from exceeding constitutional limits).

24

The essence of these claims is that the Intermittent Tributary and Non-abutting Wetland Provisions exceed not only the scope of the Clean Water Act, but Congress' power to legislate under the Tenth Amendment and the Commerce Clause. All Americans have the constitutional right to be free from Congressional and Executive Branch regulations that exceed the limited and enumerated powers of the federal government. This is no less true of the limits imposed by the Commerce Clause and Tenth Amendment than those imposed by the First, Fourth, Fifth, or Eighth Amendments. *New York v. United States*, 505 U.S. 144, 181 (1992) ("The Constitution divides authority between federal and state governments for the protection of individuals."); *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 572 (1985) (Powell, J., dissenting) ("[B]y usurping functions traditionally performed by the States, federal overreaching under the Commerce Clause undermines the constitutionally mandated balance of power between the States and the Federal Government, a balance designed to protect our fundamental liberties.").

These established constitutional violations satisfy the criteria for irreparable harm for constitutional claims in the Tenth Circuit, per *Fish v. Kobach*.

Even without constitutional injury, application of the Intermittent Tributary and Non-abutting Wetland Provisions imminently and irreparably harms Cattle Growers. The question here is not the severity of the harm, but whether it is actual or imminent, and irreparable. "[I]t is not so much the magnitude [of the harm] but the irreparability that counts for purposes of a preliminary injunction." *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 575 (5th Cir. 1974). The "alleged harm need not be occurring or be certain to occur" to grant a preliminary injunction. *Michigan v. United States Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir. 2011) (citing *United States. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

Many Ranchers will be required to seek permits for projects that are not legally regulated under the Clean Water Act. Frost-Maynard Decl., ¶¶ 4-6; Sidwell Decl., ¶¶ 13-16. In particular, intermittent tributaries and non-abutting "adjacent" waters are frequently found on Ranchers' properties. Frost-Maynard Decl., ¶ 5; Sidwell Decl., ¶¶ 13-15. Because of the universal scope of these provisions, many Ranchers will be required to either curtail operations or seek costly permits and suffer significant delays. Frost-Maynard Decl., ¶ 7; Sidwell Decl., ¶ 16. And, Ranchers cannot recover the tens to hundreds of thousands of dollars in permitting expenses that the Provisions impose since "the United States has not waived sovereign immunity from suits seeking these sorts of damages." *Georgia v. Pruitt*, 326 F. Supp. 3d 1356, 1367 (S.D. Ga. 2018).

In 2006 the Supreme Court invalidated the Tributary and Adjacent Wetland Subsections of the 1986 Regulations. *Rapanos*, 547 U.S. at 728; *id.* at 739 (Act does not authorize regulation of intermittent and ephemeral tributaries); *id.* at 755 (Act does not authorize regulation of wetlands that do not comingle with regulable tributaries); *id.* at 757 (remanding case for consideration under Supreme Court interpretation of the Act rather than regulations); *id.* at 759 (Kennedy, J., concurring) (issue is whether statute authorizes regulation of all non-navigable tributaries and non-abutting wetlands); *id.* at 781 (Kennedy, J., concurring) (regulation of all tributaries invalid under the Act); *id.* at 779 (Kennedy, J., concurring) (regulation asserting authority over all "neighboring" wetlands exceeds Act's requirement for significant nexus).

The Navigable Waters Protection Rule re-imposes identical portions of both of these illegal provisions on Cattle Growers, requiring them to comply with federal limits on use of their own property to the extent of intermittent drainages and other water features.

The Declarations of Frost-Maynard and Sidwell show that Ranchers' properties commonly

have intermittent drainages that are illegally and unconstitutionally regulated by the Intermittent Tributary and Non-abutting Wetland Provisions. Ranchers' properties contain perennial and intermittent non-navigable tributaries. And, these types of water features are common on Ranchers' property throughout New Mexico. Frost-Maynard Decl., ¶ 5; Sidwell Decl., ¶¶ 13-15.

With the frequent presence of intermittent drainages and other temporary water features on their land, Cattle Growers will either have to forego plowing and other earth moving operations in and around these features, or obtain prohibitively expensive permits to eventually proceed (after multi-year waits) with those operations. If they proceed with their operations without permits, they face crippling liability.

To avoid this liability, it would be necessary for Cattle Growers to seek advance determinations from the Army whether their operations are exempt, under 33 C.F.R. § 320.1(a)(6). This determination is itself time-consuming and costly. *See Duarte Nursery v. Army Corps*, E.D. Cal. case no. 2:13-cv-02095-KJM, Deposition of James Robb, ECF 113, at 66:9–75:11 (establishing exemption requires jurisdictional delineation and detailed explanation of farming history), Exhibit A to François Decl. So the exemption cannot be confirmed without the time and expense of the jurisdictional determination that the exemption would in theory make unnecessary.

These harms are ongoing or imminent. The Provisions will take effect on June 22, 2020. 85 Fed. Reg. 22,250. Because permitting takes more than two years on average, Cattle Growers will be unable to legally engage in any earth moving operations on their own property wherever they encounter intermittent drainages and other temporary water features for at least two years. This includes any non-exempt plowing during the next two years, as well erosion control and prevention, sediment trapping, and even environmental enhancement projects. Many of these

operations may be urgently required on an unpredictable basis due to weather and other factors. *See Oregon Cattlemen's Association v. EPA*, D. Or. Case No. 3:19-cv-00564-AC; Transcript of July 17, 2019, Bench Ruling Granting Motion for Preliminary Injunction, at 37:7–38:13 (illegal regulation of ephemeral tributaries by 2015 Regulations, where "circumstances can change rapidly," is imminent and irreparable harm to cattle ranchers) Exhibit B to François Decl.; *cf. Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Social and Rehabilitation Services*, 31 F.3d 1536, 1543 (10th Cir. 1994) (trade association showed irreparable harm when no remedy available to redress illegal regulations).

Cattle Growers will suffer costs, delays, and inability to use their own land, for which no money damages or other remedy is available, and which are ongoing or imminently planned or necessary within the two year time frame for permitting, especially considering the unpredictability of weather conditions that may require prompt action. Ranchers face ongoing or imminent irreparable injury as a result of the Tributary and Adjacent Wetland Subsections.

## C.     The Balance of Equities and the Public Interest Both Favor an Injunction

A plaintiff seeking a preliminary injunction must show that "the balance of equities tips in his favor." *Winter*, 555 U.S. at 20. In this case, the risk of harm of granting a preliminary injunction is low. The Intermittent Tributary and Non-abutting Wetland Provisions are indistinguishable from the corresponding provisions of the 1986 Regulations that were already ruled illegal by the Supreme Court in 2006. There is simply no "indication that the integrity of the nation's waters will suffer imminent injury if the [same old] scheme is not immediately implemented and enforced." *In re EPA*, 803 F.3d 804, 808 (6th Cir. 2015). Furthermore, "[t]he Government 'cannot suffer harm from an injunction that merely ends an unlawful practice'" as would an injunction here. *R.I.L-R v.*

28

*Johnson*, 80 F. Supp. 3d 164, 191 (D.D.C. 2015) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013)).

Furthermore, "enforcing the APA strictly [would better] serve the public interest." *Texas Food Indus. Ass'n v. U.S. Dep't of Agriculture*, 842 F. Supp. 254, 261 (W.D. Tex. 1993); *accord N. Mariana Islands v. United States*, 686 F. Supp. 2d 7, 21 (D.D.C. 2009) ("The public interest is served when administrative agencies comply with their obligations under the APA."). On the other hand, without an injunction "the states, their governmental subdivisions, and their citizens" will be asked "to expend valuable resources and time operationalizing a rule that may not survive judicial review." *Texas v. United States Environmental Protection Agency*, No. 3:15-CV-00162, 2018 WL 4518230, at *1 (S.D. Tex. Sept. 12, 2018); *accord Georgia v. Pruitt*, 326 F. Supp. 3d at 1370 ("[I]f the [2015 Navigable Waters Definition] becomes effective before a final decision on the merits is rendered, farmers, homeowners, and small businesses will need to devote time and expense to obtaining federal permits—all to comply with a rule that is likely to be invalidated."). None of that is in the public interest.

### III.    No Bond Is Necessary In This Case

Under Fed. R. Civ. P. 65(c), "the trial judge has wide discretion in the matter of requiring security and if there is an absence of proof showing a likelihood of harm, certainly no bond is necessary." *Cont'l Oil Co. v. Frontier Refining Co.*, 338 F.2d 780, 782 (10th Cir. 1964) (footnote omitted); *Navajo Health Foundation-Sage Mem'l Hosp., Inc. v. Burwell*, 100 F. Supp. 3d 1122, 1191 (D.N.M. 2015).

The Supreme Court has already found the functionally identical regulations to the Intermitted Tributary and Non-abutting Wetlands Provisions to violate the Clean Water Act and

the Constitution. Cattle Growers ask that the Provisions be enjoined to the extent that this Court concludes they exceed either the *Rapanos* plurality or Justice Kennedy's concurrence. No harm can be attributed to any injunction that merely requires EPA and the Army to comply with a Supreme Court decision and judgment to which the United States was a party. The Court has discretion to require no bond for the injunction sought in this motion.

## CONCLUSION

The Court should rule that the *Rapanos* plurality is the controlling rule of law and grant the requested preliminary injunction without bond.

DATED: May 26, 2020.                     Respectfully submitted:

**PACIFIC LEGAL FOUNDATION**

By      s/ Anthony L. François
ANTHONY L. FRANÇOIS (Federal Bar No. 15-74)
MOLLIE R. WILLIAMS (Cal. Bar No. 322970)*
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
Email: TFrancois@pacificlegal.org
Email: MWilliams@pacificlegal.org
*Attorneys for Plaintiff, New Mexico Cattle Growers' Association*
*Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that, on May 26, 2020, I electronically transmitted the foregoing to the Clerk of Court using the ECF system for filing and transmittal of a Notice of Electronic Filing to registered counsel for all parties.

s/ Anthony L. François
ANTHONY L. FRANÇOIS
