# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| NEW MEXICO CATTLE GROWERS' ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| | ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., | ) ) ) |
| Defendants. | ) ) |

Case No. 1:19-cv-00988-RB-SCY

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

# TABLE OF CONTENTS

Table of Contents ........................................................................................................ i

Table of Authorities ................................................................................................. iii

Glossary ................................................................................................................... x

Introduction .............................................................................................................. 1

Background ............................................................................................................... 3

I.     Statutory and Regulatory Background ...................................................... 3

     A.     Clean Water Act ............................................................................ 3

     B.     Prior Regulatory Definitions of "Waters of the United States" and Litigation ................................................................................. 4

          1.     The 1980s Regulations ..................................................... 4

          2.     The 2015 Rule .................................................................. 5

          3.     The Repeal Rule and Navigable Waters Protection Rule ............... 6

II.     Procedural History ...................................................................... 8

Standard of Review .................................................................................................. 9

Argument ............................................................................................................... 10

I.     The Court Lacks Jurisdiction over Plaintiff's Challenge to the NWPR. .............. 10

     A.     Plaintiff's Claims Are Unripe. ................................................... 10

     B.     Plaintiff Fails to Allege a Concrete and Particularized Injury. ............... 12

II.     Plaintiff Is Unlikely to Succeed on the Merits. ........................................ 13

     A.     *Chevron* Requires Deference to the Agencies' Reasonable Interpretation. ............................................................................. 14

i

1.      The NWPR Does Not Exceed the Permissible Limits of the
        CWA. ........................................................................................ 14

2.      The Agencies' Revised Regulatory Definition of "Waters of
        the United States" Is a Reasonable Construction of
        Ambiguous Statutory Terms. ...................................................... 18

B.      The NWPR Reasonably Defines "Tributary" To Include
        Intermittent Flow and "Adjacent Wetlands" to Include Certain Non-
        Abutting Wetlands. .................................................................... 21

C.      Issue Preclusion Does Not Bar the NWPR. ................................. 24

III.    Plaintiff Fails to Demonstrate Imminent, Irreparable Harm from the NWPR.
        ................................................................................................... 26

A.      Plaintiff's Allegations of Irreparable Harm Are Premature. ..................... 26

B.      Plaintiff Fails to Show Imminent, Irreparable Harm from the
        NWPR. ...................................................................................... 28

C.      Plaintiff's Alleged Injuries Are Not Irreparable. ...................................... 30

IV.     The Balance of Equities Weighs in Favor of the Agencies, and Issuance of
        the Injunction Requested by Plaintiff Would Harm the Public Interest. .............. 31

V.      Even if Preliminary Injunctive Relief Is Awarded, the Remedies Proposed
        by Plaintiff Do Not Preserve the Status Quo and Are Overbroad and Not
        Appropriately Tailored. ...................................................................................... 33

CONCLUSION ................................................................................................... 34

# TABLE OF AUTHORITIES

**CASES**                                                                                                   **PAGE**

*Am. Petroleum Inst. v. Jorling*,
   710 F. Supp. 421 (N.D.N.Y. 1989) .................................................................................... 31

*Amisub (PSL), Inc. v. Colo. Dep't of Soc. Servs.*,
   879 F.2d 789 (10th Cir. 1989) ........................................................................................ 9

*Aposhian v. Barr*,
   958 F.3d 969 (10th Cir. 2020) ...................................................................................... 31

*Atl. Coast Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*,
   893 F. Supp. 301 (D.N.J. 1995) .................................................................................... 31

*Big O Tires, Inc. v. Bigfoot 4X4, Inc.*,
   167 F. Supp. 2d 1216 (D. Colo. 2001) ........................................................................ 33

*California v. Wheeler*,
   No. 3:20-cv-03005, 2020 WL 3403072 (N.D. Cal. June 19, 2020) ............................. 8-9, 22

*Cal. River Watch v. City of Healdsburg*,
   496 F.3d 993 (9th Cir. 2007) ...................................................................................... 17

*Campbell Soup Co. v. ConAgra, Inc.*,
   977 F.2d 86 (3d Cir. 1992).......................................................................................... 29

*Chevron, U.S.A., Inc. v. NRDC*,
   467 U.S. 837 (1984)................................................................................ 14, 15, 18, 21

*Citicorp Servs., Inc. v. Gillespie*,
   712 F. Supp. 749 (N.D. Cal. 1989) .............................................................................. 31

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398, (2013)................................................................................................. 12

*Colorado v. EPA*,
   No. 1:20-cv-01461, 2020 WL 3402325 (D. Colo. June 19, 2020) ............................. 7

*Cty. of Maui, Hawaii v. Haw.Wildlife Fund*,
   140 S. Ct. 1462 (2020)............................................................................................... 19-20

*Direx Israel, Ltd. v. Breakthrough Med. Corp.*,
   952 F.2d 802 (4th Cir. 1991) ...................................................................................... 29

iii

*Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*,
   356 F.3d 1256 (10th Cir. 2004) .......................................................................... 31-32

*E. Bay Sanctuary Covenant v. Trump*,
   950 F.3d 1242 (9th Cir. 2020) ................................................................................. 32

*Entergy Corp. v. Riverkeeper, Inc.*,
   556 U.S. 208 (2009).................................................................................................. 18

*Fish v. Kobach*,
   840 F.3d 710 (10th Cir. 2016) ...................................................................... 10, 30, 31

*Georgia v. Wheeler*,
   418 F. Supp. 3d 1336 (S.D. Ga. Aug. 21, 2019)....................................................... 6

*Heideman v. S. Salt Lake City*,
   348 F.3d 1182 (10th Cir.2003) ............................................................................... 31

*In re EPA & Dep't of Def. Final Rule*,
   803 F.3d 804 (6th Cir. 2015) ..................................................................................... 6

*In re U.S. Dep't of Def. & EPA Final Rule*,
   713 F. App'x 489 (6th Cir. 2018) .............................................................................. 6

*Lundgrin v. Claytor*,
   619 F.2d 61 (10th Cir. 1980) .................................................................................... 30

*Madsen v. Women's Health Ctr., Inc.*,
   512 U.S. 753 (1994).................................................................................................. 34

*Marks v. United States*,
   430 U.S. 188 (1977).............................................................................................. 3, 16

*Marsh v. Or. Nat. Res. Council*,
   490 U.S. 360 (1989).................................................................................................... 9

*Mayo Found. for Med. Educ. & Research v. United States*,
   562 U.S. 44 (2011).................................................................................................... 18

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
   463 U.S. 29 (1983).............................................................................................. 21-22

*Nat'l Ass'n of Home Builders v. EPA*,
   667 F.3d 6 (D.C. Cir. 2011) ............................................................................ 11-12, 13

*Nat'l Ass'n of Mfrs v. Dep't of Def.*,
   138 S. Ct. 617 (2018) ........................................................................... 6, 20

*Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs.*,
   545 U.S. 967 (2005) ........................................................ 2, 3, 15, 18-19, 22

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
   538 U.S. 803 (2003) ........................................................................... 10-11

*N.M. Dep't of Game & Fish v. DOI*,
   854 F.3d 1236 (10th Cir. 2017) .................................................................. 9

*New York State Bar Ass'n v. Reno*,
   999 F. Supp. 710 (N.D.N.Y. 1998) .......................................................... 26

*N. Cal. River Watch v. City of Healdsburg*,
   496 F.3d 993 (9th Cir. 2007) .................................................................... 17

*North Dakota v. EPA*,
   127 F. Supp. 3d 1047 (D.N.D. 2015) ......................................................... 6

*North Dakota v. EPA*,
   Case No. 3:15-cv-059, Dkt. No. 280 (D.N.D. May 14, 2019) ................... 6

*Prof'l Towing & Recovery Operators of Ill. v. Box*,
   No. 08 C 4096, 2008 WL 5211192 (N.D. Ill. Dec. 11, 2008) ................. 31

*Rapanos v. United States*,
   547 U.S. 715 (2006) ...................................................................... passim

*RoDa Drilling Co. v. Siegal*,
   552 F.3d 1203 (10th Cir. 2009) ............................................................... 28

*SCFC ILC, Inc. v. Visa USA, Inc.*,
   936 F.2d 1096 (10th Cir. 1991) ..................................................... 9, 31, 34

*Sierra Club v. U.S. Army Corps of Eng'rs*,
   990 F. Supp. 2d 9 (D.D.C. 2013) ............................................................ 32

*Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs (SWANCC)*,
   531 U.S. 159 (2001) ........................................................... 4, 14, 20, 23

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ............................................................................. 12

*State Nat'l Bank of Big Spring v. Lew*,
 958 F. Supp. 2d 127 (D.D.C. 2013),
 *aff'd in part, rev'd in part,* 795 F.3d 48 (D.C. Cir. 2015) ...................... 11

*Texas v. EPA*,
 389 F. Supp. 3d 497 (S.D. Tex. 2019) ........................................... 6

*Texas v. United States*,
 523 U.S. 296 (1998) ............................................................ 26

*U.S. Army Corps of Eng'rs v. Hawkes, Inc.*,
 136 S. Ct. 1807 (2016) ...................................................... 1, 20

*United States v. Bailey*,
 571 F.3d 791 (8th Cir. 2009) ................................................. 17

*United States v. Cundiff*,
 555 F.3d 200 (6th Cir. 2009) ................................................. 17

*United States v. Donovan*,
 661 F.3d 174 (3d Cir. 2011) ................................................. 17

*United States v. Eurodif S.A.*,
 555 U.S. 305 (2009) ...................................................... 17, 19

*United States v. Gerke Excavating, Inc.*,
 464 F.3d 723 (7th Cir. 2006) ................................................. 17

*United States v. Johnson*,
 467 F.3d 56 (1st Cir. 2006) .................................................. 17

*United States v. Mendoza*,
 464 U.S. 154 (1984) .......................................................... 24

*United States v. Nat'l Treasury Emps. Union*,
 513 U.S. 454 (1995) .......................................................... 33

*United States v. Riverside Bayview Homes, Inc.*,
 474 U.S. 121 (1985) ........................................... 4, 14, 18, 20, 23

*United States v. Robertson*,
 875 F.3d 1281 (9th Cir. 2017),
 *cert. granted, judgment vacated,* 139 S. Ct. 1543 (2019) ...................... 17

*United States v. Robison*,
   505 F.3d 1208 (11th Cir. 2007) ........................................................... 17

*Univ. of Tex. v. Camenisch*,
   451 U.S. 390 (1981) ............................................................................. 33

*Winter v. NRDC*,
   555 U.S. 7 (2008)............................................................................. 9, 29

**STATUTES**

Administrative Procedure Act:

   5 U.S.C. § 702(A)............................................................................... 9

   5 U.S.C. § 702(C)............................................................................... 9

Clean Water Act, 33 U.S.C. § 1251 et seq.:

   Section 101(a), 33 U.S.C. § 1251(a)................................................... 3

   Section 101(b), 33 U.S.C. § 1251(b) .................................................. 4

   Section 301(a), 33 U.S.C. § 1311(a)................................................... 4

   Section 404(f), 33 U.S.C. § 1344(f)................................................... 27

   Section 502(7), 33 U.S.C. § 1362(7) ....................................... 1-2, 4, 14

**CODE OF FEDERAL REGULATIONS**

33 C.F.R. § 325.1 ................................................................................ 11

33 C.F.R. § 323.3 ................................................................................. 1

33 C.F.R. § 328.3(a) (1987)................................................................. 4

33 C.F.R. § 328.3(3) (1987)................................................................. 1

33 C.F.R. § 328.3(a)(2) (2019) ........................................................... 25

33 C.F.R. § 328.3(a)(4) (2019) ........................................................... 25

33 C.F.R. § 328.3(a)(5) (2019) ........................................................... 25

33 C.F.R § 328.3(c) (2019)................................................................. 25

33 C.F.R § 328.3(c)(1) ........................................................................... 23, 25

40 C.F.R. § 232.2(q) (1988) .................................................................... 4

**FEDERAL REGISTER**

42 Fed. Reg. 37,122 (July 19, 1977) ........................................................ 4

   42 Fed. Reg. 37,144 ............................................................................ 4

80 Fed. Reg. 37,054 (June 29, 2015) ....................................................... 5

   80 Fed. Reg. 37,060 ............................................................................ 6

84 Fed. Reg. 56,626 (Oct. 22, 2019) ..................................................... 6-7

85 Fed. Reg. 22,250 (Apr. 21, 2020) .................................................... 1, 7

   85 Fed. Reg. 22,251 ........................................................................... 27

   85 Fed. Reg. 22,252 ................................................................... 7, 8, 32

   85 Fed. Reg. 22,255-57 ...................................................................... 19

   85 Fed. Reg. 22,265 ........................................................................... 21

   85 Fed. Reg. 22,267-68 ...................................................................... 19

   85 Fed. Reg. 22,270 ........................................................................ 7, 11

   85 Fed. Reg. 22,271 ....................................................................... 11, 19

   85 Fed. Reg. 22,272 ........................................................................... 11

   85 Fed. Reg. 22,273 ........................................................................ 7, 11

   85 Fed. Reg. 22,274 ................................................................. 22, 26, 27

   85 Fed. Reg. 22,279 ........................................................................... 23

   85 Fed. Reg. 22,288 ........................................................................... 16

   85 Fed. Reg. 22,303-04 ....................................................................... 8

   85 Fed. Reg. 22,309-15 ...................................................................... 23

85 Fed. Reg. 22,333................................................................................................ 28

85 Fed. Reg. 22,338...................................................................................... 7-8, 25, 27

85 Fed. Reg. 22,339................................................................................................ 25

85 Fed. Reg. 22,340.............................................................................................. 7, 22

85 Fed. Reg. 22,341................................................................................................. 7

**OTHER AUTHORITIES**

11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013)................... 30-31

# GLOSSARY

| | |
|---|---|
| 2015 Rule | Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) |
| CWA | Clean Water Act |
| EA | Economic Analysis for the Navigable Waters Protection Rule: Definition of "Waters of the United States," *available at* https://www.epa.gov/nwpr/navigable-waters-protection-rule-supporting-documents |
| JD | Jurisdictional Determination |
| Mot. | Plaintiff's Motion for Preliminary Injunction, Dkt. No. 30 (May 26, 2020) |
| NWPR | Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) |
| Repeal Rule | Definition of "Waters of the United States"—Recodification of Pre-Existing Rules, 84 Fed. Reg. 56,626 (Oct. 22, 2019) |

Defendants (the "Agencies") respectfully request that the Court deny Plaintiff's motion, Dkt. No. 30, which seeks to preliminarily enjoin the Navigable Waters Protection Rule: Definition of "Waters of the United States," 85 Fed. Reg. 22,250 (Apr. 21, 2020) ("NWPR").

## INTRODUCTION

The NWPR brings decades of debate regarding the jurisdictional limits of the Clean Water Act ("CWA") to a close. Going forward, anyone wondering if waters or wetlands are "waters of the United States" subject to CWA permitting will be able to pull out the Code of Federal Regulations and review 33 C.F.R. § 328.3. In many cases, those regulations alone will tell them if a CWA permit is needed to discharge into a particular water. The Agencies' 1986 regulations, by contrast, never provided that level clarity, instead setting an indeterminate jurisdictional boundary around all waters "which could affect interstate or foreign commerce . . . ." *See*, *e.g.*, 33 C.F.R. § 328.3(3) (1987). The "notoriously unclear" regime of "significant nexus" inaugurated by the Supreme Court's *Rapanos* decision of 2006 muddied the waters even further, *see U.S. Army Corps of Eng'rs v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1816 (2016) (Kennedy, J. concurring), spawning years of litigation over the extent of the jurisdictional waters not more readily understood as navigable.

The NWPR—including the clarity and consistency of a regulatory regime with fewer transaction costs, fewer consultants—will provide a significant public benefit with comparable environmental protection together with the protective state regulatory regimes. *See* Economic Analysis at 171-182 (hereinafter "EA"). The Agencies' well-reasoned, well-explained, and legally well-supported new definition of "waters of the United States" under the CWA, 33 U.S.C. §

1

1362(7), should be affirmed. And Plaintiff's motion for preliminary injunction pending summary judgment proceedings should be denied.

What constitutes a "water of the United States" is a textbook example of statutory ambiguity for which agencies are "delegat[ed] . . . authority to . . . fill the statutory gap in reasonable fashion." *Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005). Thus, the question for this Court on the merits is whether the NWPR is a reasonable construction of the CWA. Such "agency construction" will displace even prior *judicial* decisions unless such a holding "follow[ed] from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Id.* at 982.

Plaintiff argues that a four-Justice plurality opinion from the Supreme Court's *Rapanos* decision marks a hard edge to the Agencies' statutory authority under the CWA. Pl.'s Mot. for Prelim. J., Dkt. No. 30, at 14-21 ("Mot."). Not one of three courts of appeals to previously consider this question agrees. Plaintiff nevertheless says this plurality opinion, in effect, "leaves no room for" the NWPR's definition of "waters of the United States." That is incorrect.

To be sure, five Justices expressed that there are limits to the Agencies' authority under the CWA. Those limits must derive from Congress's use of the term "navigable waters" in the CWA. *See Rapanos v. United States*, 547 U.S. 715, 730-31 (2006) (plurality); *Id*. at 760 (Kennedy, J, concurring). But one Justice expressed that, "[a]bsent *more specific regulations*, however, the Corps must establish a significant nexus on a case-by-case basis when it seeks to regulate wetlands based on adjacency to nonnavigable tributaries. Given the potential overbreadth of the Corps' regulations, this showing is necessary to avoid unreasonable applications of the statute." *Id.* at 782 (Kennedy, J, concurring) (emphasis added). And though the Chief Justice joined the plurality, he

separately concurred. He wrote that the Agencies should receive "generous leeway by the courts" to "develop[] *some* notion of an outer bound to the reach of their authority." *Id.* at 758 (Roberts, C.J., concurring).

In promulgating the NWPR, the Agencies heeded Chief Justice Roberts. They established an appropriate outer bound to the reach of their authority. The Court need not apply *Marks v. United States*, 430 U.S. 188 (1977), to determine which *Rapanos* opinion is "controlling." This is the wrong inquiry here. The Supreme Court has not, as set forth in *Brand X*, definitively established that "the statute unambiguously forecloses the agency's interpretation." 545 U.S. at 982-83.

Plaintiff also fails to meet the high bar of showing imminent, irreparable harm upon the effective date of the Rule. Plaintiff's claims lack any specificity of harm pending summary judgment *caused* by the NWPR being implemented. So, relatedly, Plaintiff lacks standing, and this case is unripe. Plaintiff presents only vague allegations of unspecified activities that may be subject to regulation under the NWPR in waters that may or may not be jurisdictional. Plus, the public and governments will receive more benefits from replacing the "significant nexus" standard—which was only needed "absent more specific regulations," *Rapanos*, 547 U.S. at 782 (Kennedy, J., concurring)—with the clearer lines the NWPR now draws compared to any costs. EA at 171-182.

## BACKGROUND

### I.    Statutory and Regulatory Background

#### A.    Clean Water Act

Congress enacted the CWA, 33 U.S.C. §§ 1251 *et seq*., with the objective "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters," *id*. § 1251(a), while declaring its policy to "recognize, preserve, and protect the primary responsibilities and

rights of States to prevent, reduce, and eliminate pollution," *id*. § 1251(b). The CWA prohibits "the discharge of any pollutant by any person," *id*. § 1311(a), to a subset of the Nation's waters identified as the "navigable waters," which "means the waters of the United States," *id.* § 1362(7).

**B.      Prior Regulatory Definitions of "Waters of the United States" and Litigation**

**1.      The 1980s Regulations**

The Corps first promulgated regulations defining "waters of the United States" in the 1970s. *See, e.g.*, 42 Fed. Reg. 37,122, 37,144 (July 19, 1977). In the late 1980s, the Agencies adopted regulatory definitions substantially similar to the 1977 definition. *See* 33 C.F.R. § 328.3(a) (1987) (Corps); 40 C.F.R. § 232.2(q) (1988) (EPA) (collectively, the "1986 Regulations").

Over time, the Agencies refined their application of the regulatory definition of "waters of the United States," as informed by three Supreme Court decisions. In *Riverside Bayview*, the Court deferred to the Corps' assertion of jurisdiction over wetlands abutting a traditional navigable water. *United States v. Riverside Bayview Homes, Inc*., 474 U.S. 121, 131-35 & n.9 (1985). But in *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159 (2001) ("*SWANCC*"), the Court rejected the Corps' assertion of CWA jurisdiction over non-navigable, isolated, intrastate ponds. The Supreme Court held that the term "navigable" must be given meaning within the context of the statute. *Id.* A few years later, in *Rapanos*, the Supreme Court assessed the Corps' assertion of jurisdiction over four wetlands pursuant to the 1986 Regulations. 547 U.S. at 719-20, 729-30. Both the plurality and Justice Kennedy determined that the Corps' regulatory definition exceeded the scope of the CWA and that the cases should be remanded. *Id.* at 757 (plurality); *id.* at 786-87 (Kennedy, J., concurring). The plurality stated that "the traditional term 'navigable waters' . . . carries *some* of its original substance" and "includes, at bare minimum, the ordinary

presence of water." *Id.* at 734 (plurality). The plurality would have limited "waters of the United States" to traditional navigable waters and those "relatively permanent bod[ies] of water connected to traditional interstate navigable waters" and "wetlands with a continuous surface connection" to such relatively permanent waters, and excluded "[w]etlands with only an intermittent, physically remote hydrologic connection to 'waters of the United States.'" *Id.* at 739, 742.

In concurring, Justice Kennedy agreed that, when promulgating the CWA, Congress was not legislating to the full extent of its Commerce Clause power. He opined that jurisdiction extends to waters that have a "'significant nexus' to waters that are or were navigable in fact or that could reasonably be so made." *Id.* at 759 (Kennedy, J., concurring); *id.* at 779 ("[T]he word 'navigable' in the Act must be given some effect"). But Justice Kennedy rejected "the dissent" view that the CWA "would permit federal regulation whenever wetlands lie alongside a ditch or drain, however remote and insubstantial, that eventually may flow into traditional navigable waters." *Id.* at 778. The dissent found the Corps' broad regulations "reasonable," and would have upheld the finding of jurisdiction. *Id.* at 810 (Stevens, J., dissenting).

Though joining the four-Justice plurality, Chief Justice Roberts chastised the Agencies for their failure to use the "generous leeway by the courts in interpreting the statute" to "develop[] *some* notion of an outer bound to the reach of their authority" following the Court's *SWANCC* decision. *Id.* at 757-58 (Roberts, C.J., concurring).

### 2. The 2015 Rule

In 2015, the Agencies revised the regulatory definition of "waters of the United States." *See* Clean Water Rule: Definition of "Waters of the United States," 80 Fed. Reg. 37,054 (June 29, 2015) ("2015 Rule"). The 2015 Rule claimed reliance on the Agencies' interpretation of Justice

Kennedy's "significant nexus" discussion as its legal touchstone. *See id.* at 37,060. Multiple parties sought judicial review of the 2015 Rule in district courts across the country, including Plaintiff in *Washington Cattlemen's Association v. EPA*, No. 0:15-cv-03058 (D. Minn.). Plaintiff and other parties also filed petitions for review in the courts of appeals.

In August 2015, the North Dakota district court preliminarily enjoined the 2015 Rule in 13 states, including New Mexico. *North Dakota v. EPA*, 127 F. Supp. 3d 1047, 1060 (D.N.D. 2015). Three other district courts also preliminarily enjoined the 2015 Rule. The petitions filed in the courts of appeals were consolidated in the Sixth Circuit, and in October 2015 that court stayed the 2015 Rule nationwide. *In re EPA & Dep't of Def. Final Rule*, 803 F.3d 804, 808-09 (6th Cir. 2015).

After the Supreme Court ruled that challenges to the 2015 Rule must be brought in district court, *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 624 (2018), the Sixth Circuit vacated its nationwide stay, *In re U.S. Dep't of Def. & EPA Final Rule*, 713 F. App'x 489, 490-91 (6th Cir. 2018). New Mexico withdrew from the *North Dakota* case in May 2019, but the court retained its injunction against the 2015 Rule as to a plaintiff-intervenor representing ten counties in New Mexico. *North Dakota v. EPA*, Case No. 3:15-cv-059, Dkt. No. 280 (D.N.D. May 14, 2019).

Since then, both courts that ruled on summary judgment motions held that the 2015 Rule was "unlawful" and remanded it to the Agencies. *Georgia v. Wheeler*, 418 F. Supp. 3d 1336 (S.D. Ga. 2019); *Texas v. EPA*, 389 F. Supp. 3d 497, 504-06 (S.D. Tex. 2019).

### 3.    The Repeal Rule and Navigable Waters Protection Rule

In 2017, the Agencies began reconsidering the 2015 Rule. They conducted a notice-and-comment rulemaking process. And, responding in part to the court orders remanding the 2015 Rule, the Agencies issued a final rule repealing the 2015 Rule and reinstating the 1986 Regulations.

6

84 Fed. Reg. 56,626 (Oct. 22, 2019) ("Repeal Rule"). The Repeal Rule went into effect on December 23, 2019. *Id*. at 56,626. Multiple parties have sought judicial review of the Repeal Rule.

On January 23, 2020, the Agencies signed a final rule revising the definition of "waters of the United States." The NWPR was published on April 21, 2020, and went into effect in 49 States on June 22, 2020. 85 Fed. Reg. 22,250 (Apr. 21, 2020).[1] The NWPR defines the limits of federal jurisdiction consistent with the Constitution, CWA, and case law. It establishes four simple categories of jurisdictional waters that improve regulatory clarity: "(1) The territorial seas and traditional navigable waters; (2) tributaries of such waters; (3) certain lakes, ponds, and impoundments of jurisdictional waters; and (4) wetlands adjacent to other jurisdictional waters (other than waters that are themselves wetlands)." *Id*. at 22,273. The Rule also excludes "many water features that traditionally have not been regulated, and define[s] the operative terms used in the regulatory text." *Id.* at 22,270; *see also id.* at 22,340-41 (regulatory text). Ephemeral features are categorically excluded from jurisdiction under the NWPR. *Id.* at 22,340.

The NWPR "presents a unifying legal theory for federal jurisdiction over those waters and wetlands that maintain a sufficient surface water connection to traditional navigable waters or the territorial seas." 85 Fed. Reg. at 22,252. But it is not a rote adoption of the *Rapanos* plurality's test. The NWPR includes "intermittent" tributaries that "flow[] continuously during certain times of the year and more than in direct response to precipitation (e.g., seasonally when the groundwater table is elevated or when snowpack melts)." *Id*. at 22,338. The NWPR also includes "adjacent wetlands" that are "inundated by flooding" from a jurisdictional water during "a typical year," and

---

[1] A preliminary injunction prevented the NWPR from going into effect in the State of Colorado. *Colorado v. EPA*, No. 1:20-cv-01461, 2020 WL 3402325 (D. Colo. June 19, 2020).

those separated from a jurisdictional water "only by a natural berm, bank, dune, or similar natural feature." *Id.* at 22,338. The Agencies appropriately explained their reasons for this line-drawing. *See*, *e.g.*, *id*. at 22,303-04.

In developing the NWPR, the Agencies were guided by the CWA's policies and objective; case law, including both the plurality and concurring opinions in *Rapanos*; and scientific principles. They balanced the objective of the CWA to restore and maintain the integrity of the Nation's waters with the policy of Congress to maintain states' primary responsibilities and rights. The NWPR "also provides clarity and predictability for Federal agencies, States, Tribes, the regulated community, and the public." *Id*. at 22,252. Moreover, the Agencies conducted an Economic Analysis of the NWPR. The Agencies did not rely on the Economic Analysis having any particular outcome when deciding to promulgate the final NWPR. Nevertheless, the Agencies' analysis concluded that—even in the most conservative scenario—the benefits of the NWPR from improved clarity, consistency, and reduced transaction costs far outweigh any costs or foregone benefits, including impacts to "stream flows, water quality, drinking water treatment, endangered and threatened species habitats, and other ecosystem services." EA at xviii.

## II.     Procedural History

Plaintiff filed this lawsuit on October 22, 2019, challenging the Repeal Rule. On April 27, 2020, Plaintiff supplemented its complaint to challenge the NWPR. Dkt. No. 26. On May 26, 2020, Plaintiff moved for a preliminary injunction. Dkt. No. 30. Other parties in various district courts have also sought judicial review of the NWPR. One court denied a preliminary injunction in a challenge brought by 17 states (including New Mexico), finding those claims unlikely to succeed

on the merits. *California v. Wheeler*, No. 3:20-cv-03005, 2020 WL 3403072, at *5-8 (N.D. Cal. June 19, 2020). Another court granted a preliminary injunction in Colorado. *See supra* note 1.

## STANDARD OF REVIEW

To obtain the extraordinary remedy of a preliminary injunction, Plaintiff must establish four factors: "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. NRDC, Inc.*, 555 U.S. 7, 20 (2008). The Court may not issue an injunction based on the mere possibility of irreparable harm. *N.M. Dep't of Game & Fish v. DOI*, 854 F.3d 1236, 1253 (10th Cir. 2017). The Tenth Circuit strongly disfavors the following types of preliminary injunctions and requires that the movant satisfy an even heavier burden of showing the above four factors: (1) a preliminary injunction that disturbs the status quo; (2) a preliminary injunction that is mandatory as opposed to prohibitory; and (3) a preliminary injunction that affords the movant substantially all the relief he may recover at the conclusion of a full trial on the merits. *SCFC ILC, Inc. v. Visa USA, Inc*., 936 F.2d 1096, 1098–99 (10th Cir. 1991).

In assessing Plaintiff's likelihood of success on the merits, the Court must apply the Administrative Procedure Act ("APA") standard, 5 U.S.C. § 706(2)(A), (C). Agency action may be overturned only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 375 n.21 (1989). This review is "highly deferential"; an agency's action is presumed valid if a reasonable basis exists for its decision. *Amisub (PSL), Inc. v. Colo. Dep't of Soc. Servs*., 879 F.2d 789, 800 (10th Cir. 1989).

# ARGUMENT

## I.     The Court Lacks Jurisdiction over Plaintiff's Challenge to the NWPR.

As Plaintiff acknowledges, in order to have standing to bring this case on behalf of its members, a member must have Article III standing to bring this challenge in his or her own right. Mot. at 9-10 (citation omitted). Plaintiff claims that its members will be injured if they have to seek CWA section 404 permits for activities on their property or "a determination from the Army or a consultant whether the 2020 Regulations apply to them." *Id.* at 11. But Plaintiff's standing allegations fail to demonstrate injury that is caused by the NWPR, Plaintiff has no injury and standing to challenge it. Plaintiff's declarations also contain only vague allegations of unspecified projects in the next few years. These do not describe particularized and concrete harm. For similar reasons, Plaintiff's claims will not be ripe unless and until it identifies a concrete action implicated by the NWPR.

### A.     Plaintiff's Claims Are Unripe.

"Ripeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003) (citation omitted). Under *National Park Hospitality Association*, "a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [Administrative Procedure Act (APA)] until the scope of the controversy has been reduced to more manageable proportions, and its factual

components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him." *Id*. at 808 (citation omitted).

Plaintiff has not identified a single, imminent project requiring a CWA section 404 permit. *See infra* Argument Part III. And based upon its members' descriptions of their own property, the waters in question may well no longer be considered "waters of the United States" under the NWPR. Plaintiff alleges that seeking a jurisdictional determination ("JD") from the Corps is itself "time-consuming and costly." Mot. at 27. Plaintiff has no evidentiary foundation to make that claim. The NWPR does away with the "case-by-case" application of the "significant nexus" standard for determining jurisdiction. 85 Fed. Reg. at 22,270-73. The NWPR imposes clearer lines and categorical exclusions that, in many cases, will not require expert consultants and hydrologists to determine federal jurisdiction. Moreover, the Corps does not charge for issuing a JD. *See* 33 C.F.R. § 325.1 (setting fees for regulatory program applications, but not JDs).

Additionally, the effort to determine whether the CWA applies to Plaintiff's members' activities is *not* a cognizable injury. *See State Nat'l Bank of Big Spring v. Lew*, 958 F. Supp. 2d 127, 153 (D.D.C. 2013) ("[A] plaintiff should not be able to achieve standing to litigate an injury based on the cost of figuring out whether it has an injury."), *aff'd in part, rev'd in part*, 795 F.3d 48 (D.C. Cir. 2015). Plaintiff's members should be able to apply the clear lines in the NWPR to assess jurisdiction on their own. But, even if they could not, determinations of whether the CWA covers particular waters or requires permits "are the same statutory and regulatory alternatives [Plaintiff's] members faced before the [NWPR]." *Nat'l Ass'n of Home Builders v. EPA*, 667 F.3d 6, 14 (D.C. Cir. 2011).

### B.      Plaintiff Fails to Allege a Concrete and Particularized Injury.

For similar reasons, Plaintiff has not established standing. Its declarations provide "no basis to conclude the [NWPR has] *caused* a 'concrete and particularized' and 'actual or imminent' threat to any landowner . . . ." *Id*. (emphasis added). "'[T]hreatened injury must be *certainly impending* to constitute injury in fact,' and . . . '[a]llegations of *possible* future injury' are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted) (emphasis in *Clapper*). Injury must also be "particularized," meaning it "must affect the plaintiff in a personal and individual way." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted).

Here, Plaintiff's supporting declarations only vaguely allege that its members "would be unable to productively operate their farms and ranches," Frost-Maynard ¶ 7, or "would forego doing . . . projects rather than undergo the time and expense of those [CWA section 404] permits," Sidwell Decl. ¶ 16. On their face, these are nothing more than "'[a]llegations of *possible* future injury' [that] are not sufficient." *Clapper*, 568 U.S. at 409. Moreover, Plaintiff's members do not show that this is *caused by* and so *redressable by* an injunction against the NWPR—as opposed to the CWA as a general matter. NWPR replaced the even broader "significant nexus" inquiry.

*National Association of Home Builders v. EPA* demonstrates the flaws in Plaintiff's argument. There, the plaintiff challenged the Agencies' determination that river reaches were traditional navigable waters under the CWA. The plaintiff claimed the determination "has the effect of expanding the agencies' jurisdiction over dry desert washes, arroyos and other water features" because those features could later be found to have a significant nexus with the river. 667 F.3d at 11. The D.C. Circuit held the plaintiff lacked organizational or representational standing. *Id*. at 13-14. The plaintiff was merely extrapolating from the determination and

speculating without evidence that the Agencies would later assert jurisdiction over the washes, arroyos, and other water features at issue in that case. The D.C. Circuit held "[o]nce such a determination was made, but not before, plaintiff in that case could contest the traditional navigable water determination. *Id*. at 13-14."

Plaintiff's theory of injury and standing appears to stem from a theory that its members are injured compared to a baseline of *what might have been*. To this end, Plaintiff seeks not to return to the "significant nexus" standard of the pre-existing regime. Instead, Plaintiff proposes a partial injunction of the NWPR that excises only certain provisions from the Rule. *See* Mot. at 8-9. Even if this were proper—and it is not—Plaintiff has still not identified any putatively regulated activities that these incremental provisions address.

Plaintiff's motion for preliminary injunction must be denied and complaint dismissed for lack of subject matter jurisdiction. It has failed to establish any ripe injury that is fairly traceable to and redressable by enjoining the specific NWPR provisions.

## II.     Plaintiff Is Unlikely to Succeed on the Merits.

Plaintiff argues that the *Rapanos* plurality bars the NWPR's inclusion of certain intermittent tributaries and non-abutting wetlands in the definition of "waters of the United States." This is incorrect. Neither *Rapanos* nor any other Supreme Court case studied the Agencies' present interpretation and supporting administrative record. Nor do they provide a controlling analysis that "unambiguously forecloses the agency's interpretation" in the NWPR. *Id.* at 983. The Agencies' reasonable interpretation is entitled to deference so long as it keeps to their statutory authority.

In evaluating the NWPR, it is not relevant if one *Rapanos* opinion or another is "controlling." In any event, the NWPR is reasonable. And *Rapanos* did not facially "invalidate"

prior regulations. But even if it had, the NWPR's definition of "waters of the United States" is not foreclosed. Accordingly, Plaintiff cannot show it is likely to succeed on the merits.

### A. *Chevron* Requires Deference to the Agencies' Reasonable Interpretation.

Where, as here, a challenged rule contains an agency's interpretation of statutory language, this Court reviews that interpretation under *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984)*.* At Step One, this Court determines "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. "[I]f the statute is silent or ambiguous with respect to the specific issue," the Court proceeds to Step Two to determine "whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. The NWPR reflects a reasonable interpretation of the phrase "waters of the United States" in CWA § 1362(7) under *Chevron* and *Brand X*.

### 1. The NWPR Does Not Exceed the Permissible Limits of the CWA.

To determine whether a statute is ambiguous under Step One, courts employ "tools of statutory construction" to ascertain if "Congress had an intention on the precise question"; for that "must be given effect." *Chevron*, 467 U.S. at 843 n.9. Plaintiff does not contend "waters of the United States" is unambiguous—for good reason. The Supreme Court has recognized "ambiguity in the phrase 'navigable waters'" including waters of the United States. *E.g.*, *Rapanos*, 547 U.S. at 780 (Kennedy, J., concurring); *id.* at 752 (plurality) (the Act "is in *some* respects ambiguous"); *id.* at 796 (Stevens, J., dissenting) (noting "ambiguity inherent in the phrase 'waters of the United States'"); *see also Riverside Bayview*, 474 U.S. at 133; *SWANCC*, 531 U.S. at 170-71.

14

Plaintiff implicitly contends that the fractured *Rapanos* decision is "a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation" embodied in the NWPR. *Brand X*, 545 U.S. at 982-83. In other words, Plaintiff suggests that the NWPR is outside of "any gap left, implicitly or explicitly, by Congress." *Chevron*, 467 U.S. at 843. It is not.

*First*, in *Rapanos*, the four-Justice plurality did conclude "that the Corps' interpretation of the statute is impermissible." 547 U.S. at 737. The plurality opined expressed that jurisdiction only extends to "relatively permanent bod[ies] of water connected to traditional interstate navigable water," including certain "seasonal" waters, and to wetlands with a "continuous surface connection" to such relatively permanent waters. *Id.* at 732 & n.5, 742. But the plurality was not actually presented an agency regulation that, as with the NWPR, applied reasonable limits to CWA jurisdiction. Instead, the *Rapanos* plurality's analysis left room for such a rule. *Id.* at 742. And that's what the NWPR does.

As the Agencies explained, the "plurality opinion in *Rapanos* elaborated further on the wetlands that it did not consider jurisdictional under the Act, specifically, wetlands with only an 'intermittent, physically remote hydrologic connection to "waters of the United States,"' as those 'do not implicate the boundary-drawing problem of *Riverside Bayview*.'" Response to Comments: Legal Arguments at 42 (quoting *Rapanos*, 547 U.S. at 742), *available at* https://beta.regulations.gov/document/EPA-HQ-OW-2018-0149-11574. Thus, the NWPR "is consistent with *SWANCC* and the *Rapanos* plurality and concurring opinions in that it would exclude isolated wetlands with only physically remote hydrologic connections to jurisdictional waters . . . as well as with the Supreme Court's subsequent interpretation of *Riverside Bayview* and the scope of CWA jurisdiction over wetlands in *Rapanos*, in which both the plurality and

15

concurring opinions agreed that 'waters of the United States' encompass wetlands closely connected to navigable waters." *Id.* at 43. Further, the Agencies reasonably concluded that scientific principles and their technical expertise allowed for inclusion of intermittent waters and certain hydrologically connected, though not continuously abutting, wetlands, consistent with these principles. *See* 85 Fed. Reg. at 22,288 ("[T]he agencies relied on the available science to help inform where to draw the line of federal jurisdiction over tributaries, consistent with their statutory authorities.").

*Second*, while Chief Justice Roberts joined the opinion of the plurality, he separately concurred to say that the Agencies should be "afforded generous leeway" for "developing *some* notion of an outer bound" of CWA jurisdiction. *Rapanos*, 547 U.S. at 758 (Roberts, C.J., concurring). The Agencies did so in the NWPR. And Justice Kennedy, too, did not consider his "significant nexus" standard to be unambiguously compelled by the CWA. Justice Kennedy expressly offered his test only "[a]bsent more specific regulations" by the Corps. *Id.* at 782.[2]

*Third*, Plaintiff's *Marks* analysis is ill-fitted for the question before the Court. *Marks* holds that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court *may be viewed* as that position taken by those Members who concurred in the judgments on the narrowest grounds.'" *Marks*, 430 U.S. at 193 (emphasis added). But *Marks* cannot, as here, provide this Court a "binding" precedent that would unambiguously bar the Agencies' reasoned interpretation of the limits of the CWA.

---

[2] And, of course, the four dissenting Justices expressed the "Corps' resulting decision to treat these wetlands as encompassed within the term 'waters of the United States' is a quintessential example of the Executive's reasonable interpretation of a statutory provision." *Id.* at 788.

Regardless, courts applying *Marks* to *Rapanos* have decided the question in different ways. Some courts considered Justice Kennedy's opinion to be narrower than the plurality's because it is generally less restrictive of federal authority. *See United States v. Gerke Excavating, Inc.*, 464 F.3d 723, 724-25 (7th Cir. 2006) (per curiam); *United States v. Robertson*, 875 F.3d 1281, 1292 (9th Cir. 2017), *cert. granted, judgment vacated*, 139 S. Ct. 1543 (2019); *N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993, 999-1000 (9th Cir. 2007); *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007). The First and Third Circuits, by contrast, held that *Marks* could not be strictly applied to *Rapanos* because neither the plurality's nor Justice Kennedy's opinion is narrower than the other. *United States v. Donovan*, 661 F.3d 174, 182 (3d Cir. 2011); *United States v. Johnson*, 467 F.3d 56, 62-64 (1st Cir. 2006). Likewise, the Eighth Circuit concluded that, because the plurality and Justice Kennedy adopted different narrower tests, either test can support CWA jurisdiction. *United States v. Bailey*, 571 F.3d 791, 798-99 (8th Cir. 2009). No court has accepted Plaintiff's theory that the plurality standard alone controls—rather, courts have rejected that. *E.g.*, *Cundiff*, 555 F.3d at 210 n.2; *Bailey*, 571 F.3d at 1005-06.[3]

So, neither *Rapanos* nor any other Supreme Court case precludes the Agencies' new interpretation. To the contrary, *Rapanos* invites it. In the absence of a *Chevron* Step One statutory interpretation by a court, "a court's choice of one reasonable reading of an ambiguous statute does not preclude an implementing agency from later adopting a different reasonable interpretation." *United States v. Eurodif S.A.*, 555 U.S. 305, 315 (2009). This "established a 'presumption that

---

[3] Plaintiff suggests that *King v. Palmer*, 950 F.2d 771 (D.C. Cir. 1991), will guide the Court in a *Marks* analysis. But in *Johnson*, the First Circuit considered *King* and nonetheless found that *Marks* was unworkable. 467 F.3d at 63-64. The Sixth Circuit also indicated that *Rapanos* is not easily reconciled with *King*'s "logical subset" approach. *United States v. Cundiff*, 555 F.3d 200, 209-210 (6th Cir. 2009).

Congress, when it left ambiguity in a statute meant for implementation by an agency, understood that the ambiguity would be resolved, first and foremost, by the agency, and desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows.'" *Brand X*, 545 U.S. at 982 (citation omitted). Accordingly, under *Brand X*, the Agencies are expressly empowered to reconsider a patently ambiguous statutory provision in the CWA, and the four-Justice plurality from *Rapanos* does not preclude it. *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 218 (2009). *See also* 547 U.S. at 758 (Roberts, C.J., concurring).

## 2. The Agencies' Revised Regulatory Definition of "Waters of the United States" Is a Reasonable Construction of Ambiguous Statutory Terms.

The question at *Chevron* Step Two is "whether the agency's answer [to the interpretive question] is based on a permissible construction of the statute." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 54 (2011) (quoting *Chevron*, 467 U.S. at 843). The NWPR is. It need not be "the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp.*, 556 U.S. at 218.

Interpreting ambiguous language "involves difficult policy choices," so judicial deference is critical as "agencies are better equipped to make [such choices] than courts." *Brand X*, 545 U.S. at 980; *see also Riverside Bayview*, 474 U.S. at 132 ("In determining the limits of its power to regulate discharges under the Act, the Corps must necessarily choose some point at which water ends and land begins. Our common experience tells us that this is often no easy task . . . [and] far from obvious."). Indeed, a "court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency

discretion." *Brand X*, 545 U.S. at 982; *see Eurodif S.A.*, 555 U.S. at 315 holding agencies can adopt a different interpretation of an ambiguous statute than a prior court decision).

The NWPR is a reasonable interpretation of the CWA phrase "waters of the United States." It reflects a harmonized vision of both the plurality and concurring opinions in *Rapanos*. While Plaintiff insists that the Court must pick between the Kennedy and plurality opinions, Mot. at 14, the Agencies reasonably sought to craft a rule that embraced their commonalities.

The NWPR is, first and foremost, based on the text of the statute, though informed by *Rapanos*, *SWANCC*, and *Riverside Bayview*. Those decisions articulated principles that served as guideposts for the Agencies' rulemaking. *See* 85 Fed. Reg. at 22,255-57, 22,267-68. The Agencies particularly analyzed the common themes in the fractured *Rapanos* decision, as well as the earlier *SWANCC* decision. *Id.* at 22,268. Ultimately, the Agencies concluded that "there are sufficient commonalities between these opinions to help instruct the agencies on where to draw the line between Federal and State waters." *Id.* Mindful of these commonalities, the NWPR avoids regulating non-navigable, isolated waters that lack a sufficient connection to traditional navigable waters. At bottom, its "unifying legal theory"—consistent with statutory text and Supreme Court guidance—asserts "federal jurisdiction over those waters and wetlands that maintain a *sufficient* surface water connection to traditional navigable waters." *Id.* at 22,271 (emphasis added).

Contrary to Plaintiff's claim, the Supreme Court has not weighed in on the limits of the CWA since *Rapanos*. So there are no more recent Supreme Court cases limiting the Agencies' authority to interpret the definition of "waters of the United States." As Plaintiff acknowledges, *County of Maui, Hawaii v. Hawaii Wildlife Fund*, 140 S. Ct. 1462 (2020), focused on point source discharges of pollutants, not the phrase "waters of the United States." It merely referenced the

*Rapanos* plurality's discussion on point source discharges. *Id.* at 1475. This in no way demonstrates that the plurality opinion is controlling.[4] The Supreme Court cases cited by Plaintiff, Mot. at 14-16, do not reference the *Rapanos* plurality's interpretation of "waters of the United States." *See, e.g.*, *Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 625, 633 (referencing *Rapanos* plurality opinion in describing CWA permitting schemes); *Hawkes*, 136 S. Ct. at 1811-12, 1815 (citing *Rapanos* for plurality's characterizations of the expanse of acreage to which the Corps has applied its regulatory definition, costs of obtaining a permit, and description of permitting process).

Moreover, although a majority of the *Rapanos* Court remanded the case for further consideration, Plaintiff mischaracterizes the nature of the remand. Both the plurality and Justice Kennedy agreed that "the Act . . . regulate[s] 'at least some waters that are not navigable in the traditional sense.'" *Id.* at 20 (quoting *Rapanos*, 547 U.S. at 767 (Kennedy, J., concurring)). But three circuit courts considering which *Rapanos* opinion controls have concluded the limits of the CWA are not exceeded by applying either the plurality's *or* Justice Kennedy's standard. *See* Mot. at 23. Plaintiff also fails to acknowledge that, before *Rapanos*, the Supreme Court had repeatedly reaffirmed that the CWA reaches some waters that are not navigable in the traditional sense. *See Riverside Bayview*, 474 U.S. at 134-35; *SWANCC*, 531 U.S. at 171. Thus, Plaintiff's argument that jurisdiction must be restricted to navigable-in-fact waters and directly abutting wetlands—if *Marks* cannot be applied to *Rapanos*—lacks any legal foundation.

---

[4] *Maui* confirmed that point source discharges that reach navigable waters indirectly through the "functional equivalent of a direct discharge" are subject to CWA regulation. 140 S. Ct. at 1476. Thus, *Maui* rebuts a primary premise of Plaintiff—that discharges to intermittent tributaries and non-abutting wetlands cannot be regulated by the CWA. Even if such waters were not themselves covered by the CWA, *Maui* shows that point source discharges to such waters may be subject to CWA regulation.

Whether the plurality's standard or Justice Kennedy's standard is the "controlling" opinion of *Rapanos*, or if *Marks* cannot be applied to *Rapanos* at all, the result here would be the same. Neither opinion forecloses the Agencies' reasonable interpretation of the extent of CWA jurisdiction which draws from common elements of each. Pursuant to *Brand X*, the Agencies were not specifically "bound" by—though they appropriately considered—the opinions of *Rapanos*. The Agencies were free to develop a different definition of "waters of the United States." And, the Agencies applied principles of both the plurality and Justice Kennedy's opinions. The Agencies extensively examined the commonalities of the opinions and applied them in the NWPR. *See supra* Background Part I.B.4.[5] The Agencies reasoned, technically supported, and well-explained interpretation of "navigable waters" including "waters of the United States" is within the congressional gap of deference. Plaintiff has no likelihood of successfully showing otherwise.

**B.    The NWPR Reasonably Defines "Tributary" To Include Intermittent Flow and "Adjacent Wetlands" to Include Certain Non-Abutting Wetlands.**

Contrary to Plaintiff's allegation, the NWPR's intermittent tributary and non-abutting wetland provisions are reasonable and lawful. The Agencies thoroughly explained their rationale for adopting these definitions. *See Chevron*, 467 U.S. at 843-44 (holding agency's interpretation of an ambiguous statute is to be adopted if it is a reasonable interpretation of the statute); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) (holding

---

[5] In fact, the NWPR even answers the primary criticism the *Rapanos* dissent had for the plurality decision. This was that the "plurality [went] on, however, to define 'adjacent to' as meaning 'with a continuous surface connection to' other water," though "a dictionary" only requires that objections "lie close to each other, but *not necessarily in actual contact.*" *Rapanos*, 547 U.S. at 805. The NWPR extends jurisdiction to certain wetlands with a close hydrologic connection to but that do not continuously abut navigable waters and their tributaries, yet do not present an insurmountable "boundary-drawing problem." 85 Fed. Reg. at 22,265 (citation omitted).

that an agency decision is lawful if it articulates "a satisfactory explanation for its action including a rational connection between the facts found and the choice made."). They should be upheld.

Plaintiff argues that *Rapanos* forecloses the inclusion of intermittent tributaries and non-abutting adjacent wetlands in the definition of "waters of the United States." This is incorrect. As one court explained when recently declining to preliminarily enjoin the NWPR:

> [E]ven if the concurrence and the dissent can be read together to stand for the proposition that the Rapanos plurality's articulation of the maximum permissible reach of the statute is an improper construction, a holding that the Agencies must construe the statute more broadly is a bridge too far. Finally, nothing in either the Rapanos concurrence or the dissent—or in the two read together—can be characterized as a holding "that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."

*California*, 2020 WL 3403072, at *6 (citing *Brand X*, 545 U.S. at 982).

Moreover, by specifically defining "tributary" to include "intermittent" and "perennial" flow, and *not* "ephemeral" flow, the NWPR provides more technical clarity regarding the precise contours of what constitutes a "water of the United States." 85 Fed. Reg. at 22,274. While the differences between "perennial," "intermittent," and "ephemeral" flows are understood within the scientific community, these terms are often incorrectly used interchangeably in legal setting. This can lead to confusing guidance and decisions from courts. *See id.* (noting the *Rapanos* plurality seemed to confuse the concepts of "intermittent" and "ephemeral," despite their distinct meaning within the scientific community). For greater clarity, the Agencies specifically defined "perennial," "intermittent," and "ephemeral" so that "tributaries," which include "intermittent" flow, are "waters of the United States." This rationale is, nevertheless, consistent with the *Rapanos* plurality. *Compare* 85 Fed. Reg. at 22,340 (defining "intermittent" as "surface water flowing continuously during certain times of the year and more than in direct response to precipitation")

*with Rapanos*, 547 U.S. at 732 n.5 (finding that "waters of the United States" do "not necessarily exclude *seasonal* rivers, which contain continuous flow during some months of the year but no flow during dry months.").

The Agencies also thoroughly explained why the definition of "adjacent wetlands" includes more than just wetlands that directly "abut" a water identified in paragraphs (a)(1), (2), or (3) of the NWPR. 33 C.F.R § 328.3(c)(1). In doing so, the Agencies balanced core legal principles set forth in *Riverside Bayview*, *SWANCC*, and *Rapanos* with scientific considerations. Isolated wetlands with only physically remote or irregular hydrologic connections to jurisdictional waters and isolated wetlands with only ecological connections are not "waters of the United States" under the NWPR. 85 Fed. Reg. at 22,309 (citing *SWANCC*, 531 U.S. at 171-72; *Rapanos*, 547 U.S. at 742 (plurality); *id.* at 766-67 (Kennedy, J., concurring)). But wetlands with regular hydrologic surface connections to jurisdictional waters are "waters of the United States" under the NWPR. 85 Fed. Reg. at 22,279; *see Rapanos,* 547 U.S. at 742 (plurality); *Riverside Bayview*, 474 U.S. at 134. And, some wetlands that do not directly abut a jurisdictional water are still capable of establishing regular surface connection. *See* 85 Fed. Reg. at 22,309-15 (noting that wetlands not directly abutting a jurisdictional water may nonetheless maintain a regular hydrological connection to a jurisdictional water under multiple circumstances such as flooding from a jurisdictional water in a typical year). Thus, it was entirely justified and within the Agencies' discretion to establish these categorical instances where wetlands not directly abutting jurisdictional waters are still "adjacent wetlands" under the NWPR. *See Riverside Bayview*, 474 U.S. at 132-34 (holding courts will defer to the agencies' determination of adjacent wetlands subject to CWA jurisdiction, given the technical nature of this determination).

**C.      Issue Preclusion Does Not Bar the NWPR.**

Plaintiff's argument that the NWPR is barred by issue preclusion is baseless. Issue preclusion (or "non-mutual collateral estoppel") does not apply to claims against the United States. *United States v. Mendoza*, 464 U.S. 154, 157-64 (1984). *Mendoza* held that, although the government is bound by the principles of res judicata, "it is not further bound in a case involving a litigant who was not a party to the earlier litigation." *Id.* at 162. Contrary to Plaintiff's arguments, Mot. at 13-14, *Mendoza* applies here and bars Plaintiff's issue preclusion claim. *E.g.*, 464 U.S. at 161-162 (noting that successive Administrations may "take differing positions with respect to the resolution of a particular issue"); *id.* at 164 (distinguishing cases where "mutuality is present"). Because Plaintiff was not a party to *Rapanos*, issue preclusion is inapplicable here.

Moreover, like other litigants, the United States follows binding Supreme Court precedent. But there is no binding precedent that precludes the regulatory approach the Agencies took in the NWPR. And *Rapanos* did not invalidate the prior regulatory provisions. Even if it had, the NWPR is different than the prior regulations, and is entirely consistent with *Rapanos*.

First, while both the plurality and Justice Kennedy concluded that the Corps' assertion of jurisdiction lacked necessary limitations and generally declined to defer to the Corps' interpretation of its regulations in that case, neither case was a "facial" challenge to the Agencies' regulations. So neither opinion formally "invalidated" the regulations. *See* 547 U.S. at 725-26 (plurality); *id.* at 778 (Kennedy, J., concurring).[6] Rather, *Rapanos* was an "as-applied" challenge

---

[6] Nor did *Rapanos* determine the regulations "violat[ed] the Commerce Clause and the Tenth Amendment." *See* Mot. at 24. Although Plaintiff tellingly does not raise constitutional claims in arguing success on the merits, it nonetheless argues that such claims establish proof of irreparable injury sufficient for a preliminary injunction. But Plaintiff offers only bare allegations of

24

to particular jurisdictional decisions. As to the wetlands at issue, the plurality and Justice Kennedy both determined that the lower court had not applied the correct legal standard and remanded for that reason. *Rapanos*, 547 U.S. at 757 (remanding the case without disrupting regulations); *id.* at 759, 787 (Kennedy, J., concurring). Though informed by the opinions in *Rapanos*, the regulations remained in effect until and after the 2015 Rule.

Second, the NWPR provides a different regulatory definition of "waters of the United States" than the regulations in effect at the time of *Rapanos*. As is readily apparent by comparing the regulatory text, the NWPR's definition of "waters of the United States" is generally narrower than the definition in the prior regulations. *Compare* 33 C.F.R. § 328.3(a)(5) (2019) (broadly including "tributaries" of any waters "the use, degradation or destruction of which could affect interstate or foreign commerce"), *with* 33 C.F.R. § 328.3(a)(2), (c), 85 Fed. Reg. at 22,338-39 (defining a "tributary" as "a river, stream, or similar naturally occurring surface water channel that contributes surface water flow to a [traditional navigable water] in a typical year" and must be "perennial or intermittent"); *compare* 33 C.F.R. § 328.3(a)(2), (c) (2019) (including interstate wetlands and wetlands "adjacent to" any paragraph (a)(1) through (a)(6) water (except wetlands)) *with* 33 C.F.R. § 328.3(a)(4), (c)(1) (including only certain adjacent wetlands to traditional navigable waters, tributaries, or lakes and ponds and impoundments of jurisdictional waters).[7] While Plaintiff's reliance on the *Rapanos* plurality opinion is misplaced for the reasons stated

_____

constitutional injury founded on its flawed reading of *Rapanos* and its erroneous conclusion that the NWPR's regulations are the same as the regulations in effect at the time of *Rapanos*. *Id.* at 24-25. Essentially, Plaintiff offers nothing to support its claim that the NWPR exceeds "Congress' power to legislate under the Tenth Amendment and the Commerce Clause." *Id.* at 25.

[7] The plurality's use of "intermittent" waters did not account for the term's scientific understanding, or consider the term as defined in the NWPR. *Rapanos*, 547 U.S. at 732-33 & n.5.

*supra*, the plurality's consideration of "intermittent" waters was not informed by the NWPR's analysis. Nor did the plurality use the term "intermittent" as it is defined in the NWPR. *See, e.g.,* 85 Fed. Reg. at 22,274. Thus, *Rapanos* case does not preclude the approach taken in the NWPR.

## III.    Plaintiff Fails to Demonstrate Imminent, Irreparable Harm from the NWPR.

Plaintiff alleges its members will be irreparably injured by "be[ing] required to seek permits for projects that are not legally regulated under the Clean Water Act." Mot. at 26. For the reasons explained above, the NWPR is an appropriate exercise of the Agencies' legal authority under the CWA. But even if there were legitimate questions about whether and how the Agencies assert jurisdiction over intermittent tributaries and adjacent wetlands under the NWPR, Plaintiff fails to demonstrate the sort of imminent and irreparable injury necessary for preliminary relief.

### A.    Plaintiff's Allegations of Irreparable Harm Are Premature.

There is no evidence provided that any of Plaintiff's members intend to conduct a project requiring a CWA permit any time soon. Even if the Agencies were "not attack[ing] Plaintiff's case on ripeness grounds, the question of irreparable harm in this context is inextricably intertwined with the issue of ripeness." *New York State Bar Ass'n v. Reno*, 999 F. Supp. 710, 714 (N.D.N.Y. 1998). A claim is not ripe for adjudication if the issues to be adjudicated are contingent upon future events that may never occur. *Texas v. United States*, 523 U.S. 296, 300 (1998). Here, not only are the activities of its members speculative at this point, Plaintiff's assertion that the Agencies will seek to regulate these activities is speculative as well.

Sidwell declares that his ranch "includes a large number of ephemeral and intermittent arroyos that flow from south to north." Sidwell Decl. ¶ 4. But he does not distinguish between his potential activities involving ephemeral versus intermittent waters. This is critical because

ephemeral waters are excluded from the NWPR's definition of "waters of the United States." 85 Fed. Reg. at 22,338. Further, his description of these arroyos seems to indicate that they are *not* jurisdictional under the NWPR. *Compare* Sidwell Decl. ¶ 4 (flow occurs "in periodic high intensity rain events that may occur every few years") *with* 85 Fed. Reg. at 22,251 ("[NWPR] clarifies that waters of the United States do not include . . . ephemeral features that flow only in direct response to precipitation . . . ."). Frost-Maynard similarly fails to establish activities that will be regulated under the NWPR. *See* Frost-Maynard Decl. ¶ 5 (noting "[water] features which **may** be subject to Army and EPA regulation under the Navigable Waters Protection Rule") (emphasis added).

Plaintiff's members have failed to demonstrate that their activities would necessarily—or even likely—be regulated as a result of the NWPR. On this basis alone, Plaintiff has failed to show imminent, irreparable harm. To be clear, Plaintiff's members could more plausibly have asserted that the NWPR covers waters on their ranches. For instance, given the improved clarity under the NWPR, Plaintiff should be able to submit revised declarations better describing the waters in which their members intend to conduct activities which may be sufficient to prove that their activities would, in fact, be covered by the NWPR. This Court, however, need not delve into whether and how Plaintiff might show that the NWPR affects their members in future filings. Plaintiff has not met its current burden to do so in order to receive preliminary injunctive relief.

Moreover, while unclear from the limited information Plaintiff has provided, it is possible that some of its members' activities would qualify for a CWA exemption. *See generally* 33 U.S.C. § 1344(f) (exemptions for, *inter alia*, certain "ranching activities"). Plaintiff fails to address whether the activities in question—even if involving a "water of the United States" under the

NWPR—would be subject to an exemption. As a result, this Court cannot conclude that Plaintiff's members are harmed by the NWPR, let alone that its members are likely to suffer irreparable harm.

Plaintiff's request for a preliminary injunction is premature at best and should be rejected.

### B.    Plaintiff Fails to Show Imminent, Irreparable Harm from the NWPR.

Plaintiff's alleged irreparable injury stems from the Agencies' assertion of jurisdiction over certain intermittent tributaries and adjacent wetlands. The Agencies—in the Repeal Rule—re-codified the 1986 Regulations in place of the 2015 Rule in part to ensure that a consistent definition of "waters of the United States" was applied throughout the country. Even if the 1986 regulations had not been re-codified, the Supreme Court opinions in *Rapanos* are what really defined the scope of CWA jurisdiction since that decision—not the language of the 1986 Regulations. Moreover, the NWPR, which replaces the Repeal Rule, *reduces* the scope of waters subject to the CWA compared to the 1986 Regulations and Repeal Rule. 85 Fed. Reg. at 22,333.

Although asserting that the harms "are ongoing," Mot. at 27, Plaintiff provides no declaration or other evidence supporting this; and if such is ongoing, it cannot result from, or be remedied by injunction of, the NWPR. It is a function of the CWA itself, as its limits are expressed post-*Rapanos*. According to Plaintiff, if the NWPR takes effect its members "would be unable to productively operate their farms and ranches," Frost-Maynard ¶ 7, or "would forego doing . . . projects rather than undergo the time and expense of those [CWA section 404] permits" Sidwell Decl. ¶ 16. But, on their face these are nothing more than allegations of "[p]urely speculative harm [which] will not suffice" to receive injunctive relief pending orderly proceedings on the merits at summary judgment. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009).

Sidwell's Declaration on this point is telling. He declares that "[f]or many years I have frequently performed streambed improvement projects in the arroyos, and have plans to continue these projects in the arroyos that drain into the Rincon Arroyo, on the JX Ranch." Sidwell Decl. ¶ 6. Since he has owned his ranch since 2003, *id*. ¶ 3, Sidwell conducted those projects under a regulatory regime either coextensive or broader than what he now complains of. Sidwell wholly fails to explain why he will no longer conduct the same activities even though the Agencies are contracting, rather than expanding, their jurisdiction over waters compared to the 1986 Regulations.

Moreover, even if this Court finds that Sidwell will refrain from the projects referenced in his declaration, his allegations fail to show *imminent* harm. Indeed, Sidwell states that he intends to do projects *"over the next few years* . . . in the watershed of the Rincon Arroyo." Sidwell Decl. ¶ 10 (emphasis added). He then states that "[i]f dredge and fill permitting is required over the next few years, while this lawsuit is pending . . . I would have to delay these planned projects . . . ." *Id*. ¶ 12. At most, this shows that the purported "harm will occur only in the indefinite future," which is insufficient for a preliminary injunction. *Campbell Soup Co. v. ConAgra, Inc*., 977 F.2d 86, 91 (3d Cir. 1992); *see also Direx Israel, Ltd. v. Breakthrough Med. Corp*., 952 F.2d 802, 816 (4th Cir. 1991) (reversing grant of preliminary injunction where the movant's irreparable harm was "at least a year down the road, maybe two or three years down the road").

Plaintiff also does not explain why—nor would the Agencies agree—it will take *several years* for this case to be resolved on the merits. So, even accepting Plaintiff's assertion of harms, it fails to "demonstrate that in the absence of a preliminary injunction, '[it] is likely to suffer irreparable harm *before a decision on the merits can be rendered.*'" *Winter*, 555 U.S. at 22.

Lastly, "[t]he function of a preliminary injunction is to preserve the status quo pending a final determination of the rights of the parties." *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980). Here, the Agencies' definition of CWA jurisdiction generally including intermittent tributaries and adjacent wetlands *is* the status quo. Under the "significant nexus" test in place since at least the wake of the 2006 *Rapanos* decision, the Corps commonly asserts CWA jurisdiction over such waters. Granting a preliminary injunction against the NWPR is not likely to change the application of the CWA's jurisdiction to Plaintiff pending the merits.

### C.   Plaintiff's Alleged Injuries Are Not Irreparable.

Plaintiff alleges that its members will be irreparably harmed if "required to seek permits for projects that are not legally regulated under the Clean Water Act." Mot. at 26. Since their claims of injury are not imminent, preliminary relief should be denied on that ground alone. Even setting that point aside, Plaintiff's alleged injuries are not irreparable.

Plaintiff inappropriately attempts to recast its members' injury as a *constitutional* injury to avoid any meaningful scrutiny of whether their alleged injury is, in fact, irreparable. Although courts generally hold that violations of individual rights protected by the Constitution, such as the right to vote or free speech, are irreparable, see *Fish v. Kobach*, 840 F.3d 710, 752 (10th Cir. 2016), Plaintiff alleges no such violation here. Instead, Plaintiff alleges that the NWPR's provisions on intermittent tributaries and adjacent wetlands "violate the Tenth Amendment and the Commerce Clause." Mot. at 24. Indeed, Plaintiff's use of ellipses when quoting Federal Practice and Procedure obscures this distinction. *See* 11A Wright & Miller, *Federal Practice and Procedure* § 2948.1 (3d ed. 2013) ("When an alleged deprivation of a constitutional right is involved, ***such as***

***the right to free speech or freedom of religion***, most courts hold that no further showing of

irreparable injury is necessary.") (emphasis indicates portion omitted by Plaintiff).

Plaintiff cites two district court cases from outside this Circuit to allege that structural

constitutional violations generally constitute irreparable harm. Mot. at 24 (citing *Atl. Coast*

*Demolition & Recycling, Inc. v. Bd. of Chosen Freeholders of Atl. Cty.*, 893 F. Supp. 301, 309

(D.N.J. 1995), and *Citicorp Servs., Inc. v. Gillespie*, 712 F. Supp. 749, 753 (N.D. Cal. 1989)). But

other district courts have taken the opposite view, holding that "Plaintiffs are not entitled to a

presumption of irreparable harm [where] the constitutional rights at stake . . . are not 'personal' in

nature." *Prof'l Towing & Recovery Operators of Ill. v. Box*, No. 08 C 4096, 2008 WL 5211192, at

*13 (N.D. Ill. Dec. 11, 2008); *Am. Petroleum Inst. v. Jorling*, 710 F. Supp. 421, 431–32 (N.D.N.Y.

1989). Requiring Plaintiff's members to obtain permits before discharging into certain waters may

constitute harm, but such allegations are not the sort of "violation of a constitutional right [that]

weigh[s] heavily in [an irreparable harm] analysis." *Kobach*, 840 F.3d at 752.

Thus, Plaintiff has not showed any harm "of such imminence that there is a clear and

present need for equitable relief to prevent irreparable harm." *Heideman v. S. Salt Lake City*, 348

F.3d 1182, 1189 (10th Cir. 2003).

## IV.   The Balance of Equities Weighs in Favor of the Agencies, and Issuance of the Injunction Requested by Plaintiff Would Harm the Public Interest.

The "balance of harms" and "public interest" prongs favor the Agencies. These prongs,

which merge when the government is a party, do not just restate other preliminary injunction

elements. *See Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020). Plaintiff carries the burden of

showing that the harm to it outweighs any harm to the public interest. *SCFC ILC, Inc.*, 936 F.2d

at 1098-99. "[B]ecause a preliminary injunction is an extraordinary remedy, the [movant's] right

31

to relief must be clear and unequivocal." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp*., 356 F.3d 1256, 1261 (10th Cir. 2004) (internal quotation marks omitted).

Here, the balance of harms and public interest weigh against an injunction. The Agencies pursued a years-long effort to formulate a uniform national policy that can achieve consistency and clarity for the regulated public. *See*, *e.g*., 85 Fed. Reg. at 22,252 (explaining the NWPR "provides clarity and predictability for Federal agencies, States, Tribes, the regulated community, and the public"). The Agencies' efficient administration of the NWPR relies on a predictable and uniform application of the rule. *Id.* According to the Agencies' Economic Analysis, the benefits to the public by implementing the NWPR and its clear lines of regulation and exclusion are far greater than the costs. *See* EA at 171-182. Granting Plaintiff's requested injunctive relief creates uncertainty and disruption, hampering the Agencies' ability to efficiently perform their regulatory functions. This is also problematic for regulated persons whose activities occur in multiple states— one of the key goals of federal regulation.

Indeed, courts routinely recognize that the government has a "public interest" in the efficient administration of laws. And they refuse injunctive relief that would undermine such public good. *See*, *e.g.*, *Sierra Club v. U.S. Army Corps of Eng'rs*, 990 F. Supp. 2d 9, 43 (D.D.C. 2013) ("the public has an interest in regulatory efficiency" which could be undermined by a preliminary injunction); *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1281-82 (9th Cir. 2020) ("The government has a compelling interest in ensuring that injunctions—such as the one granted here—do not undermine separation of powers by blocking the Executive's lawful ability" to administer its laws).

Plaintiff claims that the balance of harms and public interest weigh in its favor because certain provisions of the NWPR at issue are unlawful. As discussed above, Plaintiff has no likelihood of success on the merits. Regardless, that conflates the "likelihood of success" element of a preliminary injunction analysis with the examination of harms. There is a clear public interest in an efficient and uniform administration of the law pending final merits.

## V.   Even if Preliminary Injunctive Relief Is Awarded, the Remedies Proposed by Plaintiff Do Not Preserve the Status Quo and Are Overbroad and Not Appropriately Tailored.

While inconsistent regulatory regimes could be disruptive, any injunctive relief must still be no more extensive to a defendant than necessary to provide complete relief to a plaintiff. *See United States v. Nat'l Treasury Emps. Union*, 513 U.S. 454, 478 (1995). The "limited purpose" of a preliminary injunction "is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). A preliminary injunction must be "narrowly tailored to remedy the harm shown." *Big O Tires, Inc. v. Bigfoot 4X4, Inc*., 167 F. Supp. 2d 1216, 1221 (D. Colo. 2001) (citation omitted).

Here, no injunctive relief is warranted but, even if it were, the Plaintiff's requested injunctive remedies would not preserve the status quo. Plaintiff proposes: (i) outright prohibiting the Agencies from regulating non-abutting wetlands and intermittent tributaries; (ii) limiting the Agencies from regulating non-abutting wetlands and intermittent tributaries unless the Agencies have conducted a case-specific significant nexus test; or (iii) prohibiting the Agencies from regulating from regulating all non-navigable tributaries and adjacent wetlands. All of these are *permissible* under the status quo. As explained *supra*, each of these proposals seek to enjoin the regulation of waters the Supreme Court has otherwise held the Agencies could regulate. Thus, Plaintiff's proposed relief would not preserve the status quo and should be denied on these grounds

alone. *See also SCFC ILC, Inc.*, 936 F.2d at 1098-99 (holding party seeking preliminary injunction must satisfy "an even heavier burden" if it is seeking a preliminary injunction that disturbs the status quo).

Furthermore, any preliminary injunction must be tailored to address only the specific regulatory provisions purportedly creating imminent, irreparable harm sufficiently proven by Plaintiff's declarants. *Madsen v. Women's Health Ctr., Inc*., 512 U.S. 753, 765 (1994) (holding that an injunction "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"). As explained earlier, none of Plaintiff's members profess to being actually, immediately, and/or irreparably harmed by the NWPR. *See supra* Argument Parts I & III. Thus, no conceivable injunctive remedy is appropriate here.

Instead, to the extent that Plaintiff proves that any of its members satisfy each of the four factors of the *Winter* test, a preliminary injunction should only be granted enjoining application of the NWPR *to a specific project, identified by a specific declarant*, that is actually now subject to jurisdiction *because of* the NWPR—rather than because of the CWA and the baseline "significant nexus" test that remains without the NWPR.

## CONCLUSION

For the foregoing reasons, the Court should deny the motion for preliminary injunction.

Dated: June 23, 2020                  Respectfully submitted,

                                      JOHN C. ANDERSON
                                      *United States Attorney*

                                      MICHAEL HOSES
                                      *Assistant United States Attorney*
                                      201 3rd Street N.W., Suite 900
                                      Albuquerque, NM 87102
                                      (505) 224-1455
                                      Michael.Hoses@usdoj.gov

*Of counsel:*                         JONATHAN D. BRIGHTBILL
                                      *Principal Deputy Assistant Attorney General*
MATTHEW Z. LEOPOLD                    Environment and Natural Resources
*General Counsel*
DAVID FOTOUHI
*Principal Deputy General Counsel*    /s/ Erica Zilioli
U.S. Environmental Protection Agency  SONYA SHEA
Washington, DC                        *Trial Attorney*
                                      Environmental Defense Section
CRAIG R. SCHMAUDER                    U.S. Department of Justice
*Deputy General Counsel*              999 18th Street – South Terrace, Suite 370
U.S. Department of the Army           Denver, CO 80202
                                      (303) 844-7231
DAVID. R. COOPER                      Sonya.Shea@usdoj.gov
*Chief Counsel*
U.S. Army Corps of Engineers          ERICA ZILIOLI
                                      *Trial Attorney*
                                      Environmental Defense Section
                                      U.S. Department of Justice
                                      P.O. Box 7611
                                      Washington, DC 20044
                                      (202) 514-6390
                                      Erica.Zilioli@usdoj.gov

                                      *Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 23, 2020, I filed the foregoing using the Court's CM/ECF system, which will electronically serve all counsel of record registered to use the CM/ECF system.

/s/ *Erica Zilioli*